ACCEPTED
15-25-00201-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/10/2025 2:10 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00201-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
12/10/2025 2:10:45 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT OF TEXAS
AT AUSTIN

WCH MASTER COMMUNITY, INC.

Appellant,

v.

THOMAS WOLF AND EILEEN WOLF

Appellees,

On Appeal from Cause No. D-1-GN-25-000637

98th Judicial District Court

Travis County, Texas

**BRIEF OF APPELLANT**

N. Adam Pugh
Texas Bar No. 24044341
adam.pugh@caglepugh.com
4301 Westbank Drive,
Bldg. A, Suite 150
Austin, Texas 78746
Phone (737) 261-0600
Facsimile: (737) 261-0637
**Counsel for Appellant**

Oral Argument Not Requested

i

## IDENTITY OF PARTIES AND COUNSEL

**Appellant:**        WCH Master Community, Inc. (the "**Association**")

**Appellee:**        Thomas Wolf and Eileen Wolf (together the "**Wolfs**")

**Counsel for Appellant in the trial court and on appeal:**

Adam Pugh                  adam.pugh@caglepugh.com
State Bar No.: 24044341
Marla Jones                marla.jones@caglepugh.com
State Bar No.: 24046174
**CAGLE PUGH, LTD, LLP**
4301 Westbank Dr.
Bldg. A, Ste. 150
Austin, Texas 78746
Telephone: (737) 261-0600
Facsimile: (737) 261-0637

**Counsel for Appellee in the trial court and on appeal:**

Thomas Wolf                twolf.tx@gmail.com
**PRO SE**
21813 Agarito Lane
Spicewood, Texas 78669

**Trial Court:**      98th District Court of Travis County, Texas (the "**Trial Court**")

                Cause No. D-1-GN-25-000637

                Hon. Maria Cantu Hexsel, Judge Presiding

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................... iii

INDEX OF AUTHORITIES.............................................................................. iv

ORAL ARGUMENT IS NOT REQUESTED.........................................................v

STATEMENT OF THE CASE............................................................................ vi

ISSUES PRESENTED...................................................................................... ix

    1.    The Trial Court erred by (a) denying the Association's motion for summary judgment regarding the right to enforce the restrictive covenants of the Association; and by (b)  granting, in part, the Wolfs' motion for summary judgment. ...................................................................................... ix

SUMMARY OF THE ARGUMENT ....................................................................1

STATEMENT OF FACTS .................................................................................2

ARGUMENT ...................................................................................................6

    1.    The Trial Court erred by (a) denying the Association's motion for summary judgment regarding the right to enforce the restrictive covenants of the Association; and by (b)  granting, in part, the Wolfs' motion for summary judgment. ...................................................................................6

        a.    The Trial Court erred by (a) denying the Association's motion for summary judgment regarding the right to enforce the restrictive covenants of the Association. ..................................................................6

        b.    The Trial Court erred in (b) granting, in part, the Wolfs' motion for summary judgment..................................................................................10

PRAYER FOR RELIEF ...................................................................................12

CERTIFICATE OF SERVICE ..........................................................................13

CERTIFICATE OF COMPLIANCE ...................................................................14

# INDEX OF AUTHORITIES

**CASES**

*Bank United v. Greenway Improvement Ass'n*, 6 S.W.3d 705, 707 (Tex.App.—Houston [1st Dist.] 1999, pet. denied) ...................................................................7

*C.A.U.S.E v. Vill. Green Homeowners Ass'n, Inc.*, 531 S.W.3d 268, 274 (Tex. App.—San Antonio 2017, no pet.) ........................................................................7

*Chavez v. Kansas City S. Ry. Co.*, 520 S.W.3d 898, 900 (Tex. 2017) .....................6

*Clark v. ConocoPhillips Co.*, 465 S.W.3d 720, 724 (Tex. App.—Houston [14th Dist.] 2015, no pet.) .............................................................................................6, 10

*Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005)(per curiam) .................................................................................................................7

*Goddard v. Northhampton Homeowners Ass'n, Inc.*, 229 S.W.3d 353, 356 (Tex. App.—Amarillo 2007, no. pet.)(same) ...................................................................7

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) ..........................7

*Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007) .......................6

*Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998) ...........................................7

*Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 280 (Tex. 2018)...7

*Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 925 (Tex. App.—Houston [1st Dist.] 2010, no pet.)(same) ...............................................................................7

*Valero Mktg. & Sup. Co. v. Kalama Int'l*, 51 S.W. 3d 345, 351 (Tex.App.-Houston [1st Dist.] 2001, no pet.) ..........................................................................................8

*Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987) ..............................................7

**STATUTES**

TEX. PROP. CODE §202.004(a) ....................................................................................8

TEX. PROP. CODE § 202.023 ............................................................................. 8, 9, 10

TEX. PROP. CODE § 202.023(b) ......................................................................... vi, 1, 5, 9

TEX. PROP. CODE § 202.023(c)(1) .........................................................................9, 10

## ORAL ARGUMENT IS NOT REQUESTED

This appeal involves the Trial Court's error in (a) denying the Association's motion  for summary judgment regarding the right to enforce the restrictive covenants of the Association and by (b) granting, in part, the Wolfs' motion for summary judgment. The facts and legal argument are adequately presented in this brief and the record, and the issues before the Court are not new or complex. As such, it is believed this Court can decide the issues of law on the briefs and no oral argument is necessary. However, if the Court should schedule an oral argument, the Association would like to participate.

## STATEMENT OF THE CASE

*Nature of the case:*

The Association appeals the Trial Court's *Order Granting in Part and Denying in Part Defendants' Traditional and No-Evidence Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment* entered into on October 5, 2025 (the "**Order**"). CR:467; Apx:Ex.A[1]. This case involves a dispute concerning enforcement of restrictive covenants and the limitations which can be enacted and enforced.

The restrictive covenants applicable to the Wolfs' property specifically prohibit owners from constructing, altering, modifying, or installing ***any*** improvements upon a lot without the advanced written approval of the Association through the Architectural Committee (the "**AC**"). CR:19-135; Apx:Ex.B. The Wolfs installed a free-standing pole on their property, and mounted a security camera on top, which provides views down the street without approval of the AC. The Association sued the Wolfs to enforce the applicable restrictive covenants and require the pole, not the cameras, to be removed. Citing to Tex. Prop. C. § 202.023(b), the Trial Court denied the Association's claims in their entirety and

---

[1] The following abbreviations are used herein:

"CR:XX:XX" refers to the Clerk's Record (followed by the Clerk's Record page or other identifying number).

"Apx:Ex.X" refers to the Appendix attached hereto (followed by the Appendix's Exhibit Letter).

disregarded the fact that Association's denial was **only** with respect to the free-standing pole, and **not** the security camera. Apx:Ex.C. Moreover, the Trial Court erred in granting the Wolfs claims that no restrictions or limitations whatsoever could be placed on the installation of items related to a security measure, despite the property being subject to legally enforceable restrictive covenants. The Trial Court erred in interpreting the Property Code to broadly prohibit a homeowners association from enforcing any restrictive covenant that merely relates in any way to a security measure.

*Trial Court Proceedings:*

Cause No. D-1-GN-25-000637; 98th District Court of Travis County, Texas, the Honorable Maria Cantu Hexsel ("**Judge Hexsel**") presiding (the "**Trial Court**"). CR:467.

*Course of proceedings:*

On January 27, 2025, Appellant filed its *Original Petition, Application for Permanent Injunction and Required Disclosures*. CR:4-142.

On February 20, 2025, Appellees filed their *Original Answer and General Denial and Notice of Appearance*. CR:145-149.

On June 17, 2025, Appellant filed its *Motion for Summary Judgment*. CR:179-210.

On August 15, 2025, Appellees filed their Response to Plaintiff's Motion for Summary Judgment. CR:214-254.

On August 18, 2025, Appellees filed their Traditional and No-Evidence Motion for Summary Judgment. CR:255-277.

On September 17, 2025, Appellant filed its Response to Defendants' Traditional and No-Evidence Motion for Summary Judgment. CR:284-465.

On October 6, 2025, Judge Hexsel entered its Order Granting in Part and Denying in Part Defendants' Traditional and No-Evidence Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment. CR:467.

On October 22, 2025, Appellant filed its Notice of Appeal. CR:468-470.

On November 20, 2025, Appellant filed its Amended Notice of Appeal. Apx:Ex.D.

## ISSUES PRESENTED

1. The Trial Court erred by (a) denying the Association's motion for summary judgment regarding the right to enforce the restrictive covenants of the Association; and by (b)  granting, in part, the Wolfs' motion for summary judgment.

# SUMMARY OF THE ARGUMENT

The Trial Court erred by denying the Association's motion for summary judgment regarding the right to enforce the restrictive covenants of the Association. Further, the Trial Court erred in by granting, in part, the Wolfs' motion for summary judgment, because §202.023(b) of the Texas Property Code ONLY prohibits a homeowners association from enforcing restrictive covenants that would ***prevents*** an owner from installing a security measure, like a camera. Apx:Ex.C. To the contrary, in this case, the Association simply sought to regulate the installation of a previously nonexistent 25-foot pole in the front yard of the property, which simply is not in accordance with the governing documents for the Association, and does not fit harmoniously in the neighborhood. Specifically, as indicated in the Design Guidelines applicable to the property, "[t]he objective of the review process is to promote aesthetic harmony within the Community by providing for compatibility of specific designs with surrounding buildings, the environment and the topography." *Design Guidelines*, P. 4. Apx:Ex.E.  Without the 25-foot pole, the Wolfs would still have the ability to install as many security cameras as they would like on the currently existing structures on their lot. The Association has made no attempt to limit the installation of ANY security cameras on the Wolfs' lot or any others. As such, the judgment should be reversed and rendered in favor of the Association.

1

# STATEMENT OF FACTS

The Wolfs are the owners of that certain real property legally described as Lot 25, Block "7", of WEST CYPRESS HILLS PHASE ONE SECTION TWO, a subdivision in Travis County, Texas, according to the map or plat, of record in Document No. 200600222, of the Official Public Records of Travis County, Texas, more commonly known as 21813 Agarito Lane, Spicewood, Texas 78669 (hereinafter referred to as the "***Property***") by virtue of that certain *Warranty Deed with Vendor's Lien*, dated December 30, 2015, and recorded at Document No. 2015206393 in the Official Public Records of Travis County, Texas. CR:145.

The Property is located entirely within West Cypress Hills Phase One Section Two, a subdivision in Travis County, Texas according to the map or plat of record as recorded in Document Number 200600222, of the Official Public Records of Travis County, Texas (the *"**WCH Master Subdivision**"*). CR:146.

Importantly, the WCH Master Subdivision and lots contained therein are subject to that certain *West Cypress Hills Amended and Restated Master Declaration of Covenants, Conditions and Restrictions*, recorded as Document No. 2006222235 in the Official Public Records of Travis County, Texas, as amended and supplemented (the "***Master Declaration***"). CR:146; Apx:Ex.B. The Property is further subject to that certain *West Cypress Hills Development Area Declaration Phase One, Section Two* recorded as Document No. 2006222238 in the Official

2

Public Records of Travis County, Texas, as amended (the "***Development Area Declaration***"). CR:6; Apx:Ex.B.

The Master Declaration establishes the Association as the property owners' association for the WCH Master Subdivision and vests it with the power, duty, and responsibility of administering and enforcing the restrictive covenants contained within the Master Declaration. CR:11; Apx:Ex.B.

The Development Area Declaration also establishes the Association as a property owners' association for the specific development area in which the Property is located and vests the Association with the power, duty, and responsibility of administering and enforcing the restrictive covenants contained within the Development Area Declaration. CR:11; Apx:Ex.B.

The Property is subject to restrictive covenants established by both the Master and Development Area Declarations that regulate the design, use, and appearance of the Lots within the WCH Master Subdivision. CR:6; Apx:Ex.B.

The Master Declaration prohibits owners from constructing, altering, modifying, or installing any improvement without the advanced written approval of the West Cypress Hills Reviewer, which is the Architectural Committee (the "*ACC*"). Master **Declaration**, **Section 6.04**. CR:57; Apx:Ex.B. Further, the Development Area Declaration requires that any improvement must strictly comply with the Design Guidelines and must have prior written approval of the ACC.

3

**Development Area Declaration, Section 3.02, 3.02, and 3.12**. CR:101,104; Apx:Ex.B.

The Wolfs installed a 25-foot tall pole in their front yard and then mounted at least one security camera on top (the "***Improvement***"). CR:231. The Association denied the Wolfs request for AC approval of the installation of this Improvement during the initial review of the request for approval, and after a hearing with the Board of Directors for the Association (the "***Board***") ,and specifically notated that the installation of a security camera was not being denied but that the free-standing 25-foot pole installed on the Property was denied;  after receiving such denials, the Wolfs proceeded with the installation of the Improvement anyway. CR:138-142. The Association has notified the Wolfs that the Improvement is a violation of the Master Declaration and the Development Area Declaration (collectively, the "***Declarations***"). CR:141-142. The Wolfs have failed and refused to remove the Improvement, and the Improvement remains on the Property in violation of the Declaration. CR:188-189.

Ultimately, the Trial Court entered a Summary Judgment on October 6, 2025, in which the Trial Court denied the Association's motion for summary judgment, denied the Wolfs' motion for summary judgment with respect to the request for sanctions and granted the Wolfs' motion for summary judgment in respect to the Association's claims. CR:467; Apx:Ex.A.

4

Pursuant to the Order, the Trial Court ordered each party bear their owns court costs and attorneys' fees and that this was a final, appealable order. CR:467; Apx:Ex.A.

In other words, the Trial Court interpreted Section 202.023(b) of the Texas Property Code to disallow the enforcement of ANY covenant that would operate in any way to restrict an owner from installing any security device they might desire, regardless of any particular aspect of the installation. Apx:Ex.C.

Finally, the Master Declaration states:

"6.01 **Purpose.** This Master Declaration creates rights to regulate the design, use, and appearance of the Lots in order to preserve and enhance the Property's value and architectural harmony. One purpose of this Article is to promote and ensure the level of taste, design, quality, and harmony by which the Property is developed and maintained. Another purpose is to prevent Improvements and modifications that may be widely considered to be radical, curious, odd, bizarre, or peculiar in comparison to the then existing improvements. A third purpose is to regulate the appearance of every aspect of proposed or existing Improvements, including but not limited to dwellings, buildings, fences, landscaping, retaining walls, yard art, sidewalks, and driveways, and further including replacements or

modifications of original construction or installation. During the Development and Sale Period, a primary purpose of this Article is to reserve and preserve Declarant' s right of architectural control."
CR:55; Apx:Ex.B.

5

1. **The Trial Court erred by (a) denying the Association's motion for summary judgment regarding the right to enforce the restrictive covenants of the Association; and by (b) granting, in part, the Wolfs' motion for summary judgment.**

The standard of review of a Trial Court's granting a traditional motion for summary judgment is de novo. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007).

The moving party is entitled to summary judgment as a matter of law when there is no genuine dispute of material fact. *Chavez v. Kansas City S. Ry. Co.*, 520 S.W.3d 898, 900 (Tex. 2017). Further, the Trial Court should only grant a defendant's summary judgment if the defendant (1) negates at least one element of each of the plaintiff's causes of action, or (2) conclusively establishes each element of an affirmative defense. *Clark v. ConocoPhillips Co.*, 465 S.W.3d 720, 724 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

a. **The Trial Court erred by (a) denying the Association's motion for summary judgment regarding the right to enforce the restrictive covenants of the Association**.

As shown in the evidence submitted to the Trial Court, the Wolfs are the owners of the Property. CR:145. As described in detail above, the Property is subject to the Association's restrictive covenants. CR:146; Apx:Ex.B.

The interpretation of the governing documents of a homeowners' association is subject to the general rules of contract construction. *C.A.U.S.E v. Vill. Green*

6

*Homeowners Ass'n, Inc.*, 531 S.W.3d 268, 274 (Tex. App.—San Antonio 2017, no pet.) (citing *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)); *Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 925 (Tex. App.—Houston [1st Dist.] 2010, no pet.)(same); *Goddard v. Northhampton Homeowners Ass'n, Inc.*, 229 S.W.3d 353, 356 (Tex. App.—Amarillo 2007, no. pet.)(same). The court's primary duty is to ascertain and give effect to the parties' intentions as expressed in the document. *Uptegraph* at 925 (citing *Bank United v. Greenway Improvement Ass'n*, 6 S.W.3d 705, 707 (Tex.App.—Houston [1st Dist.] 1999, pet. denied)); *see Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 280 (Tex. 2018) (citing *Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987)); *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005)(per curiam); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

A court must consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank* at 312. "No single provision taken alone will be given controlling effect; rather all the provisions must be considered with reference to the whole instrument." *Webster* at 229. Additionally, Texas Property Code Section 202.004(a) states: "an exercise of discretionary authority by a property owners' association or other representative designated by an owner of real property concerning a restrictive covenant is presumed reasonable unless the court determines

by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory." TEX. PROP. CODE §202.004(a). Apx:Ex.C.

The elements of breach of contract in Texas are well established and they are: (1) There is a valid, enforceable contract; (2) The plaintiff performed or was excused from performing its contractual obligations; (3) The defendant breached the contract; and (4) the defendant's breach caused the plaintiff injury. *Valero Mktg. & Sup. Co. v. Kalama Int'l*, 51 S.W. 3d 345, 351 (Tex.App.-Houston [1st Dist.] 2001, no pet.). Despite proof of the elements of the Wolfs' breach of the restrictive covenants, the Trial Court denied the Association's motion for summary judgment under the erroneous assumption that an association cannot restrict the installation of a 25-foot tall pole in the front yard of the Property, outside the applicable setback area, and without the approval of the Association.

Texas Property Code §202.023 provides in relevant part,

"(b) …Except as provided by Subsection (c), a property owners' association may not adopt or enforce a restrictive covenant that prevents a property owner from building or installing security measures, including by not limited to a security camera, motion detector, or perimeter fence.

(c) This section does not prohibit a property owners' association from:

(1) prohibiting the installation of a security camera by a property owner in a place other than the property owner's private property;…"

8

TEX. PROP. C. §202.023(b) & (c)(1). Apx:Ex.C.

To be clear, the Association has never denied the Wolfs' application with respect to the installation of any security camera on the Property; instead, the Association denied the installation of a 25-foot tall, freestanding pole on the Property that is being used to support a security camera. CR:138-142. The Association, on numerous occasions, made clear to the Wolfs that they **COULD** install a security camera or cameras on their property – just not on the unapproved freestanding pole. CR:138-142. Despite the denial of the application to install the freestanding pole, the Wolfs moved forward with the installation of the pole under the erroneous assumption that §202.023 of the Texas Property Code did not allow for any restrictions on the installation of any improvement even tangentially related to a security camera. CR:231; Apx:Ex.C..

This interpretation of the statute by the Wolfs, and by the Trial Court, is erroneous. Taking this interpretation to its logical conclusion, the statute would then allow for a homeowner to build a moat around a property and fill it with alligators, as long as such an improvement could be called a "security measure". Or an owner would be permitted, despite any restriction to the contrary, to build a 100-foot tall observation tower, so long as a security camera were mounted on top. Such a broad and patently illogical interpretation of §202.023 will essentially allow a homeowner to install any improvement they desire, so long as a security camera goes on top,

9

virtually destroying the purpose of most restrictive covenants across this state. Certainly, this was not the intent of the legislature in adopting Section 202.023 of the Texas Property Code. Apx:Ex.C. The failure to allow for any types of regulation of any improvement, so long as it is merely related to a security measure, is irrational and contrary to common sense. As such, the Trial Court erred in denying the Association's motion for summary judgment in regard to the Wolfs' breach of the restrictive covenants of the Association.

Further, it should be noted that even within §202.023, subpart (c)(1) clearly makes an exception to the prohibition and expressly allows for an association to prohibit the placement of a security camera anywhere other than the owner's private property. Apx:Ex.C. The legislature clearly thought that an owner's right to install a camera needed to be balanced against the rights of other parties.

b. **The Trial Court erred in (b) granting, in part, the Wolfs' motion for summary judgment.**

For a Trial Court to grant a defendant's motion for summary judgment, the defendant must (1) negate at least one element of each of the plaintiff's causes of action, or (2) conclusively establish each element of an affirmative defense. *Clark v. ConocoPhillips Co.*, 465 S.W.3d 720, 724 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The Wolfs' sole argument relied upon the interpretation that §202.023 of the Texas Property Code does not allow for ***any*** restrictions or limitations on the installation of a security camera. CR:215-217; Apx:Ex.C.. The Wolfs did not, in fact,

negate any element of the Association's causes of action, but instead acknowledged the fact that the free-standing pole and cameras were installed by the Wolfs on the Property without gaining approval from the Architectural Committee because they are security measures. CR:146. This acknowledgment establishes that the Wolfs' actions were taken despite the knowledge that approval for installation of an improvement is necessary and acknowledging a breach of the restrictive covenants. Additionally, the Wolfs acknowledge that the Association did approve the cameras to be mounted on the house but did not approve the freestanding 25-foot pole mount on the lot, and outside the building envelope – in other words, in direct contravention of the setback requirement found in Section 3.08 of the Development Area Declaration. CR:104; Apx:Ex.B.

Appellees state that the cameras were installed "in their front yard as a security measure with a view of the street" due to repeated vehicle break-ins in the subdivision. CR:255. There is simply no evidence that a camera mounted somewhere else other than a freestanding, 25-foot pole, erected outside the available building envelope is the only way to provide for a view of the street or of the Wolfs' vehicles. Put another way, the Wolfs have ***not*** shown, or provided even a scintilla of evidence, that the Association's denial of the 25-foot pole prohibits them from having a security camera, or even prevents them from their stated and desired use of

11

such camera. For all of these reasons, the Wolfs' motion for summary judgment should have been denied.

## PRAYER FOR RELIEF

As the Trial Court erred in dismissing the Association's claims against the Wolfs entirely regarding the right to enforce the restrictive covenants of the Association, and because the Trial Court erred in denying the Association's motion for summary judgment, this case should be reversed and judgment rendered for the Association, in part, and remanded in part, so that the Trial Court may award the attorney fees of the Association expended in this appeal, and for any other and further relief for which the Association may be entitled.

Respectfully submitted,

CAGLE PUGH, LTD LLP

_____
Adam Pugh
Texas Bar No. 24044341
adam.pugh@caglepugh.com
4301 Westbank Drive,
Bldg. A, Suite 150
Austin, Texas 78746
Telephone: (737) 261-0600
Facsimile: (737) 261-0637

***Counsel for Appellant***

# CERTIFICATE OF SERVICE

I certify that on this 10th day of December 2025 a true and correct copy of the foregoing instrument was served in accordance with T.R.A.P. 6.3(b) by e-filing to the following:

*Via e-Service*

Thomas Wolf                                 twolf.tx@gmail.com
21813 Agarito Lane
Spicewood, Texas 78669
*Appellee*

Eileen Wolf                                 twolf.tx@gmail.com
21813 Agarito Lane
Spicewood, Texas 78669
*Appellee*

_____
Adam Pugh

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 2,667 words (excluding the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix if any). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes, which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

_____

Adam Pugh



# APPENDIX

**APPENDIX**

**EXHIBIT A**

**Cause No. D-1-GN-25-000637**

| | | |
|---|---|---|
| **WCH MASTER COMMUNITY, INC.** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| | § | **TRAVIS COUNTY, TEXAS** |
| **v.** | § | |
| | § | |
| **THOMAS WOLF AND EILEEN WOLF** | § | |
| *Defendants.* | § | **98TH JUDICIAL DISTRICT** |

### ORDER GRANTING IN PART and DENYING IN PART DEFENDANTS' TRADITIONAL AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On September 25, 2025, the Court heard Plaintiff's Motion for Summary Judgment and Defendants' Traditional and No-Evidence Motion for Summary Judgment. Having considered the motions, the responses, the exhibits, and the case file, the Court finds that Plaintiff's motion should be DENIED and that Defendant's motion should be GRANTED IN PART and DENIED IN PART.

It is hereby ORDERED that Plaintiff's Motion for Summary Judgment is DENIED.

It is further ORDERED that Defendant's Traditional and No-Evidence Motion for Summary Judgment is GRANTED with respect to Plaintiff's claims against Defendants. Accordingly, it is hereby ORDERED that Plaintiff shall take nothing on its claims and Plaintiff's claims are DISMISSED in their entirety. It is further ORDERED that Defendant's Motion for Summary Judgment is DENIED with respect to Defendant's request for sanctions.

It is further ORDERED that each party shall bear their own court costs and attorney's fees.

It is further ORDERED that all relief requested in this matter that is not addressed herein is DENIED. This is a final, appealable order.

Signed on October 6, 2025.

I, VELVA L. PRICE, District Clerk, Travis County,
correct copy as same appears of record in my
office
On 11/10/2025 10:07:34

VELVA L. PRICE
DISTRICT CLERK
By Deputy: SH

_____
HONORABLE JUDGE PRESIDING

Page **1** of **1**

# APPENDIX
# EXHIBIT B





\After Recording Return To:

Robert D. Burton
Armbrust & Brown, L.L.P.
100 Congress Ave., Suite 1300
Austin, Texas 78701

# WEST CYPRESS HILLS
## AMENDED AND RESTATED MASTER
## DECLARATION OF COVENANTS, CONDITIONS
## AND RESTRICTIONS

*Travis County, Texas*



Declarant: CYPRESS RANCH, LTD., a Texas limited partnership

266575-2 11/09/2006

## NOTE TO TITLE COMPANY:

THIS INSTRUMENT AMENDS AND RESTATES IN ITS ENTIRETY THAT CERTAIN <u>WEST CYPRESS HILLS MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS</u>, RECORDED AS DOCUMENT NO. 2004098274, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AS AMENDED BY THAT CERTAIN <u>FIRST AMENDMENT TO WEST CYPRESS HILLS MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS</u>, RECORDED AS DOCUMENT NO. 2004218222, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS AND THAT CERTAIN <u>SECOND AMENDMENT TO WEST CYPRESS HILLS MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS</u>, RECORDED AS DOCUMENT NO. 2005055934 (THE "ORIGINAL DECLARATION").

UPON RECORDING THIS INSTRUMENT IN THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, THE "PROPERTY", AS DEFINED IN THE ORIGINAL DECLARATION (THE "INITIALLY SUBMITTED PROPERTY"), WILL BE SUBJECT TO THE TERMS AND PROVISIONS OF THIS INSTRUMENT, WHICH WILL SUPERCEDE AND REPLACE THE TERMS AND PROVISIONS OF THE ORIGINAL DECLARATION. THE INITIALLY SUBMITTED PROPERTY HAS BEEN SUBDIVIDED PURSUANT TO THE PLAT OF <u>WEST CYPRESS HILLS PHASE ONE SECTION ONE</u>, RECORDED AS DOCUMENT NO. 200400094, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AS MODIFIED BY THE <u>REPLAT OF LOTS 7, BLOCK 1 WEST CYPRESS HILLS PHASE ONE SECTION ONE</u>, RECORDED AS DOCUMENT NO. 200400195, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS. DECLARANT MAY FURTHER AMEND AND RESTATE THE ORIGINAL DECLARATION, AS IT RELATES TO THE INITIALLY SUBMITTED PROPERTY, BY RECORDING IN THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS A "DEVELOPMENT AREA DECLARATION" (AS HEREINAFTER DEFINED) WITH RESPECT TO THE INITIALLY SUBMITTED PROPERTY. IN SUCH EVENT, THE ORIGINAL DECLARATION SHALL BE FURTHER AMENDED AND RESTATED, AS IT RELATES TO THE INITIALLY SUBMITTED PROPERTY, AS SET FORTH IN SUCH DEVELOPMENT AREA DECLARATION.



TEX 60575-2 11/09/2006

# WEST CYPRESS HILLS

## AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

### TABLE OF CONTENTS

ARTICLE I DEFINITIONS ........................................................................................................3

ARTICLE II GENERAL RESTRICTIONS ...............................................................................9
    2.01    General .................................................................................................................9
    2.02    Incorporation of Development Area Declarations .........................................10
    2.03    Conceptual Plans ..............................................................................................10
    2.04    Provision of Benefits and Services to Service Areas. .....................................11

ARTICLE III WCH MASTER COMMUNITY, INC. .............................................................11
    3.01    Organization .....................................................................................................11
    3.02    Neighborhoods .................................................................................................12
    3.03    Membership. .....................................................................................................12
    3.04    Voting Rights ....................................................................................................14
    3.05    Vote Allocation. ...............................................................................................16
    3.06    Powers ...............................................................................................................18
    3.07    Acceptance of Common Area and Special Common Area ............................21
    3.08    Indemnification. ...............................................................................................21
    3.09    Insurance ...........................................................................................................22
    3.10    Control by Declarant ........................................................................................22
    3.11    Bulk Rate Contracts .........................................................................................22
    3.12    Community Systems .........................................................................................23

ARTICLE IV INSURANCE .....................................................................................................23
    4.01    Insurance ...........................................................................................................23
    4.02    Restoration ........................................................................................................23
    4.03    Mechanic's and Materialmen's Lien ...............................................................24

ARTICLE V COVENANT FOR ASSESSMENTS ..................................................................24
    5.01    Assessments. .....................................................................................................24
    5.02    Association Accounts .......................................................................................25
    5.03    Regular Annual Assessments ..........................................................................25
    5.04    Special Common Area Assessments ...............................................................26
    5.05    Service Area Assessments ................................................................................26
    5.06    Special Assessments .........................................................................................26
    5.07    Amount of Assessment. ...................................................................................27
    5.08    Late Charges .....................................................................................................28
    5.09    Owner's Personal Obligation for Payment of Assessments...........................28
    5.10    Assessment Lien and Foreclosure ..................................................................28
    5.11    Exempt Property................................................................................................31
    5.12    Fines and Damages Assessment.......................................................................31
    5.13    Reserve Assessment .........................................................................................32

ARTICLE VI WEST CYPRESS HILLS REVIEWER...............................................................33

i

6.01     Purpose...................................................................................................33
6.02     Architectural Control By Declarant.......................................................33
6.03     Architectural Control by Association.....................................................34
6.04     Prohibition of Construction, Alteration and Improvement.....................35
6.05     Architectural Approval..........................................................................35

ARTICLE VII  MORTGAGE PROVISIONS.........................................................37
7.01     Notice of Action.....................................................................................37
7.02     Examination of Books............................................................................38
7.03     Taxes, Assessments and Charges ..........................................................38

ARTICLE VIII  GENERAL PROVISIONS.............................................................38
8.01     Term.......................................................................................................38
8.02     Eminent Domain....................................................................................39
8.03     Amendment............................................................................................39
8.04     Roadway and Utility Easements ...........................................................39
8.05     Enforcement...........................................................................................40
8.06     Higher Authority....................................................................................40
8.07     Severability ...........................................................................................40
8.08     Conflicts ................................................................................................40
8.09     Gender....................................................................................................40
8.10     Acceptance by Grantees ........................................................................40
8.11     Damage and Destruction........................................................................41
8.12     No Partition............................................................................................42
8.13     View Impairment....................................................................................42
8.14     Safety and Security ................................................................................42
8.15     Notices...................................................................................................43

ARTICLE IX  EASEMENTS...................................................................................43
9.01     Right of Ingress and Egress...................................................................43
9.02     Reserved Easements...............................................................................43
9.03     Utility Easements...................................................................................43
9.04     Declarant as Attorney in Fact ...............................................................44

ARTICLE X  DEVELOPMENT RIGHTS................................................................44
10.01    Development by Declarant .....................................................................44
10.02    Special Declarant Rights........................................................................44
10.03    Addition of Land ...................................................................................45
10.04    Withdrawal of Land ...............................................................................45
10.05    Notice of Applicability...........................................................................46
10.06    Assignment of Declarant's Rights .........................................................47

ARTICLE XI  DISPUTE RESOLUTION..................................................................47
11.01    Agreement to Encourage Resolution of Disputes Without Litigation. ...............47
11.02    Dispute Resolution Procedures. .............................................................49
11.03    Initiation of Litigation by Association....................................................50

260575-2 11/09/2006                 WEST CYPRESS HILLS
AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

# WEST CYPRESS HILLS
# AMENDED AND RESTATED MASTER DECLARATION OF
# COVENANTS, CONDITIONS AND RESTRICTIONS

This West Cypress Hills Amended and Restated Master Declaration of Covenants, Conditions and Restrictions (the "**Master Declaration**") is made by **CYPRESS RANCH, LTD.**, a Texas limited partnership (the "**Declarant**"), and is as follows:

## RECITALS:

**A.** Declarant previously executed and recorded that <u>West Cypress Hills Master Declaration of Covenants, Conditions and Restrictions</u>, recorded as Document No. 2004098274, Official Public Records Of Travis County, Texas, as amended by that certain <u>First Amendment to West Cypress Hills Master Declaration Of Covenants, Conditions And Restrictions</u>, recorded as Document No. 2004218222, Official Public Records Of Travis County, Texas and that certain <u>Second Amendment to West Cypress Hills Master Declaration Of Covenants, Conditions And Restrictions</u>, recorded as Document No. 2005055934 (as amended, the "**Original Declaration**").

**B.** The "Property", as defined in, and encumbered by, the Original Declaration consists of approximately 447.641 acres of land out of the A.B. & M. Survey No. 37, the W.C. Rountree Survey No. 68, the H. Reimers Survey No. 68, the H. Reimers Survey No. 38 and the B. S. & F. Survey No. 67, in Travis County, Texas, being the same tracts of land as described in deeds recorded as Document No. 2002048694, 2002048250 and 2002192448, Official Public Records of Travis County, Texas (the "**Property**").

**C.** Pursuant to Section 9.3 of the Original Declaration, the Original Declaration may be amended by the Declarant acting alone until May 15, 2023, or until Declarant no longer holds a majority of votes in the Association, whichever occurs last.

**D.** Declarant desires to create and carry out a uniform plan for the development, improvement, and sale of the Property, subject to the terms and provisions of this Master Declaration, with the terms and provisions of this Master Declaration to supersede and replace the terms and provisions of the Original Declaration. The Original Declaration is hereby amended and restated in its entirety as set forth in this Declaration.

**G.** Upon recording this Master Declaration in the Official Public Records of Travis County, Texas, the Property will be subject to this Master Declaration. "Additional Property" (as defined below) <u>may</u> be added to the Property in accordance with Section 10.03 below. Such Additional Property may then be made subject to this Master Declaration upon the filing of one or more notices of applicability pursuant to *Section 10.05* below, and once such notices of applicability have been filed pursuant to *Section 10.05*, the portions of the Additional Property described therein will constitute the Development (as defined below) and will be governed by and fully subject to this Master Declaration, and the Development in turn will be comprised of

WEST CYPRESS HILLS
AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

separate Development Areas (as defined below) which will be governed by and subject to separate Development Area Declarations (as defined below) in addition to this Master Declaration.

> The Property is currently subject to the terms and provisions of this Master Declaration. However, no portion of any Additional Property is subject to the terms and provisions of this Master Declaration until a Notice of Applicability (as defined in *Section 10.05*) is filed in the Official Public Records of Travis County, Texas. A Notice of Applicability may only be filed by Declarant. If Declarant is not the owner of any portion of the Additional Property then being made subject to the terms and provisions of this Master Declaration, the owner of such portion of the Additional Property must execute the Notice of Applicability evidencing its consent to its recordation.

H.      By the filing of this Master Declaration, Declarant serves notice that the Property is subject to the terms and provisions of this Master Declaration and, upon the further filing of one or more notices of applicability pursuant to the requirements of *Section 10.05* below, portions of the Additional Property identified in such notice or notices will be made subject to the terms and provisions of this Master Declaration.

| Additional Property versus Property versus Development versus Development Area | |
|---|---|
| "Additional Property"- | This is the land which is added to the Property, from time to time and in accordance with Section 10.03, that <u>may be made</u> subject to this Master Declaration by the filing of one or more Notices of Applicability. |
| "Property"- | This is the Property which is currently subject to the terms and provisions of this Master Declaration. |
| "Development"- | This is the Property, together with any Additional Property that <u>has been made</u> subject to this Master Declaration through the filing of a Notice of Applicability. |
| "Development Area" | This is a portion of the Development. In most circumstances, a Development Area will comprise a separately platted subdivision within the Development. |

2

**NOW, THEREFORE**, it is hereby declared: (1) that (a) the Property and (b) those portions of the Additional Property, as and when subjected to this Master Declaration pursuant to *Section 10.05 below*, will be held sold, conveyed, and occupied subject to the following covenants, conditions and restrictions which will run with the Property and such portions of the Additional Property and will be binding upon all parties having right, title, or interest in or to the Property and such portions of the Additional Property or any part thereof, their heirs, successors, and assigns and will inure to the benefit of each owner thereof; and (2) that each contract or deed conveying the Property and those portions of the Additional Property will conclusively be held to have been executed, delivered, and accepted subject to the following covenants, conditions and restrictions, regardless of whether or not the same are set out in full or by reference in said contract or deed.

This Master Declaration uses notes (text set apart in boxes) to illustrate concepts and assist the reader. If there is a conflict between any note and the text of the Master Declaration, the text will control.

## ARTICLE I
## DEFINITIONS

Unless the context otherwise specifies or requires, the following words and phrases when used in this Master Declaration will have the meanings hereinafter specified:

"**Additional Property**" means any and all real property added to the Property pursuant to *Section 10.03* of this Master Declaration, subject to such deletions therefrom as may be made pursuant to *Section 10.03* and *Section 10.04* of this Master Declaration.

"**Assessment**" or "**Assessments**" means assessments imposed by the Association under this Master Declaration.

"**Assessment Unit**" has the meaning set forth in *Section 5.07*.

"**Association**" means WCH Master Community, Inc., a Texas non-profit corporation, which will be created by Declarant to exercise the authority and assume the powers specified in *Article 3* and elsewhere in this Master Declaration.

"**Board**" means the Board of Directors of the Association.

"**Bulk Rate Contract**" or "**Bulk Rate Contracts**" means one or more contracts which are entered into by the Association for the provision of utility services or other services of any kind or nature to the Lots and/or Condominium Units. The services provided under Bulk Rate Contracts may include, without limitation, cable television services, telecommunications services, internet access services, "broadband" services, security services, trash pick up services, propane service, natural gas service, lawn maintenance services and any other services of any kind or nature which are considered by the Board to be beneficial.

3

"**Bylaws**" means the Bylaws of the Association as adopted and as amended from time to time.

"**Certificate**" means the Certificate of Formation of the Association, filed in the Office of the Secretary of State of Texas, as the same may be amended from time to time.

"**Common Area**" means any property and facilities that the Association owns or in which it otherwise holds rights or obligations. Common Area includes any property that the Association holds under a lease, license, or any easement in favor of the Association. Some Common Area will be solely for the common use and enjoyment of the Owners, while other portions of the Common Area will be for the use and enjoyment of the Owners and members of the public.

"**Condominium Unit**" means an individual unit, including any common element assigned thereto, within a condominium regime, if any, established within the Development.

"**Declarant**" means **CYPRESS RANCH, LTD.**, a Texas limited partnership, its successors or assigns; provided that any assignment(s) of the rights of **CYPRESS RANCH, LTD.**, as Declarant, must be expressly set forth in writing and recorded in the Official Public Records of Travis County, Texas.

> The "**Declarant**" is the party who causes the Property to be developed for actual residential use. Declarant enjoys special privileges to help protect its investment in the Development. These special rights are described in this Master Declaration. Many of these rights do not terminate until either Declarant: (i) has sold all Lots or Condominium Units which may be created out of the Property; or (ii) voluntarily terminates these rights by a written instrument recorded in the Official Public Records of Travis County, Texas.

"**Design Guidelines**" means the standards for design, construction, landscaping, and exterior items placed on any Lot or Condominium Unit adopted pursuant to *Section 6.05(b)*, as the same may be amended from time to time. The Design Guidelines may consist of multiple written design guidelines applying to specific portions of the Development. Declarant may adopt the Design Guidelines applicable to the Development or any Development Area.

"**Development**" refers to the Property, together with any and all portions of the Additional Property that are made subject to this Master Declaration pursuant to *Section 10.05* of this Master Declaration.

"**Development and Sale Period**" refers the period of time that Declarant owns or has the option to acquire all or any portion of the Property. The Declarant may terminate the Development and Sale Period by an instrument executed by the Declarant and recorded in the Official Public Records of Travis County, Texas.

260575-2 11/09/2006                                     WEST CYPRESS HILLS
AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

"**Development Area**" means any part of the Development (less than the whole), which Development Areas may be subject to Development Area Declarations in addition to being subject to this Master Declaration.

"**Development Area Declaration**" means, with respect to any Development Area, the separate instruments containing covenants, restrictions, conditions, limitations and/or easements, to which the property within such Development Area is subjected. A Development Area Declaration may take the form of a condominium declaration filed in accordance with Chapter 82 of the Texas Property Code or any successor statute.

"**Development Owner**" refers to any Owner who acquires a Lot for the purpose of resale to a Homebuilder.

"**Homebuilder**" refers to any Owner who is in the business of constructing residences for resale to third parties and intends to construct a residence (including a Condominium Unit) on such Lot for resale to a third party.

"**Improvement**" means every structure and all appurtenances of every type and kind, whether temporary or permanent in nature, including, but not limited to, buildings, outbuildings, storage sheds, patios, tennis courts, sport courts, recreational facilities, swimming pools, putting greens, garages, driveways, parking areas and/or facilities, storage buildings, sidewalks, fences, gates, screening walls, retaining walls, stairs, patios, decks, walkways, landscaping, mailboxes, poles, signs, antennae, exterior air conditioning equipment or fixtures, exterior lighting fixtures, water softener fixtures or equipment, and poles, pumps, wells, tanks, reservoirs, pipes, lines, meters, antennas, towers and other facilities used in connection with water, sewer, gas, electric, telephone, regular or cable television, or other utilities.

"**Lot**" means any portion of the Development designated by Declarant or as shown as a subdivided lot on a Plat other than Common Area, Special Common Area or a Lot on which a condominium regime that has been established pursuant to Chapter 82 of the Texas Property Code or any successor statute.

"**Manager**" has the meaning set forth in *Section 3.06(h)*.

"**Master Restrictions**" means the restrictions, covenants, and conditions contained in this Master Declaration, any Development Area Declaration, the Design Guidelines, Bylaws, or in any rules and regulations promulgated by the Association pursuant to this Master Declaration or any Development Area Declaration, as adopted and amended from time to time. See Table 1 for a summary of the Master Restrictions.

"**Members**" means every person or entity that holds membership privileges in the Association.

"**Membership Agreement**" means an agreement in the form specified by the Board for execution by each Member, evidencing such Member's acknowledgment of and agreement to

5

be bound by the terms of this Master Declaration. As provided in *Section 3.03(b)* below, the Board must elect to require each Member to execute a Membership Agreement.

"**Mortgage**" or "**Mortgages**" means any mortgage(s) or deed(s) of trust securing indebtedness and covering any Lot or Condominium Unit.

"**Mortgagee**" or "**Mortgagees**" means the holder(s) of any Mortgage(s).

"**Original Declaration**" means that certain West Cypress Hills Master Declaration of Covenants, Conditions and Restrictions, recorded as Document No. 2004098274, Official Public Records Of Travis County, Texas, as amended by that certain First Amendment to West Cypress Hills Master Declaration Of Covenants, Conditions And Restrictions, recorded as Document No. 2004218222, Official Public Records Of Travis County, Texas and that certain Second Amendment to West Cypress Hills Master Declaration Of Covenants, Conditions And Restrictions, recorded as Document No. 2005055934.

"**Owner**" means the person(s), entity or entities, including Declarant, holding all or a portion of the fee simple interest in any Lot or a Condominium Unit, but does not include the Mortgagee under a Mortgage prior to its acquisition of fee simple interest in such Lot or Condominium Unit pursuant to foreclosure of the lien of its Mortgage.

"**Plat**" means a subdivision plat of any portion of the Development as recorded in the Official Public Records of Travis County, Texas, and any amendments thereto.

"**Property**" means approximately 447.641 acres of land out of the A.B. & M. Survey No. 37, the W.C. Rountree Survey No. 68, the H. Reimers Survey No. 68, the H. Reimers Survey No. 38 and the B. S. & F. Survey No. 67, in Travis County, Texas, being the same tracts of land as described in deeds recorded as Document No. 2002048694, 2002048250 and 2002192448, Official Public Records of Travis County, Texas.

"**Service Area**" means a group of Lots and/or Condominium Units designated as a separate Service Area pursuant to this Master Declaration for purpose of receiving benefits or services from the Association which are not provided to all Lots and Condominium Units. A Service Area may be comprised of more than one housing type and may include noncontiguous Lots. A Lot or Condominium Unit may be assigned to more than one Service Area. Service Area boundaries may be established and modified as provided in *Section 2.04*.

"**Service Area Assessments**" means assessments levied against the Lots and/or Condominium Units in a particular Service Area to fund Service Area Expenses, as described in *Section 5.05*.

"**Service Area Expenses**" means the actual and estimated expenses which the Association incurs or expects to incur for the benefit of Owners within a particular Service Area, which may include a reasonable reserve for capital repairs and replacements and a reasonable administrative charge, as may be authorized pursuant to this Master Declaration.

"**Special Common Area**" means any interest in real property or improvements which is designated by Declarant in a notice of applicability filed pursuant to *Section 10.05*, in a Development Area Declaration, or in any written instrument recorded by Declarant in the Official Public Records of Travis County, Texas (which designation will be made in the sole and absolute discretion of Declarant) as common area which benefits one or more, but less than all of the Lots, Owners or Development Areas, and is or will be conveyed to the Association, or otherwise held by Declarant for the benefit of the Owners of property to which such Special Common Area benefits. The notice of applicability, Development Area Declaration, or written notice will identify the Lots, Owners or Development Areas benefited by such Special Common Area. By way of illustration and not limitation, Special Common Area might include such things as private roadways or gates, entry features, or landscaped medians which primarily benefit certain Lots and/or Condominium Units. All costs associated with maintenance, repair, replacement, and insurance of Special Common Area will be assessed as a Special Common Area Assessment against the Owners of the Units and/or Condominium Units to which the Special Common Area is assigned.

"**West Cypress Hills Reviewer**" means Declarant or its designee until Declarant no longer owns or has the option to acquire all or any portion of the Property. When Declarant no longer owns any portion of the Property, the rights of the West Cypress Hills Reviewer will automatically be transferred to the architectural control committee appointed by the Board.

| TABLE 1: MASTER RESTRICTIONS | |
|---|---|
| **Master Declaration** (recorded) | Creates obligations that are binding upon the Association and all present and future owners of Property made subject to the Master Declaration by the filing of a Notice of Applicability. |
| **Notice of Applicability** (recorded) | Describes the portion of the Property being made subject to the terms and provisions of the Master Declaration. |
| **Development Area Declaration** (recorded) | A recorded covenant which includes additional covenants, conditions and restrictions governing portions of the Development. |
| **Certificate of Formation:** (filed with the Secretary of State) | The Certificate of Formation of the Association, which establish the Association as a not-for-profit corporation under Texas law. |
| **By-Laws:** (adopted by the Association) | The By-Laws of the Association which govern the Association's internal affairs, such as elections, meetings, etc. |
| **Design Guidelines:** (adopted) | The design standards and architectural and aesthetics guidelines adopted pursuant to *Article 6*, which govern new construction of Improvements and modifications thereto. |
| **Rules:** (adopted by the Board of the Association) | The use restrictions and rules of the Association adopted pursuant to *Section 3.06(a)*, which regulate use of property, activities, and conduct within the Development. |
| **Board Resolutions:** (adopted by the Board of the Association) | The resolutions adopted by Board which establish rules, policies, and procedures for internal governance and activities of the Association. |

## ARTICLE II
## GENERAL RESTRICTIONS

2.01    **General.** All Lots and Condominium Units within the Development, including both those located within the Property, and those located within portions of the Additional Property for which a notice of applicability has been filed in accordance with *Section 10.05*, will be owned, held, encumbered, leased, used, occupied and enjoyed subject to: (i) the applicable conditions, restrictions, reservations, and easements contained in this Master Declaration; (ii) any applicable conditions, restrictions, reservations, and easements contained in the Development Area Declaration covering the Development Area in which such Lot or Condominium Unit is located; (iii) the Design Guidelines, as amended or modified as to such Lots or Condominium Units; and (iv) any rules and regulations adopted by the Board. **NO PORTION OF THE ADDITIONAL PROPERTY WILL BE SUBJECT TO THE TERMS AND PROVISIONS OF THIS MASTER DECLARATION UNTIL A NOTICE OF APPLICABILITY HAS BEEN FILED FOR SUCH PROPERTY IN ACCORDANCE WITH *SECTION 10.05* OF THIS MASTER DECLARATION.**

Ordinances and requirements imposed by local governmental authorities are applicable to all Lots and Condominium Units within the Development. Compliance with this Master Declaration and the Design Guidelines is not a substitute for compliance with such ordinances and regulations. Please be advised that neither the Master Declaration nor the Design Guidelines purport to list or describe each restriction which may be applicable to a Lot or Condominium Unit located within the Development. Each Owner is advised to review all encumbrances affecting the use and improvement of their Lot or Condominium Unit prior to submitting plans to the West Cypress Hills Reviewer for approval. Furthermore, approval by the West Cypress Hills Reviewer should not be construed by the Owner that any Improvement complies with the terms and provisions of all encumbrances which may affect the Owner's Lot or Condominium Unit. Certain encumbrances may benefit parties whose interests are not addressed by the West Cypress Hills Reviewer.

Each Owner is further advised that as of the date of this Master Declaration, local governmental authorities may require that the Owner obtain from the West Cypress Hills Reviewer approval of all Improvements proposed to be located on a Lot or Condominium Unit prior to submitting plans for the Improvements to the local governmental authorities for approval. Each Owner is further advised that if any local governmental authority requires pre-approval of all Improvements prior to submission to the local authority for approval, any approval granted by the West Cypress Hills Reviewer, or any notation on the plans signifying West Cypress Hills Reviewer approval, is conditional and no Improvements may be constructed on the Lot or Condominium Unit until the Owner has submitted to the West Cypress Hills Reviewer a copy of the plans and specifications approved by the local governmental authority and the West Cypress Hills Reviewer has issued to the owner a "Notice to Proceed." In the event of a conflict between the plans and specifications approved by the West Cypress Hills Reviewer and the plans and specifications approved by a local

9

governmental authority, the West Cypress Hills Reviewer may require that the Owner resubmit the plans and specifications for re-approval by the West Cypress Hills Reviewer, may withdraw the approval previously granted to the Owner, or may require that the Owner apply to the West Cypress Hills Reviewer for a variance. Each Owner acknowledges that no local governmental authority has the authority to modify the terms and provisions of this Master Declaration, any Development Area Declaration, or the Design Guidelines applicable to the Development. A local governmental authority may change or modify the requirements and procedures applicable to their approval of plans and specifications for the construction of Improvements, and each Owner is advised to contact each local governmental authority to obtain a current version of such requirements and procedures.

> **NOTICE**
> This Master Declaration, any Development Area Declaration, the Design Guidelines, and the rules and regulations adopted by the Board are subject to change from time to time. By owning or occupying a Lot or Condominium Unit, you agree to remain in compliance with this Master Declaration, any applicable Development Area Declaration, the Design Guidelines, and the rules and regulations, as they may change from time to time.

2.02 **Incorporation of Development Area Declarations.** Upon recordation of a Development Area Declaration in the Official Public Records of Travis County, Texas, such Development Area Declaration will, automatically and without the necessity of further act, be incorporated into, and be deemed to constitute a part of this Master Declaration, to the extent not in conflict with this Master Declaration, but will apply only to the Development Area described in and covered by such Development Area Declaration. Without limitation on the foregoing, upon recordation of a Development Area Declaration in the Official Public Records of Travis County, Texas with respect to all or any portion of the Property, the Original Declaration shall be deemed to have been further amended and restated as set forth in such Development Area Declaration.

2.03 **Conceptual Plans.** All master plans, site plans, brochures, illustrations, information and marketing materials relating to the Property (collectively, the "**Conceptual Plans**") are conceptual in nature and are intended to be used for illustrative purposes only. The land uses reflected on the Conceptual Plans are subject to change at any time and from time to time, and it is expressly agreed and understood that land uses within the Property may include uses which are not shown on the Conceptual Plans. Neither Declarant nor any homebuilder or other developer of any portion of the Property or the Development makes any representation or warranty concerning such land uses and it is expressly agreed and understood that no Owner will be entitled to rely upon the Conceptual Plans in making the decision to purchase any land or Improvements within the Property or the Development. Each Owner who acquires a Lot within the Development acknowledges that the Development is a master planned community, the development of which is likely to extend over many years, and agrees that the Association will not engage in, or use Association funds to support, protest, challenge, or make any other form of objection to changes in the Conceptual Plans as they may be amended or modified from time to time.

10

> The Development is a master planned community which will be developed over a number of years. Changes may be made to the plans for the Development from time to time.

2.04 **Provision of Benefits and Services to Service Areas**.

(a) Declarant, in a notice of applicability filed pursuant to *Section 10.05* or in any written notice recorded in the Official Public Records of Travis County, Texas, may assign Lots and/or Condominium Units to one or more Service Areas (by name or other identifying designation) as it deems appropriate, which Service Areas may be then existing or newly created, and may require that the Association provide benefits or services to such Lots and/or Condominium Units in addition to those which the Association generally provides to the Development. Declarant may unilaterally amend any notice of applicability or any written notice recorded in the Official Public Records of Travis County, Texas, to re-designate Service Area boundaries. All costs associated with the provision of services or benefits to a Service Area will be assessed against the Lots and/or Condominium Units within the Service Area as a Service Area Assessment.

(b) In addition to Service Areas which Declarant may designate, any group of Owners may petition the Board to designate their Lots and/or Condominium Units as a Service Area for the purpose of receiving from the Association: (a) special benefits or services which are not provided to all Lots and/or Condominium Units, or (b) a higher level of service than the Association otherwise provides. Upon receipt of a petition signed by Owners of a majority of the Lots and/or Condominium Units within the proposed Service Area, the Board will investigate the terms upon which the requested benefits or services might be provided and notify the Owners in the proposed Service Area of such terms and the charge to made therefor, which may include a reasonable administrative charge in such amount as the Board deems appropriate (provided, any such administrative charge will apply at a uniform rate per Lot and/or Condominium Unit among all Service Areas receiving the same service). Upon written approval of the proposal by Owners of at least sixty-seven percent (67%) of the Lots and/or Condominium Units within the proposed Service Area, the Association will provide the requested benefits or services on the terms set forth in the proposal. The cost and administrative charges associated with such benefits or services will be assessed against the Lots and/or Condominium Unit within such Service Area as a Service Area Assessment.

## ARTICLE III
## WCH MASTER COMMUNITY, INC.

3.01 **Organization**. The Association is a nonprofit corporation created for the purposes, charged with the duties, and vested with the powers of a Texas non-profit corporation. Neither the Certificate nor Bylaws will for any reason be amended or otherwise changed or interpreted so as to be inconsistent with this Master Declaration.

11

3.02 **Neighborhoods.** Every Lot and Condominium Unit will be located within a Neighborhood. Lots and Condominium Units are grouped into "Neighborhoods" to: (i) facilitate a system of representative voting on matters which this Master Declaration or any Development Area Declaration require approval of the Association's membership; and (ii) to promote a sense of community and belonging by permitting Owners and residents within a Neighborhood to share, discuss and take action on issues unique to their Neighborhood. A Neighborhood may be comprised of any number of Lots or Condominium Units and may include Lots or Condominium Units of more than one type, as well as Lots or Condominium Units that are not contiguous to one another. Each Neighborhood will elect one "Neighborhood Delegate" to cast the votes allocated to all Lots and Condominium Units in that Neighborhood on matters requiring a vote of the Owners, as described below in this Article 3.

Each notice of applicability filed pursuant to *Section 10.05* for the purpose of annexing portions of the Property into the Development, or another written notice executed by Declarant and recorded in the Official Public Records of Travis County, Texas, shall initially assign the property described therein to a specific Neighborhood which may then be existing or newly created. Declarant may record an amendment to any previously recorded notice to designate or change Neighborhood boundaries.

3.03 **Membership.**

(a) Any person or entity, upon becoming an Owner, will automatically become a Member of the Association. Membership will be appurtenant to and will run with the ownership of the Lot or Condominium Unit that qualifies the Owner thereof for membership, and membership may not be severed from the ownership of the Lot or Condominium Unit, or in any way transferred, pledged, mortgaged or alienated, except together with the title to such Lot or Condominium Unit.

> If you acquire a Lot or Condominium Unit you automatically become a member of the Association. **Membership is Mandatory!**

(b) If required by the Board, each Owner, other than Declarant, must execute a Membership Agreement and deliver the same to the Association prior to or concurrently with the recording of a deed conveying fee title to a Lot or Condominium Unit to such Owner. Each Owner must notify the immediate transferee of his Lot or Condominium Unit of such transferee's obligation to execute and deliver a Membership Agreement, but the failure to notify a transferee will not relieve such transferee of his obligations under this *Section 3.03(b)*. The failure to execute a Membership Agreement will not prevent any person from being a Member or Owner under the terms of the Certificate, Bylaws or Master Restrictions, or excuse any Member from the payment of Assessments. If a Membership Agreement is required by the Board, an Owner who has not executed and delivered a Membership Agreement will automatically forfeit his right to vote as a Member and additionally forfeit his right to the use and enjoyment of the Common Area and applicable Special Common Area. Such Owner will not be entitled

to restoration of his voting privileges and rights in the Common Area or applicable Special Common Area until execution and delivery of a Membership Agreement by such Owner. However, the Board may, at the Board's sole discretion, provide that a Member will be entitled to the full privileges of membership in the Association, notwithstanding the failure to execute a Membership Agreement. In the event Members are entitled to a key, membership card or other token evidencing or facilitating the right to use any Improvements erected or placed on the Common Area or Special Common Area, the Board may require any Member who has not executed a Membership Agreement to return the same to the Board immediately.

Within thirty (30) days after acquiring legal title to a Lot or Condominium Unit, each Owner must provide the Association with: (1) a copy of the recorded deed by which the Owner has acquired title to the Lot or Condominium Unit; (2) the Owner's address, phone number, and driver's license number, if any; (3) any Mortgagee's name and address; and (4) the name and phone number of any resident other than the Owner.

> You may be required to execute a Membership Agreement before using any of the Association's property or voting on any Association matter. Your obligation to pay assessments to the Association and comply with this Master Declaration, any applicable Development Area Declarant, the Design Guidelines, or the rules and regulations will not be affected by your failure to execute a Membership Agreement. Also, you must provide certain information to the Association upon acquiring a Lot or Condominium Unit.

(c)     Every Member will have a right and easement of enjoyment in and to all of the Common Area and an access easement by and through any Common Area, which easements will be appurtenant to and will pass with the title to such Member's Lot or Condominium Unit, subject to *Section 3.03(b)* above and subject to the following restrictions and reservations:

(i)     The right of the Association to suspend the Member's voting rights and right to use the Common Area for any period during which any Assessment against such Member's Lot or Condominium Unit remains past due and for any period during which such member is in violation of any provision of this Master Declaration;

(ii)     The right of the Association to dedicate or transfer all or any part of the Common Area to any public agency, authority or utility for any purpose;

(iii)     The right of the Association to borrow money for the purpose of improving the Common Area and, in furtherance thereof, mortgage the Common Area;

13

(iv) The right of the Association to make reasonable rules and regulations regarding the use of the Common Area and any Improvements thereon; and

(v) The right of the Association to contract for services with any third parties on such terms as the Association may determine.

(d) Each Owner of a Lot or Condominium Unit which has been designated as a beneficiary of Special Common Area in a notice of applicability, Development Area Declaration, or other recorded instrument, will have a right and easement of enjoyment in and to all of such Special Common Area, and an access easement by and through such Special Common Area, which easement will be appurtenant to and will pass with title to such Owner's Lot or Condominium Unit, subject to *Section 3.03(b)* above and subject to the following restrictions and reservations:

(i) The right of Declarant to restrict the use of the Special Common Area to the beneficiaries designated in a notice of applicability filed pursuant to *Section 10.05* or a Development Area Declaration;

(ii) The right of the Association to suspend the Members voting rights and right to use the Special Common Area for any period during which any Assessment against such Member's Lot or Condominium Unit remains past due and for any period during which such Member is in violation of any provision of this Master Declaration;

(iii) The right of the Association to dedicate or transfer all or any part of the Special Common Area to any public agency, authority or utility for any purpose;

(iv) The right of the Association to borrow money for the purpose of improving the Special Common Area, and, in furtherance thereof, mortgage the Special Common Area;

(v) The right of the Association to make reasonable rules and regulations regarding use of the Special Common Area and any Improvements thereon; and

(vi) The right of the Association to contract for services with any third parties on such terms as the Association may determine.

3.04 **Voting Rights.** Due to the number of Lots and Condominium Units that may be developed in the Development, this Master Declaration provides for a representative system of voting. The Owners of Lots and Condominium Units in each Neighborhood elect a "**Neighborhood Delegate**" and an alternative Neighborhood Delegate, in the manner provided

14

below, to cast the votes of all Lots and Condominium Units in the Neighborhood on matters requiring a vote of the membership, except where this Master Declaration specifically requires a vote of the Owners. However, until such time as the Board first calls for election of a Neighborhood Delegate for a particular Neighborhood, each Owner of a Lot or Condominium Unit in such Neighborhood shall be considered a "Neighborhood Delegate" and may personally cast the vote allocated to such Owner's Lot or Condominium Unit on any issue requiring a vote of the Neighborhood Delegates under this Master Declaration. **Notwithstanding the foregoing or any provision to the contrary in this Master Declaration, as provided in Section 3.05(c) below, until expiration or termination of the Development and Sale Period, Declarant will be entitled to appoint and remove all members of the Board.**

Candidates for election as the Neighborhood Delegate and alternate Neighborhood Delegate from a Neighborhood shall be Owners of Lots or Condominium Units in the Neighborhood, spouses of such Owners, or residents of the Neighborhood. The Neighborhood Delegate and the alternate Neighborhood Delegate shall be elected on a biennial basis (once every two years), either by written ballot or at a meeting of the Owners within each Neighborhood, as the Board determines; provided, upon written petition signed by Owners holding at least ten percent (10%) of the votes within any Neighborhood, the election for such Neighborhood shall be held at a meeting. The presence, in person or by proxy, of Owners representing at least forty percent (40%) of the total votes in a Neighborhood shall constitute a quorum at any Neighborhood meeting.

The Board shall call for the first election of a Neighborhood Delegate from a Neighborhood not later than four (4) years after the first conveyance of a Lot or Condominium Unit in the Neighborhood to a Person other than Declarant. Subsequent elections shall, if necessary, be held within thirty (30) days of the same date each year. The candidate for each position who receives the greatest number of votes shall be elected to serve until his or her successor is elected.

Any Neighborhood Delegate may be removed, with or without cause, upon the vote or written petition of Owners holding a majority of the votes allocated to the Lots and Condominium Units in the Neighborhood that the Neighborhood Delegate represents.

The Neighborhood Delegate or, in his or her absence, the alternate Neighborhood Delegate attends Association meetings and casts all votes allocated to Lots and Condominium Units in the Neighborhood that he or she represents on any matter as to which such Neighborhood Delegate is entitled to vote under this Master Declaration. A Neighborhood Delegate may cast all votes allocated to Lots and Condominium Units in the Neighborhood in such delegate's discretion and may, but need not, poll the Owners of Lots and Condominium Units in the Neighborhood which he or she represents prior to voting.

Neighborhood Delegates are subordinate to the Board and their responsibility and authority does not extend to policymaking, supervising, or otherwise being involved in Association governance beyond voting on matters put to a vote of the membership.

15

WEST CYPRESS HILLS
AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

Page 37

In any situation in which an Owner is entitled personally to exercise the vote allocated to such Owner's Lot or Condominium Unit, if there is more than one Owner of a Unit, the vote for such Unit shall be exercised as the co-Owners holding a majority of the ownership interest in the Lot or Condominium Unit determine among themselves and advise the Secretary of the association in writing prior to the close of balloting. Any co-Owner may cast the vote for the Lot or Condominium Unit, and majority agreement shall be conclusively presumed unless another co-Owner of the Lot or Condominium Unit protests promptly to the President or other person presiding over the meeting on the balloting, in the case of a vote taken outside of a meeting. In the absence of a majority agreement, the Lot or Condominium Unit's vote shall be suspended if two or more co-Owners seek to exercise it independently.

3.05  **Vote Allocation**.

(a)  The Owner of each Lot will be allocated one (1) vote for each Lot so owned. In the event of the re-subdivision of any Lot into two or more Lots: (i) the number of votes to which such Lot is entitled will be increased as necessary to retain the ratio of one (1) vote for each Lot resulting from such re-subdivision, e.g., each Lot resulting from the re-subdivision will be entitled to one (1) vote; and (ii) each Lot resulting from the re-subdivision will be allocated one (1) Assessment Unit. In the event of the consolidation of two (2) or more Lots for purposes of construction of a single residence thereon, voting rights and Assessments will continue to be determined according to the number of original Lots contained in such consolidated Lot. Nothing in this Master Declaration will be construed as authorization for any re-subdivision or consolidation of Lots, such actions being subject to the conditions and restrictions of the applicable Development Area Declaration.

(b)  Each Owner of a Condominium Unit will be allocated the number of votes for such Condominium Unit so owned as determined by Declarant at the time that a Development Area Declaration is first recorded in the Official Public Records of Travis County, Texas for the Development Area within which such Condominium Unit is located. Declarant will determine such votes in its sole discretion, taking into account, among other things, the relationship of Condominium Units to the entire Development. Declarant's determination regarding the number of votes to which such Owners will be entitled will be final, binding and conclusive. Such determination of Declarant may also be set forth in the notice filed by Declarant pursuant to *Section 10.05* below for the Development Area within which such Condominium Unit(s) are located. Prior to the time any Condominium Units in a Development Area are conveyed by Declarant to any person not affiliated with Declarant, Declarant may amend or modify its allocation of votes by filing an amended notice in the Official Public Records of Travis County, Texas, setting forth the amended allocation. In addition, Declarant, in its sole and absolute discretion, may modify or amend (which amendment or modification may be effected after Declarant's conveyance of any Condominium Units to any person not affiliated with Declarant) the number of votes previously assigned to a Condominium Unit if the improvements actually constructed on the Condominium Unit differ substantially from

16

WEST CYPRESS HILLS
AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

the Improvements contemplated to be constructed thereon at the time a notice allocating votes thereto was originally filed. In the event of a modification to the votes allocated to a Condominium Unit, Declarant will file of record an amended vote determination setting forth the revised allocation of votes attributable to such Condominium Unit.

(c) In addition to the votes to which Declarant is entitled by reason of *Section 3.05(a)* and *Section 3.05(b)*, for every one (1) vote outstanding in favor of any other person or entity, Declarant will have four (4) additional votes until the expiration or termination of the Development and Sale Period. Notwithstanding any provision to the contrary in this Master Declaration, until the expiration or termination of the Development and Sale Period, Declarant will be entitled to appoint and remove all members of the Board. Declarant may terminate its right as to the appointment and removal of one or all the Board members by the recordation of a termination notice executed by Declarant and recorded in the Official Public Records of Travis County, Texas. In the event Declarant terminates its right to appointment and remove less than all of the Board members, the Board positions to which the termination applies will be elected by the Neighborhood Delegates. Each Board member elected by the Neighborhood Delegates in accordance with the foregoing sentence will be elected for a term of one (1) year.

(d) At such time as Declarant no longer has the right to appoint and remove all members of the Board as provided in *Section 3.05(c)*, the Board will be increased to five (5) members. The President of the Association will thereupon call a meeting of the Members of the Association where the Members, as represented by their Neighborhood Delegates or alternate Neighborhood Delegates, will elect one (1) Director for a three (3) year term, two (2) Directors for a two (2) year term, and two (2) Directors for a one (1) year term. Upon expiration of the term of a Director elected by the Members as provided herein, his or her successor will be elected (by the Members, as represented by their Neighborhood Delegates or alternate Neighborhood Delegates) for a term of two (2) years. A Director takes office upon the adjournment of the meeting or balloting at which he is elected or appointed and, absent death, ineligibility, resignation, or removal, will hold office until his successor is elected or appointed.

(e) When more than one person or entity owns a portion of the fee simple interest in any Lot or Condominium Unit, all such persons or entities will be Members. The vote or votes (or fraction thereof) for such Lot or Condominium Unit will be exercised by the person so designated in writing to the Secretary of the Association by the Owner of such Lot or Condominium Unit (or in the Membership Agreement relating to such Lot if required by the Board), and in no event will the vote for such Lot or Condominium Unit exceed the total votes to which such Lot or Condominium is otherwise entitled under this *Section 3.05*.

(f) The right of any Owner to vote may be suspended by the Association, acting through the Board, for any period during which any Assessment against such Owner's Lot(s) or Condominium Unit(s) remain past due, for any period during which

17

such Owner or such Owners' Lot(s) or Condominium Unit(s) are in violation of this Master Declaration, and, as provided in *Section 3.03(b)* above, for any period during which such Owner has failed to execute and deliver a Membership Agreement. In addition, Declarant may suspend the right of any Owner to vote during the period such Owner's Lot or Condominium Unit is exempt from Assessments in accordance with *Section 5.07(f)*.

3.06 **Powers**. The Association will have the powers of a Texas nonprofit corporation. It will further have the power to do and perform any and all acts that may be necessary or proper, for or incidental to, the exercise of any of the express powers granted to it by the laws of Texas or this Master Declaration. Without in any way limiting the generality of the two preceding sentences, the Board, acting on behalf of the Association, will have the following powers at all times:

(a) <u>Rules and Bylaws</u>. To make, establish and promulgate, and in its discretion to amend from time to time, or repeal and re-enact, such rules, regulations, and Bylaws not in conflict with this Master Declaration, as it deems proper, covering any and all aspects of the Development (including the operation, maintenance and preservation thereof) or the Association.

> When you acquire a Lot or Condominium Unit, you will be required to comply with the terms of this Master Declaration, the Development Area Declaration applicable to your Lot or Condominium Unit, the Design Guidelines, and any rules and regulations adopted by the Board. Yes, there are lots of rules!

(b) <u>Insurance</u>. To obtain and maintain in effect, policies of insurance that, in the opinion of the Board, are reasonably necessary or appropriate to carry out the Association's functions.

(c) <u>Records</u>. To keep books and records of the Association's affairs, and to make such books and records, together with current copies of the Master Restrictions available for inspection by the Owners, Mortgagees, and insurers or guarantors of any Mortgage upon request during normal business hours.

(d) <u>Assessments</u>. To levy and collect assessments and to determine Assessment Units, as provided in *Article 5* below.

(e) <u>Right of Entry and Enforcement</u>. To enter at any time without notice in an emergency (or in the case of a non-emergency, after twenty-four (24) hours written notice), without being liable to any Owner, upon any Lot and into any Improvement thereon or into any Condominium Unit for the purpose of enforcing the Master Restrictions or for the purpose of maintaining or repairing any area, Improvement or other facility to conform to this Master Declaration, a Development Area Declaration, or the Design Guidelines. The expense incurred by the Association in connection with the entry upon any Lot or into any Condominium Unit and the maintenance and repair

18

work conducted thereon or therein will be a personal obligation of the Owner of the Lot or the Condominium Unit so entered, will be deemed a special Assessment against such Lot or Condominium Unit, will be secured by a lien upon such Lot or Condominium Unit, and will be enforced in the same manner and to the same extent as provided in *Article 5* hereof for Assessments. The Association will have the power and authority from time to time, in its own name and on its own behalf, or in the name of and on behalf of any Owner who consents thereto, to commence and maintain actions and suits to enforce, by mandatory injunction or otherwise, or to restrain and enjoin, any breach or threatened breach of the Master Restrictions. The Association is also authorized to settle claims, enforce liens and take all such action as it may deem necessary or expedient to enforce the Master Restrictions; provided, however, that the Board will never be authorized to expend any Association funds for the purpose of bringing suit against Declarant, or their successors or assigns. The Association may not alter or demolish any Improvements on any Lot or Condominium Unit other than Common Area or Special Common Area in enforcing this Master Declaration before a judicial order authorizing such action has been obtained by the Association, or before the written consent of the Owner(s) of the affected Lot(s) or Condominium Unit(s) has been obtained. **EACH SUCH OWNER WILL INDEMNIFY AND HOLD HARMLESS THE ASSOCIATION, ITS OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS FROM ANY COST, LOSS, DAMAGE, EXPENSE, LIABILITY, CLAIM OR CAUSE OF ACTION INCURRED OR THAT MAY ARISE BY REASON OF THE ASSOCIATION'S ACTS OR ACTIVITIES UNDER THIS *SECTION 3.06(e)* (INCLUDING ANY COST, EXPENSE, LIABILITY, CLAIM OR CAUSE OF ACTION ARISING OUT OF THE ASSOCIATION'S NEGLIGENCE IN CONNECTION THEREWITH), EXCEPT FOR SUCH COST, LOSS, DAMAGE, EXPENSE, LIABILITY, CLAIM OR CAUSE OF ACTION ARISING BY REASON OF THE ASSOCIATION'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. "GROSS NEGLIGENCE" DOES NOT INCLUDE SIMPLE NEGLIGENCE, CONTRIBUTORY NEGLIGENCE OR SIMILAR NEGLIGENCE SHORT OF ACTUAL GROSS NEGLIGENCE.**

(f)     Legal and Accounting Services.     To retain and pay for legal and accounting services necessary or proper in the operation of the Association.

(g)     Conveyances.     To grant and convey to any person or entity the real property and/or other interest, including fee title, leasehold estates, easements, rights-of-way or mortgages, out of, in, on, over, or under any Common Area or Special Common Area for the purpose of constructing, erecting, operating or maintaining the following:

   (i)     Parks, parkways or other recreational facilities or structures;

   (ii)     Roads, streets, sidewalks, signs, street lights, walks, driveways, trails and paths;

19

260575-2 11/09/2006                                                      WEST CYPRESS HILLS
AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

Page 41

(iii)    Lines, cables, wires, conduits, pipelines or other devices for utility purposes;

(iv)    Sewers, water systems, storm water drainage systems, sprinkler systems and pipelines; and/or

(v)    Any similar improvements or facilities.

Nothing set forth above, however, will be construed to permit use or occupancy of any Improvement or other facility in a way that would violate applicable use and occupancy restrictions imposed by the Master Restrictions or by any governmental authority.

(h)    <u>Manager</u>. To retain and pay for the services of a person or firm (the "**Manager**") to manage and operate the Association, including its property, to the extent deemed advisable by the Board. Additional personnel may be employed directly by the Association or may be furnished by the Manager. Each contract entered into between the Association and the Manager will be terminable by the Association without cause upon thirty (30) days written notice to the Manager. To the extent permitted by law, the Board may delegate any other duties, powers and functions to the Manager. **THE MEMBERS HEREBY RELEASE THE ASSOCIATION AND THE MEMBERS OF THE BOARD FROM LIABILITY FOR ANY OMISSION OR IMPROPER EXERCISE BY THE MANAGER OF ANY SUCH DUTY, POWER OR FUNCTION SO DELEGATED.**

(i)    <u>Property Services</u>. To pay for water, sewer, garbage removal, street lights, landscaping, gardening and all other utilities, services, repair and maintenance for the Property and any Common Area, including but not limited to private or public recreational facilities, easements, roads, roadways, rights-of-ways, signs, parks, parkways, median strips, sidewalks, paths, trails, ponds, and lakes.

(j)    <u>Other Services and Properties</u>. To obtain and pay for any other property and services, and to pay any other taxes or assessments that the Association or the Board is required or permitted to secure or to pay for pursuant to applicable law (including the Texas Non-Profit Corporation Act) or under the terms of the Master Restrictions or as determined by the Board.

(k)    <u>Construction on Common Area</u>. To construct new Improvements or additions to any property owned, leased, or licensed by the Association, subject to the approval of the Board.

(l)    <u>Contracts</u>. To enter into Bulk Rate Contracts or other contracts or licenses with Declarant or any third party on such terms and provisions as the Board will determine, to operate and maintain any Common Area, Special Common Area, or other property, or to provide any service, including but not limited to cable, utility, or telecommunication services, or perform any function on behalf of Declarant, the Board, the Association, or the Members.

20

(m)  Property Ownership. To acquire, own and dispose of all manner of real and personal property, including habitat, whether by grant, lease, easement, gift or otherwise.

(n)  Authority with Respect to Development Area Declaration. To do any act, thing or deed that is necessary or desirable, in the judgment of the Board, to implement, administer or enforce any Development Area Declaration. Any decision by the Association to delay or defer the exercise of the power and authority granted by this *Section 3.06(n)* will not subsequently in any way limit, impair or affect ability of the Association to exercise such power and authority.

(o)  Allocation of Votes. To determine votes when permitted pursuant to *Section 3.04* above.

(p)  Membership Privileges. To establish rules and regulations governing and limiting the use of the Common Area, Special Common Area, and any Improvements thereon.

3.07  **Acceptance of Common Area and Special Common Area.** The Association may acquire, hold, and dispose of any interest in tangible and intangible personal property and real property. Declarant and its assignees may transfer or convey to the Association interests in real or personal property within or for the benefit of the Development, or the Development and the general public, and the Association will accept such transfers and conveyances. Such property may be improved or unimproved and may consist of fee simple title, easements, leases, licenses, or other real or personal property interests. Such property will be accepted by the Association and thereafter will be maintained as Common Area or Special Common Area, as applicable, by the Association for the benefit of the Development and/or the general public subject to any restrictions set forth in the deed or other instrument transferring or assigning such property to the Association. Upon Declarant's written request, the Association will re-convey to Declarant any unimproved real property that Declarant originally conveyed to the Association for no payment to the extent conveyed in error or needed to make minor adjustments in property lines.

3.08  **Indemnification.** To the fullest extent permitted by applicable law but without duplication (and subject to) any rights or benefits arising under the Certificate or Bylaws of the Association, the Association will indemnify any person who was, or is, a party, or is threatened to be made a party to any threatened pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative by reason of the fact that he is, or was, a director, officer, committee member, employee, servant or agent of the Association against expenses, including attorneys' fees, reasonably incurred by him in connection with such action, suit or proceeding if it is found and determined by the Board or a Court that he (1) acted in good faith and in a manner he reasonably believed to be in, or not opposed to, the best interests of the Association, or (2) with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by

21

Page 43

settlement, or upon a plea of *nolo contendere* or its equivalent, will not of itself create a presumption that the person did not act in good faith or in a manner which was reasonably believed to be in, or not opposed to, the best interests of the Association or, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

3.09 **Insurance.** The Board may purchase and maintain, at the expense of the Association, insurance on behalf of any person who is acting as a director, officer, committee member, employee, servant or agent of the Association against any liability asserted against him or incurred by him in any such capacity, or arising out of his status as such, whether or not the Association would have the power to indemnify him against such liability or otherwise.

3.10 **Control by Declarant.** Notwithstanding anything to the contrary, Declarant, or its successors or assigns, will have the absolute right to appoint members of the Board and their successors (any appointment of a successor will be a deemed removal of the Board member being replaced by such appointment) until the expiration or termination of the Development and Sale Period. Declarant, at its option, may assign or delegate, in whole or in part, its rights and powers to the Association, the Board or any other entity provided such designation is in writing.

3.11 **Bulk Rate Contracts.** Without limitation on the generality of the Association powers set out in *Section 3.06* hereinabove, the Association will have the power to enter into Bulk Rate Contracts at any time and from time to time. The Association may enter into Bulk Rate Contracts with any service providers chosen by the Board (including Declarant, and/or any entities in which Declarant, or the owners or partners of Declarant are owners or participants, directly or indirectly). The Bulk Rate Contracts may be entered into on such terms and provisions as the Board may determine in its sole and absolute discretion. The Association may, at its option and election add the charges payable by such Owner under such Bulk Rate Contract to the Assessments against such Owner's Lot or Condominium Unit. In this regard, it is agreed and understood that, if any Owner fails to pay any charges due by such Owner under the terms of any Bulk Rate Contract, then the Association will be entitled to collect such charges by exercising the same rights and remedies it would be entitled to exercise under this Master Declaration with respect to the failure by such Owner to pay Assessments, including without limitation the right to foreclose the lien against such Owner's Lot or Condominium Unit which is reserved under the terms and provisions of this Master Declaration. In addition, in the event of nonpayment by any Owner of any charges due under any Bulk Rate Contract and after the lapse of at least twelve (12) days since such charges were due, the Association may, upon five (5) days' prior written notice to such Owner (which may run concurrently with such 12 day period), in addition to all other rights and remedies available at law, equity or otherwise, terminate, in such manner as the Board deems appropriate, any utility service or other service provided at the cost of the Association and not paid for by such Owner (or the occupant of such Owner's Lot or Condominium Unit) directly to the applicable service or utility provider. Such notice will consist of a separate mailing or hand delivery at least five (5) days prior to a stated date of termination, with the title "termination notice" or similar language prominently displayed on the notice. The notice will include the office or street address where the Owner (or

22

the occupant of such Owner's Lot or Condominium Unit) can make arrangements for payment of the bill and for re-connection or re-institution of service. No utility or cable television service will be disconnected on a day, or immediately preceding a day, when personnel are not available for the purpose of collection and reconnecting such services.

3.12 **Community Systems.** The Association is specifically authorized to provide, or to enter into contracts with other Persons to provide, central telecommunication receiving and distribution systems (e.g. cable television, high speed data/Internet/intranet services, and security monitoring) and related components, including associated infrastructure, equipment, hardware, and software, to serve the Development ("Community Systems"). Any such contracts may provide for installation, operation, management, maintenance, and upgrades or modifications to the Community Systems as the Board determines appropriate. Each Owner acknowledges that interruptions in cable television and other Community Systems and services will occur from time to time. The Declarant and the Association, or any of their respective successors or assigns shall not be liable for, and no Community System or service user shall be entitled to refund, rebate, discount, or offset in applicable fees for, any interruption in Community Systems and services, regardless of whether or not such interruption is caused by reasons within the service provider's control.

## ARTICLE IV
## INSURANCE

4.01 **Insurance.** Each Owner will be required to purchase and maintain commercially standard insurance on the Improvements located upon such Owner's Lot or Condominium Unit. The Association will not be required to maintain insurance on the Improvements constructed upon any Lot or Condominium Unit. The Association may, however, obtain such insurance as it may deem necessary, including but not limited to such policies of liability and property damage insurance as the Board, in its discretion, may deem necessary. Insurance premiums for such policies will be a common expense to be included in the assessments levied by the Association. The acquisition of insurance by the Association will be without prejudice to the right and obligation of any Owner to obtain additional individual insurance.

---

**ARE YOU COVERED?**
The Association will not provide insurance which covers an Owner's Lot, a Condominium Unit, or any Improvements or personal property located on a Lot or contained within a Condominium Unit.

---

4.02 **Restoration.** In the event of any fire or other casualty, the Owner will promptly repair, restore and replace any damaged or destroyed structures to their same exterior condition existing prior to the damage or destruction thereof. Such repair, restoration or replacement will be commenced and completed in a good and workmanlike manner using exterior materials identical to those originally used in the structures damaged or destroyed. To the extent that the Owner fails to commence such repair, restoration or replacement of substantial or total damage or destruction within one hundred and twenty (120) days after the occurrence of such damage

or destruction, and thereafter prosecute same to completion, or if the Owner does not clean up any debris resulting from any damage within thirty (30) days after the occurrence of such damage, the Association may commence, complete or effect such repair, restoration, replacement or clean-up, and such Owner will be personally liable to the Association for the cost of such work; provided, however, that if the Owner is prohibited or delayed by law, regulation or administrative or public body or tribunal from commencing such repair, restoration, replacement or clean-up, the rights of the Association under this provision will not arise until the expiration of thirty (30) days after such prohibition or delay is removed. If the Owner fails to pay such cost upon demand by the Association, the cost thereof (plus interest from the date of demand until paid at the maximum lawful rate, or if there is no such maximum lawful rate, than at the rate of one and one-half percent (1½%) per month) will be added to the Assessment chargeable to the Owner's Lot or Condominium Unit. Any such amounts added to the Assessments chargeable against a Lot or Condominium Unit will be secured by the liens reserved in this Master Declaration for Assessments and may be collected by any means provided in this Master Declaration for the collection of Assessments, including, but not limited to, foreclosure of such liens against the Owner's Lot or Condominium Unit. **EACH SUCH OWNER WILL INDEMNIFY AND HOLD HARMLESS THE ASSOCIATION AND ITS OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS FROM ANY COST, LOSS, DAMAGE, EXPENSE, LIABILITY, CLAIM OR CAUSE OF ACTION INCURRED OR THAT MAY ARISE BY REASON OF THE ASSOCIATION'S ACTS OR ACTIVITIES UNDER THIS *SECTION 4.02*, EXCEPT FOR SUCH COST, LOSS, DAMAGE, EXPENSE, LIABILITY, CLAIM OR COST OF ACTION ARISING BY REASON OF THE ASSOCIATION'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. "GROSS NEGLIGENCE" AS USED HEREIN DOES NOT INCLUDE SIMPLE NEGLIGENCE, CONTRIBUTORY NEGLIGENCE OR SIMILAR NEGLIGENCE SHORT OF ACTUAL GROSS NEGLIGENCE.**

4.03 **Mechanic's and Materialmen's Lien**. Each Owner whose structure is repaired, restored, replaced or cleaned up by the Association pursuant to the rights granted under this *Article 4*, hereby grants to the Association an express mechanic's and materialmen's lien for the reasonable cost of such repair, restoration, or replacement of the damaged or destroyed Improvement to the extent that the cost of such repair, restoration or replacement exceeds any insurance proceeds allocable to such repair, restoration or replacement and delivered to the Association. Upon request by the Board, and before the commencement of any reconstruction, repair, restoration or replacement, such Owner will execute all documents sufficient to effectuate such mechanic's and materialmen's lien in favor of the Association.

### ARTICLE V
### COVENANT FOR ASSESSMENTS

5.01 **Assessments**.

(a) Assessments established by the Board pursuant to the provisions of this *Article 5* will be levied against each Lot and Condominium Unit in amounts determined

24

pursuant to *Section 5.07* below. The total amount of Assessments will be determined by the Board pursuant to *Section 5.03, 5.04, 5.05* and/or *5.06.*

(b)     Each Assessment, together with such interest thereon and costs of collection as hereinafter provided, will be the personal obligation of the Owner of the Lot or Condominium Unit against which the Assessment is levied and will be secured by a lien hereby granted and conveyed by Declarant to the Association against each such Lot and all Improvements thereon and each such Condominium Unit (such lien, with respect to any Lot or Condominium Unit not in existence on the date hereof, will be deemed granted and conveyed at the time that such Lot or Condominium Unit is created). The Association may enforce payment of such Assessments in accordance with the provisions of this Article.

(c)     Declarant may, but is not obligated to, reduce Assessments which would otherwise be levied against Lots and Condominium Units for any fiscal year by the payment of a subsidy to the Association. Any subsidy paid to the Association by Declarant may be treated as a contribution or a loan, in Declarant's sole and absolute discretion. Any subsidy and the characterization thereof will be disclosed as a line item in the annual budget prepared by the Board and attributable to such Assessments. The payment of a subsidy in any given year will not obligate Declarant to continue payment of a subsidy to the Association in future years.

5.02    **Association Accounts.** The Board will establish one or more bank accounts of the Association into which will be deposited all monies paid to the Association and from which disbursements will be made in performing the functions of the Association under this Master Declaration. The funds of the Association must be used solely for purposes authorized by this Master Declaration, as it may from time to time be amended.

5.03    **Regular Annual Assessments.** Prior to the beginning of each fiscal year, the Board will estimate the expenses to be incurred by the Association during such year in performing its functions and exercising its powers under this Master Declaration, including, but not limited to, the cost of all management, repair and maintenance, the cost of providing street and other lighting, the cost of administering and enforcing the covenants and restrictions contained herein, and will estimate the amount needed to maintain a reasonable provision for contingencies and an appropriate replacement reserve, and will give due consideration to any expected income and any surplus from the prior year's fund. The budget prepared by the Association for the purpose of determining Regular Annual Assessments will exclude the maintenance, repair and management costs and expenses associated with any Service Area and Special Common Area. Assessments sufficient to pay such estimated net expenses will then be levied at the level of Assessments set by the Board in its sole and absolute discretion, and the Board's determination will be final and binding so long as it is made in good faith. If the sums collected prove inadequate for any reason, including nonpayment of any individual Assessment, the Association may at any time, and from time to time, levy further Assessments in the same manner. All such regular Assessments will be due and payable to the Association

25

at the beginning of the fiscal year or during the fiscal year in equal monthly installments on or before the first day of each month, or in such other manner as the Board may designate in its sole and absolute discretion.

5.04 **Special Common Area Assessments.** Prior to the beginning of each fiscal year, the Board will prepare a separate budget covering the estimated expenses to be incurred by the Association to maintain, repair, or manage any Special Common Area. The budget will be an estimate of the amount needed to maintain, repair and manage such Special Common Area including a reasonable provision for contingencies and an appropriate replacement reserve, and will give due consideration to any expected income and surplus from the prior year's fund. The level of Special Common Area Assessments will be set by the Board in its sole and absolute discretion, and the Board's determination will be final and binding so long as it is made in good faith. If the sums collected prove inadequate for any reason, including non-payment of any individual Special Common Area Assessment, the Association may at any time, and from time to time, levy further Special Common Area Assessments in the same manner as aforesaid. All such Special Common Area Assessments will be due and payable to the Association at the beginning of the fiscal year or during the fiscal year in equal monthly installments on or before the first day of each month, or in such other manner as the Board may designate in its sole and absolute discretion.

5.05 **Service Area Assessments.** Prior to the beginning of each fiscal year, the Board will prepare a separate budget for each Service Area reflecting the estimated Service Area Expenses to be incurred by the Association in the coming year. The total amount of estimated Service Area Expenses for each Service Area will be allocated equally among all Lots and/or Condominium Units in the benefited Service Area and will be levied as a Service Area Assessment. All amounts that the Association collects as Service Area Assessments will be held in trust for and expended solely for the benefit of the Service Area for which they were collected and will be accounted for separately from the Association's general funds.

5.06 **Special Assessments.** In addition to the regular annual Assessments provided for above, the Board may levy special Assessments whenever in the Board's opinion such special Assessments are necessary to enable the Board to carry out the functions of the Association under this Master Declaration. The amount of any special Assessments will be at the reasonable discretion of the Board. In addition to the special Assessments authorized above, the Association may, in any fiscal year, levy a special Assessment applicable to that fiscal year only for the purpose of defraying, in whole or in part, the cost of any construction, reconstruction, repair or replacement of a capital improvement upon the Common Area or Special Common Area. Any special Assessment levied by the Association for the purpose of defraying, in whole or in part, costs of any construction, reconstruction, repair or replacement of capital improvement upon the Common Area will be levied against all Owners based on Assessment Units. Any special Assessments levied by the Association for the purpose of defraying in whole or in part, the cost of any construction, reconstruction, repair or replacement of a capital improvement upon any Special Common Area will be levied against all Owners

26

who have been designated as a beneficiary of such Special Common Area and will be allocated among such Owners based on Assessment Units.

5.07 **Amount of Assessment**.

(a) The Board will levy Assessments against each "Assessment Unit" (as defined in *Section 5.07(b)* below). Unless otherwise provided in this Master Declaration, Assessments levied pursuant to *Section 5.03* and *Section 5.06* will be levied uniformly against each Lot and Condominium Unit based on the Assessment Units allocated thereto. For example, if the total regular Assessments to be levied by the Board during any fiscal year is equal to $10,000, and the regular Assessment is to be allocated among one hundred (100) Lots each being allocated one (1) Assessment Unit and one hundred (100) Condominium Units each being allocated 0.7 Assessment Units, the regular Assessment for each Assessment Unit would be equal to $58.82 ($10,000 ÷ 170 Assessment Units). Special Common Area Assessments levied pursuant to *Section 5.04* will be levied uniformly against each Lot and Condominium Unit which has been designated as a beneficiary of the Special Common Area to which such Special Common Area Assessment relates based on the Assessment Units allocated to such Lots and Condominium Units. Service Area Assessments levied pursuant to *Section 5.05* will be levied uniformly against each Lot and Condominium Unit which has been included in the Service Area to which such Service Area Assessment relates based on the Assessment Units allocated to such Lots and Condominium Units.

(b) Each Lot will constitute one "Assessment Unit" unless otherwise provided in *Section 5.07(c)*. Each Condominium Unit will constitute that number of "Assessment Units" as determined by Declarant at the time that the Development Area Declaration is first recorded in the Official Public Records of Travis County, Texas for the Development Area within which such Condominium Unit is located. Declarant will determine such Assessment Units in its sole and absolute discretion, taking into account, among other things, the relationship of such Condominium Units to the entire Development. Declarant's determination regarding the number of Assessment Units applicable to each Condominium Unit will be final, binding and conclusive. Such determination of Declarant (or the Board, as the case may be) may also be set forth in the notice filed by Declarant pursuant to *Section 10.05* for the Development Area within which such Condominium Unit(s) are located. Declarant, in its sole and absolute discretion, may modify or amend the number of Assessment Units previously assigned to a Condominium Unit if the Improvements actually constructed on the Condominium Unit differ substantially from the Improvements contemplated to be constructed thereon at the time the notice allocating Assessment Units thereto was originally filed. In the event of a modification to the Assessment Units allocated to a Condominium Unit, Declarant will file of record an amended notice setting forth the revised Assessment Units attributable to the Condominium Unit.

(c)     Declarant, in Declarant's sole and absolute discretion, may elect to allocate more than one "Assessment Unit" to a Lot. An allocation of more than one Assessment Unit to a Lot must be made in a notice filed by Declarant pursuant to *Section 10.05* or in a Development Area Declaration for the Development in which the Lot is located. Declarant's determination regarding the number of Assessment Units applicable to a Lot pursuant to this *Section 5.07(c)* will be final, binding and conclusive.

(d)     Prior to the time any Lots or Condominium Units in such Development Area are conveyed to any person not affiliated with Declarant, Declarant may modify its determination regarding the allocation of Assessment Units by filing a notice in the Official Public Records of Travis County, Texas, setting forth the amended allocation.

(e)     Notwithstanding anything in this Master Declaration to the contrary, no Assessments will be levied upon Lots or Condominium Units owned by Declarant.

(f)     Declarant may, in its sole discretion, elect to: (i) exempt any platted, un-platted, improved, or unimproved portion of the Development, Lot or Condominium Unit from Assessments; or (ii) delay the levy of Assessments against any platted, un-platted, unimproved or improved portion of the Development, Lot or Condominium Unit.

5.08     **Late Charges.** If any Assessment is not paid by the due date applicable thereto, the Owner responsible for the payment may be required by the Board, at the Board's election at any time and from time to time, to pay a late charge in such amount as the Board may designate, and the late charge (and any reasonable handling costs) will be a charge upon the Lot or Condominium Unit owned by such Owner, collectible in the manner as provided for collection of Assessments, including foreclosure of the lien against such Lot or Condominium Unit; provided, however, such charge will never exceed the maximum charge permitted under applicable law.

5.09     **Owner's Personal Obligation for Payment of Assessments.** Assessments levied as provided for herein will be the personal and individual debt of the Owner of the Lot or Condominium Unit against which are levied such Assessments. No Owner may exempt himself from liability for such Assessments. In the event of default in the payment of any such Assessment, the Owner of the Lot or Condominium Unit will be obligated to pay interest on the amount of the Assessment at the highest rate allowed by applicable usury laws then in effect on the amount of the Assessment from the due date therefor (or if there is no such highest rate, then at the rate of 1 and 1/2% per month), together with all costs and expenses of collection, including reasonable attorneys fees.

5.10     **Assessment Lien and Foreclosure.** The payment of all sums assessed in the manner provided in this *Article 5* is, together with late charges as provided in *Section 5.08* and interest as provided in *Section 5.09* hereof and all costs of collection, including attorney's fees as herein provided, secured by the continuing Assessment lien granted to the Association

28

pursuant to *Section 5.01(b)* above, and will bind each Lot or Condominium Unit in the hands of the Owner thereof, and such Owner's heirs, devisees, personal representatives, successors or assigns. The aforesaid lien will be superior to all other liens and charges against such Lot or Condominium Unit, except only for tax liens and all sums secured by a first mortgage lien or first deed of trust lien of record, to the extent such lien secures sums borrowed for the acquisition or improvement of the Lot or Condominium Unit in question, provided such Mortgage was recorded in the Official Public Records of Travis County, Texas before the delinquent Assessment was due. The Association will have the power to subordinate the aforesaid Assessment lien to any other lien. Such power will be entirely discretionary with the Board, and such subordination may be signed by an officer of the Association. The Association may, at its option and without prejudice to the priority or enforceability of the Assessment lien granted hereunder, prepare a written notice of Assessment lien setting forth the amount of the unpaid indebtedness, the name of the Owner of the Lot or Condominium Unit covered by such lien and a description of the Lot or Condominium Unit. Such notice may be signed by one of the officers of the Association and will be recorded in the Official Public Records of Travis County, Texas. Each Owner, by accepting a deed or ownership interest to a Lot or Condominium Unit subject to this Master Declaration will be deemed conclusively to have granted a power of sale to the Association to secure and enforce the Assessment lien granted hereunder. Such lien for payment of Assessments may be enforced by the non-judicial foreclosure of the defaulting Owner's Lot or Condominium Unit by the Association in like manner as a real property mortgage with power of sale under Tex. Pro. Code § 51.002. (For such purpose, Robert D. Burton of Travis County, Texas, is hereby designated as trustee for the benefit of the Association, with the Association retaining the power to remove any trustee with or without cause and to appoint a successor trustee without the consent or joinder of any other person.) The Assessment liens and rights to foreclosure thereof will be in addition to and not in substitution of any other rights and remedies the Association may have by law and under this Master Declaration, including the rights of the Association to institute suit against such Owner personally obligated to pay the Assessment and/or for foreclosure of the aforesaid lien judicially. In any foreclosure proceeding, whether judicial or non-judicial, such Owner will be required to pay the costs, expenses and reasonable attorney's fees incurred. The Association will have the power to bid (in cash or by credit against the amount secured by the lien) on the property at foreclosure or other legal sale and to acquire, hold, lease, mortgage, convey or otherwise deal with the same. Upon the written request of any Mortgagee, the Association will report to said Mortgagee any unpaid Assessments remaining unpaid for longer than thirty (30) days after the same are due. The lien hereunder will not be affected by the sale or transfer of any Lot or Condominium Unit; except, however, that in the event of foreclosure of any first-lien Mortgage securing indebtedness incurred to acquire such Lot or Condominium Unit, the lien for any Assessments that were due and payable before the foreclosure sale will be extinguished, provided that past-due Assessments will be paid out of the proceeds of such foreclosure sale only to the extent that funds are available after the satisfaction of the indebtedness secured by the first lien Mortgage. The provisions of the preceding sentence will not, however, relieve any subsequent Owner (including any Mortgagee or other purchaser at a foreclosure sale) from paying Assessments becoming due and payable after the foreclosure sale. Upon payment of all

29

sums secured by a lien of the type described in this *Section 5.10*, the Association will upon the request of the Owner execute a release of lien relating to any lien for which written notice has been filed as provided above, except in circumstances in which the Association has already foreclosed such lien. Such release will be signed by an officer of the Association. **NOTWITHSTANDING ANY PROVISION IN THIS *SECTION 5.10* TO THE CONTRARY, THE ASSOCIATION WILL NOT HAVE THE AUTHORITY TO FORECLOSE ON A CONDOMINIUM UNIT FOR NON-PAYMENT OF ASSESSMENTS IF THE ASSESSMENTS CONSIST SOLELY OF FINES.** In addition to the lien hereby retained, in the event of nonpayment by any Owner of any Assessment and after the lapse of at least twelve (12) days since such payment was due, the Association may, upon five (5) days' prior written notice (which may run concurrently with such 12 day period) to such Owner, in addition to all other rights and remedies available at law, equity or otherwise, terminate, in such manner as the Board deems appropriate, any service provided under a Bulk Rate Contract or any other service provided by the Association, including but not limited to utility or cable services, provided through the Association and not paid for directly by a Owner or occupant to the utility or service provider. Such notice will consist of a separate mailing or hand delivery at least five (5) days prior to a stated date of disconnection, with the title "termination notice" or similar language prominently displayed on the notice. The notice will include the office or street address where the Owner or the Owner's tenant can make arrangements for payment of the bill and for reconnection of service. Any utility or cable service will not be disconnected or terminated on a day, or immediately preceding a day, when personnel are not available for the purpose of collection and reconnecting such services. Except as otherwise provided by applicable law, the sale or transfer of a Lot or Condominium Unit will not relieve the Owner of such Lot or Condominium Unit or such Owner's transferee from liability for any Assessments thereafter becoming due or from the lien associated therewith. If an Owner conveys its Lot or Condominium Unit and on the date of such conveyance Assessments against the Lot or Condominium Unit remain unpaid, or said Owner owes other sums or fees under this Master Declaration to the Association, the Owner will pay such amounts to the Association out of the sales price of the Lot or Condominium Unit, and such sums will be paid in preference to any other charges against the Lot or Condominium Unit other than a first lien Mortgage or Assessment Liens and charges in favor of the State of Texas or a political subdivision thereof for taxes on the Lot or Condominium Unit which are due and unpaid. The Owner conveying such Lot or Condominium Unit will remain personally liable for all such sums until the same are fully paid, regardless of whether the transferee of the Lot or Condominium Unit also assumes the obligation to pay such amounts. The Board may adopt an administrative transfer fee to cover the administrative expenses associated with updating the Association's records upon the transfer of a Lot or Condominium Unit to a third party; provided, however, that no administrative transfer fee will be due upon the transfer of a Lot or Condominium Unit from Declarant to a third party.

---

**Yes, the Association *can* foreclose on your Lot or Condominium Unit!**
If you fail to pay assessments to the Association, you may lose title to your Lot or Condominium Unit if the Association forecloses its assessment lien.

---

5.11 **Exempt Property.** The following area within the Development will be exempt from the Assessments provided for in this Article:

(a)  All area dedicated and accepted by public authority, by the recordation of an appropriate document in the Official Public Records of Travis County, Texas;

(b)  The Common Area and the Special Common Area; and

(c)  Any portion of the Property or Development owned by Declarant.

(d)  No portion of the Additional Property will be subject to the terms and provisions of this Master Declaration, and no portion of the Additional Property (or any owner thereof) will be obligated to pay assessments hereunder unless and until such portion of the Additional Property has been made subject to the terms of this Master Declaration by the filing of a notice of applicability in accordance with *Section 10.05* below.

5.12 **Fines and Damages Assessment.** The Board may assess fines against an Owner for violations of any restriction set forth in this Master Declaration, any Development Area Declaration, the Design Guidelines, or any rules adopted by the Board which have been committed by an Owner, an occupant of the Owner's Lot or Condominium Unit, or the Owner or occupant's family, guests, employees, contractors, agents or invitees. Any fine and/or charge for damage levied in accordance with this *Section 5.12* will be considered an Assessment pursuant to this Master Declaration. Each day of violation may be considered a separate violation if the violation continues after written notice to the Owner. The Board may assess damage charges against an Owner for pecuniary loss to the Association from property damage or destruction of Common Area or Special Common Area or any facilities located by the Owner or the Owner's family, guests, agents, occupants, or tenants. The Manager will have authority to send notices to alleged violators, informing them of their violations and asking them to comply with the rules and/or informing them of potential or probable fines or damage assessments. The Board may from time to time adopt a schedule of fines.

The procedure for assessment of fines and damage charges will be as follows:

(a)  the Association, acting through an officer, Board member or Manager, must give the Owner notice of the fine or damage charge not later than thirty (30) days after the assessment of the fine or damage charge by the Board;

(b)  the notice of the fine or damage charge must describe the violation or damage;

(c)  the notice of the fine or damage charge must state the amount of the fine or damage charge;

31

(d)     the notice of a fine or damage charge must state that the Owner will have thirty (30) days from the date of the notice to request a hearing before the Board to contest the fine or damage charge; and

(e)     the notice of a fine must allow the Owner a reasonable time, by a specified date, to cure the violation (if the violation is capable of being remedied) and avoid the fine unless the Owner was given notice and a reasonable opportunity to cure a similar violation within the preceding six (6) months.

Fine and/or damage charges are due immediately after the expiration of the thirty (30) day period for requesting a hearing. If a hearing is requested, such fines or damage charges will be due immediately after the Board's decision at such hearing, assuming that a fine or damage charge of some amount is confirmed by the Board at such hearing.

The payment of each fine and/or damage charge levied by the Board against the Owner of a Lot or Condominium Unit is, together with interest as provided in *Section 5.09* hereof and all costs of collection, including attorney's fees as herein provided, secured by the lien granted to the Association pursuant to *Section 5.01(b)* of this Master Declaration. Unless otherwise provided in this *Section 5.12*, the fine and/or damage charge will be considered an Assessment for the purpose of this Article, and will be enforced in accordance with the terms and provisions governing the enforcement of assessments pursuant to this *Article 5*.

5.13   **Reserve Assessment**.   Each Owner (other than Declarant) of a Lot or a Condominium Unit will pay a one-time reserve assessment to the Association in such amount as may be determined by the Board from time to time in its sole and absolute discretion. Such reserve assessment need not be uniform among all Lots and/or Condominium Units, and the Board is expressly authorized to levy reserve assessments of varying amounts depending on the size, use and general character of the Lots and/or Condominium Units then being made subject to such levy. The initial reserve assessment will be $100 payable to the Association at the time a Lot or Condominium Unit is conveyed from Declarant to any Owner; provided, however, that Declarant may, at any time, amend the amount required to be paid as a reserve assessment, or the Lots and/or Condominium Units to which it applies, upon the recordation in the Official Public Records of Travis County, Texas of a written notice, signed by a duly authorized officer of the Association, setting forth the amount of the reserve assessment and the Lots and/or Condominium Units to which it applies.

Notwithstanding the foregoing provision, the following transfers will not be subject to the reserve assessment: (i) foreclosure of a deed of trust lien, tax lien, or the Association's assessment lien; (ii) transfer to, from, or by the Association; (iii) voluntary transfer by an Owner to one or more co-owners, or to the Owner's spouse, child, or parent. Additionally, an Owner who (i) is a Homebuilder; or (ii) a Development Owner will not be subject to the reserve assessment; however, the reserve assessment will be payable by any Owner who acquires a Lot and/or a Condominium Unit from a Homebuilder or Development Owner for residential living purposes or by any Owner who: (i) acquires a Lot and/or a Condominium Unit and is not in the

business of constructing single-family residences for resale to a third party; or (ii) who acquires the Lot for any purpose other than constructing a single-family residence (including a Condominium Unit) thereon for resale to a third party. In the event of any dispute regarding the application of the reserve assessment to a particular Owner, Declarant's determination regarding application of the exemption will be binding and conclusive without regard to any contrary interpretation of this Section 5.13. The reserve assessment will be in addition to, not in lieu of, any other assessments levied in accordance with this Article 5 and will not be considered an advance payment of such assessments. The reserve assessment hereunder will be due and payable to the Association immediately upon each transfer of title to the Lot or Condominium Unit, including upon transfer of title from one Owner of such Lot or Condominium Unit to any subsequent purchaser or transferee thereof. The Association will have the power to waive the payment of any reserve assessment attributable to a Lot or Condominium Unit by the recordation in the Official Public Records of Travis County, Texas of a waiver notice executed by a majority of the Board members of the Association.

## ARTICLE VI
## WEST CYPRESS HILLS REVIEWER

6.01 **Purpose.** This Master Declaration creates rights to regulate the design, use, and appearance of the Lots in order to preserve and enhance the Property's value and architectural harmony. One purpose of this Article is to promote and ensure the level of taste, design, quality, and harmony by which the Property is developed and maintained. Another purpose is to prevent Improvements and modifications that may be widely considered to be radical, curious, odd, bizarre, or peculiar in comparison to the then existing improvements. A third purpose is to regulate the appearance of every aspect of proposed or existing Improvements, including but not limited to dwellings, buildings, fences, landscaping, retaining walls, yard art, sidewalks, and driveways, and further including replacements or modifications of original construction or installation. During the Development and Sale Period, a primary purpose of this Article is to reserve and preserve Declarant's right of architectural control.

6.02 **Architectural Control By Declarant.** During the Development and Sale Period, neither the Association, the Board, nor a committee appointed by the Association or Board (no matter how the committee is named) may involve itself with the approval of any Improvements. Until expiration of the Development and Sale Period, the West Cypress Hills Reviewer for Improvements is Declarant or its designee.

(a) Declarant's Rights Reserved. Each Owner, by accepting an interest in or title to a Lot, whether or not it is so expressed in the instrument of conveyance, covenants and agrees that Declarant has a substantial interest in ensuring that the improvements within the Property enhance Declarant's reputation as a community developer and do not impair Declarant's ability to market its property. Accordingly, each Owner agrees that during the Development and Sale Period no Improvements will be started or progressed without the prior written approval of Declarant, which

33

260575-2 11/09/2006                                     WEST CYPRESS HILLS
AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

Page 55

approval may be granted or withheld at Declarant's sole discretion. In reviewing and acting on an application for approval, Declarant may act solely in its self-interest and owes no duty to any other person or any organization. Declarant may designate one or more persons from time to time to act on its behalf in reviewing and responding to applications.

(b) <u>Delegation by Declarant</u>. During the Development and Sale Period, Declarant may from time to time, but is not obligated to, delegate all or a portion of its reserved rights under this Article to an architectural control committee appointed by the Board or a committee comprised of architects, engineers, or other persons who may or may not be members of the Association. Any such delegation must be in writing and must specify the scope of delegated responsibilities. Any such delegation is at all times subject to the unilateral rights of Declarant to: (a) revoke such delegation at any time and reassume jurisdiction over the matters previously delegated; and (b) to veto any decision which Declarant in its sole discretion determines to be inappropriate or inadvisable for any reason.

6.03 <u>**Architectural Control by Association**</u>. Unless and until such time as Declarant delegates all or a portion of its reserved rights to the Board, or the Development and Sale Period is terminated or expires, the Association has no jurisdiction over architectural matters. On termination or expiration of the Development and Sale Period, or earlier if delegated in writing by Declarant, the Association, acting through an architectural control committee (the "ACC") will assume jurisdiction over architectural control and will have the powers of the West Cypress Hills Reviewer hereunder.

(a) <u>ACC</u>. The ACC will consist of at least three (3) but not more than seven (7) persons appointed by the Board, pursuant to the bylaws of the Association. Members of the ACC serve at the pleasure of the Board and may be removed and replaced at the Board's discretion. At the Board's option, the Board may act as the ACC, in which case all references in the Documents to the ACC will be construed to mean the Board. Members of the ACC need not be Owners or Residents, and may but need not include architects, engineers, and design professionals whose compensation, if any, may be established from time to time by the Board.

(b) <u>Limits on Liability</u>. The ACC has sole discretion with respect to taste, design, and all standards specified by this Article. The members of the ACC have no liability for the ACC's decisions made in good faith, and which are not arbitrary or capricious. The ACC is not responsible for: (i) errors in or omissions from the plans and specifications submitted to the ACC; (ii) supervising construction for the Owner's compliance with approved plans and specifications; or (iii) the compliance of the Owner's plans and specifications with governmental codes and ordinances, state and federal laws.

6.04 **Prohibition of Construction, Alteration and Improvement**. No Improvement, or any addition, alteration, improvement, installation, modification, redecoration, or reconstruction thereof may occur unless approved in advance by the West Cypress Hills Reviewer. The West Cypress Hills Reviewer has the right but not the duty to evaluate every aspect of construction, landscaping, and property use that may adversely affect the general value or appearance of the Property. Notwithstanding the foregoing, each Owner will have the right to modify, alter, repair, decorate, redecorate, or improve the interior of an Improvement, provided that such action is not visible from any other portion of the Development or Property.

> **NO IMPROVEMENT MAY BE CONSTRUCTED, ALTERED, OR MODIFIED WITHOUT THE ADVANCE WRITTEN APPROVAL OF THE WEST CYPRESS HILLS REVIEWER.**

6.05 **Architectural Approval**.

(a) <u>Submission and Approval of Plans and Specifications</u>. Construction plans and specifications or, when an Owner desires solely to re-subdivide or consolidate Lots, a proposal for such re-subdivision or consolidation, will be submitted in accordance with the Design Guidelines or any additional rules adopted by the West Cypress Hills Reviewer together with any review fee which is imposed by the West Cypress Hills Reviewer in accordance with *Section 6.05(b)*. Contact information for the West Cypress Hills Reviewer will be set forth in the Design Guidelines. No re-subdivision or consolidation will be made, nor any Improvement placed or allowed on any Lot, until the plans and specifications and the builder which the Owner intends to use to construct the proposed structure or Improvement have been approved in writing by the West Cypress Hills Reviewer. The West Cypress Hills Reviewer may, in reviewing such plans and specifications consider any information that it deems proper; including, without limitation, any permits, environmental impact statements or percolation tests that may be required by the West Cypress Hills Reviewer or any other entity; and harmony of external design and location in relation to surrounding structures, topography, vegetation, and finished grade elevation. The West Cypress Hills Reviewer may postpone its review of any plans and specifications submitted for approval pending receipt of any information or material which the West Cypress Hills Reviewer, in its sole discretion, may require. Site plans must be approved by the West Cypress Hills Reviewer prior to the clearing of any Lot, or the construction of any Improvements. The West Cypress Hills Reviewer may refuse to approve plans and specifications for proposed Improvements, or for the re-subdivision or consolidation of any Lot on any grounds that, in the sole and absolute discretion of the West Cypress Hills Reviewer, are deemed sufficient, including, but not limited to, purely aesthetic grounds.

(b) <u>Design Guidelines</u>. Declarant will have the power to adopt the initial Design Guidelines. The West Cypress Hills Reviewer will have the power, from time to time, to adopt (unless previously adopted by Declarant), amend, modify, or supplement

35

the Design Guidelines. In the event of any conflict between the terms and provisions of the Design Guidelines and the terms and provisions of this Master Declaration, the terms and provisions of this Master Declaration will control. In addition, the West Cypress Hills Reviewer will have the power and authority to impose a fee for the review of plans, specifications and other documents and information submitted to it pursuant to the terms of this Master Declaration. Such charges will be held by the West Cypress Hills Reviewer and used to defray the administrative expenses incurred by the West Cypress Hills Reviewer in performing its duties hereunder; provided, however, that any excess funds held by the West Cypress Hills Reviewer will be distributed to the Association at the end of each calendar year. The West Cypress Hills Reviewer will not be required to review any plans until a complete submittal package, as required by this Master Declaration and the Design Guidelines, is assembled and submitted to the West Cypress Hills Reviewer. The West Cypress Hills Reviewer will have the authority to adopt such additional procedural and substantive rules and guidelines (including, without limitation, the imposition of any requirements for a compliance deposit, certificates of compliance or completion relating to any Improvement, and the right to approve in advance any contractor selected for the construction of Improvements), not in conflict with this Master Declaration, as it may deem necessary or appropriate in connection with the performance of its duties hereunder.

(c)  Failure to Act.  In the event that any plans and specifications are submitted to the West Cypress Hills Reviewer as provided herein, and the West Cypress Hills Reviewer fails to either approve or reject such plans and specifications for a period of sixty (60) days following such submission, the plans and specifications will be deemed disapproved.

(d)  Variances. The West Cypress Hills Reviewer may grant variances from compliance with any of the provisions of this Master Declaration or any Development Area Declaration, including, but not limited to, restrictions upon impervious cover, height, size, shape, floor areas, land area, placement of structures, set-backs, building envelopes, colors, materials, or land use, when, in the opinion of the West Cypress Hills Reviewer, in its sole and absolute discretion, such variance is justified. All variances must be evidenced in writing and, if Declarant has assigned its rights to the ACC, must be approved by at least a majority of the members of the ACC. Each variance must also be recorded in the Official Public Records of Travis County, Texas; provided, however, that failure to record a variance will not affect the validity thereof or give rise to any claim or cause of action against the West Cypress Hills Reviewer, Declarant, the Board or the ACC. If a variance is granted, no violation of the covenants, conditions, or restrictions contained in this Master Declaration or any Development Area Declaration will be deemed to have occurred with respect to the matter for which the variance was granted. The granting of such variance will not operate to waive or amend any of the terms and provisions of this Master Declaration, or any Development Area Declaration, for any purpose except as to the particular property and in the particular instance covered by the variance, and such variance will not be considered to establish a

36

precedent for any future waiver, modification, or amendment of the terms and provisions of this Master Declaration or any Development Area Declaration.

(e)     Duration of Approval. The approval of the West Cypress Hills Reviewer of any final plans and specifications, and any variances granted by the West Cypress Hills Reviewer will be valid for a period of one hundred and twenty (120) days only. If construction in accordance with such plans and specifications or variance is not commenced within such one hundred and twenty (120) day period and diligently prosecuted to completion thereafter, the Owner will be required to resubmit such final plans and specifications or request for a variance to the West Cypress Hills Reviewer, and the West Cypress Hills Reviewer will have the authority to re-evaluate such plans and specifications in accordance with this *Section 6.05(e)* and may, in addition, consider any change in circumstances which may have occurred since the time of the original approval.

(f)     No Waiver of Future Approvals. The approval of the West Cypress Hills Reviewer to any plans or specifications for any work done or proposed in connection with any matter requiring the approval or consent of the West Cypress Hills Reviewer will not be deemed to constitute a waiver of any right to withhold approval or consent as to any plans and specifications on any other matter, subsequently or additionally submitted for approval by the same or a different person, nor will such approval or consent be deemed to establish a precedent for future approvals by the West Cypress Hills Reviewer.

(g)     Non-Liability of West Cypress Hills Reviewer. **THE WEST CYPRESS HILLS REVIEWER WILL NOT BE LIABLE TO ANY OWNER OR TO ANY OTHER PERSON FOR ANY LOSS, DAMAGE OR INJURY ARISING OUT OF THE PERFORMANCE OF THE WEST CYPRESS HILLS REVIEWER'S DUTIES UNDER THIS MASTER DECLARATION, UNLESS SUCH LOSS, DAMAGE, OR INJURY IS DUE TO THE WILLFUL MISCONDUCT OR BAD FAITH OF THE WEST CYPRESS HILLS REVIEWER OR ONE OR MORE INDIVIDUALS ACTING ON ITS BEHALF, AS THE CASE MAY BE.**

**ARTICLE VII**
**MORTGAGE PROVISIONS**

The following provisions are for the benefit of holders, insurers and guarantors of first Mortgages on Lots or Condominium Units within the Development. The provisions of this Article apply to this Master Declaration and the Bylaws of the Association.

7.01     **Notice of Action.** An institutional holder, insurer, or guarantor of a first Mortgage which provides a written request to the Association (such request to state the name and address of such holder, insurer, or guarantor and the street address of the Lot or

37

260575-2 11/09/2006                                                                 WEST CYPRESS HILLS
AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

Page 59

Condominium Unit to which its Mortgage relates (thereby becoming an **"Eligible Mortgage Holder"**), will be entitled to timely written notice of:

(a)     Any condemnation loss or any casualty loss which affects a material portion of the Development or which affects any Lot or Condominium Unit on which there is an Eligible Mortgage held, insured, or guaranteed by such Eligible Mortgage Holder; or

(b)     Any delinquency in the payment of assessments or charges owed for a Lot or Condominium Unit subject to the Mortgage of such Eligible Mortgage Holder, where such delinquency has continued for a period of sixty (60) days, or any other violation of the Master Restrictions relating to such Lot or Condominium Unit or the Owner or occupant which is not cured within sixty (60) days; or

(c)     Any lapse, cancellation, or material modification of any insurance policy maintained by the Association.

7.02     **Examination of Books**. The Association will permit Mortgagees to examine the books and records of the Association during normal business hours.

7.03     **Taxes, Assessments and Charges**.  All taxes, assessments and charges that may become liens prior to first lien mortgages under applicable law will relate only to the individual Lots or Condominium Units and not to any other portion of the Development.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01     **Term**.  The terms, covenants, conditions, restrictions, easements, charges, and liens set out in this Master Declaration will run with and bind the Property and, upon the filing of a notice pursuant to *Section 10.05*, will also bind the portion of the Additional Property described in such notice, and will inure to the benefit of and be enforceable by the Association, and every Owner, including Declarant, and their respective legal representatives, heirs, successors, and assigns, for a term beginning on the date this Master Declaration is recorded in the Official Records of Travis County, Texas, and continuing through and including January 1, 2056, after which time this Master Declaration will be automatically extended for successive periods of ten (10) years unless a change (the word "change" meaning a termination, or change of term or renewal term) is approved in a resolution adopted by Members entitled to cast at least seventy percent (70%) of the total number of votes of the Association, voting in person or by proxy at a meeting duly called for such purpose, written notice of which will be given to all Members at least thirty (30) days in advance and will set forth the purpose of such meeting; provided, however, that such change will be effective only upon the recording of a certified copy of such resolution in the Official Public Records of Travis County, Texas. Notwithstanding any provision in this *Section 8.01* to the contrary, if any provision of this Master Declaration would be unlawful, void, or voidable by reason of any Texas law restricting the period of time that covenants on land may be enforced, such provision will expire (twenty

38

WEST CYPRESS HILLS
AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

Page 60

one) 21 years after the death of the last survivor of the now living descendants of Elizabeth II, Queen of England.

8.02 **Eminent Domain.** In the event it becomes necessary for any public authority to acquire all or any part of the Common Area or Special Common Area for any public purpose during the period this Master Declaration is in effect, the Board is hereby authorized to negotiate with such public authority for such acquisition and to execute instruments necessary for that purpose. Should acquisitions by eminent domain become necessary, only the Board need be made a party, and in any event the proceeds received will be held by the Association for the benefit of the Owners. In the event any proceeds attributable to acquisition of Common Area are paid to Owners, such payments will be allocated on the basis of Assessment Units and paid jointly to the Owners and the holders of first Mortgages or deeds of trust on the respective Lot and/or Condominium Unit. In the event any proceeds attributable to acquisition of Special Common Area are paid to Owners who have been designated as a beneficiary of such Special Common Area, such payment will be allocated on the basis of Assessment Units and paid jointly to such Owners and the holders of first Mortgages or deeds of trust on the respective Lot and/or Condominium Unit.

8.03 **Amendment.** This Master Declaration may be amended or terminated by the recording in the Official Public Records of Travis County, Texas, of an instrument executed and acknowledged by: (i) Declarant acting alone; or (ii) by the president and secretary of the Association setting forth the amendment and certifying that such amendment has been approved by Declarant (unless Declarant has relinquished such right by written instrument recorded in the Official Public Records of Travis County, Texas) and Members entitled to cast at least seventy percent (70%) of the number of votes entitled to be cast by members of the Association. No amendment will be effective without the written consent of Declarant, its successors or assigns. Specifically, and not by way of limitation, Declarant may unilaterally amend this Master Declaration and any Development Area Declaration: (a) to bring any provision into compliance with any applicable governmental statute, rule, regulation, or judicial determination; (b) to enable any reputable title insurance company to issue title insurance coverage on any Lot or Condominium Unit; (c) to enable any institutional or governmental lender, purchaser, insurer or guarantor of mortgage loans, including, for example, the Federal Home Loan Mortgage Corporation, to make, purchase, insure or guarantee mortgage loans on Lots and/or Condominium Units; or (d) to comply with any requirements promulgated by a local, state or governmental agency, including, for example, the Department of Housing and Urban Development.

8.04 **Roadway and Utility Easements.** Declarant reserves the right to locate, relocate, construct, erect, and maintain or cause to be located, relocated, constructed, erected, and maintained in and on any streets maintained by the Association, or areas conveyed to the Association, or areas reserved or held as Common Area or Special Common Area, roadways, sewer lines, water lines, electrical lines and conduits, and other pipelines, conduits, wires, and any public utility function beneath or above the surface of the ground with the right of access to the same at any time for the purposes of repair and maintenance.

39

8.05 **Enforcement.** The Association or Declarant will have the right to enforce, by a proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens, charges and other terms now or hereafter imposed by the provisions of this Master Declaration. Failure to enforce any right, provision, covenant, or condition granted by this Master Declaration will not constitute a waiver of the right to enforce such right, provision, covenants or condition in the future.

8.06 **Higher Authority.** The terms and provisions of this Master Declaration are subordinate to federal and state law, and local ordinances. Generally, the terms and provisions of this Master Declaration are enforceable to the extent they do not violate or conflict with local, state, or federal law or ordinance.

> **NOTICE**
> Users of this Master Declaration, any Development Area Declaration, and the Design Guidelines should periodically review statutes and court rulings that may modify or nullify the terms and provisions of those documents or their enforcement, or which may create rights or duties not contemplated therein.

8.07 **Severability.** If any provision of this Master Declaration is held to be invalid by any court of competent jurisdiction, such invalidity will not affect the validity of any other provision of this Master Declaration, or, to the extent permitted by applicable law, the validity of such provision as applied to any other person or entity.

8.08 **Conflicts.** If there is any conflict between the provisions of this Master Declaration, the Certificate, the Bylaws, or any rules and regulations adopted pursuant to the terms of such documents, or any Development Area Declaration, the provisions of this Master Declaration will govern.

8.09 **Gender.** Whenever the context so requires, all words herein in the male gender will be deemed to include the female or neuter gender, all singular words will include the plural, and all plural words will include the singular.

8.10 **Acceptance by Grantees.** Each grantee of Declarant of a Lot, Condominium Unit, other real property interest in the Development, by the acceptance of a deed of conveyance, or each subsequent purchaser, accepts the same subject to all terms, restrictions, conditions, covenants, reservations, easements, liens and charges, and the jurisdiction rights and powers created or reserved by this Master Declaration or to whom this Master Declaration is subject, and all rights, benefits and privileges of every character hereby granted, created, reserved or declared. Furthermore, each grantee agrees that no assignee or successor to Declarant hereunder will have any liability for any act or omission of Declarant which occurred prior to the effective date of any such succession or assignment. All impositions and obligations hereby imposed will constitute covenants running with the land within the Development, and will bind any person having at any time any interest or estate in the Development, and will inure to the benefit of each Owner in like manner as though the provisions of this Master Declaration were recited and stipulated at length in each and every deed of conveyance.

40

## 8.11 Damage and Destruction.

(a)     Promptly after damage or destruction by fire or other casualty to all or any part of the Common Area or Special Common Area covered by insurance, the Board, or its duly authorized agent, will proceed with the filing and adjustment of all claims arising under such insurance and obtain reliable and detailed estimates of the cost of repair of the damage.  Repair, as used in this *Section 8.11(a),* means repairing or restoring the Common Area or Special Common Area to substantially the same condition as existed prior to the fire or other casualty.

(b)     Any damage to or destruction of the Common Area or Special Common Area will be repaired unless a majority of the Board decides within sixty (60) days after the casualty not to repair.  If for any reason either the amount of the insurance proceeds to be paid as a result of such damage or destruction, or reliable and detailed estimates of the cost of repair, or both, are not made available to the Association within said period, then the period will be extended until such information will be made available.

(c)     In the event that it should be determined by the Board that the damage or destruction of the Common Area or Special Common Area will not be repaired and no alternative Improvements are authorized, then the affected portion of the Common Area or Special Common Area will be restored to its natural state and maintained as an undeveloped portion of the Common Area by the Association in a neat and attractive condition.

(d)     If insurance proceeds are paid to restore or repair any damaged or destroyed Common Area, and such proceeds are not sufficient to defray the cost of such repair or restoration, the Board will levy a Special Assessment, as provided in *Article 5,* against all Owners.  Additional Assessments may be made in like manner at any time during or following the completion of any repair.

(e)     If insurance proceeds are paid to restore or repair any damaged or destroyed Special Common Area, and such proceeds are not sufficient to defray the cost of such repair or restoration, the Board will levy a special Assessment, as provided in *Article 5,* against all Owners designated as a beneficiary of such Special Common Area. Additional Assessments may be made in like manner at any time during or following the completion of any repair.

(f)     In the event that any proceeds of insurance policies are paid to Owners as a result of any damage or destruction to any Common Area, such payments will be allocated based on Assessment Units and paid jointly to the Owners and the holders of first Mortgages or deeds of trust on their Lots or Condominium Units.

(g)     In the event that any proceeds of insurance policies are paid to Owners as a result of any damage or destruction to Special Common Area, such payments will be allocated based on Assessment Units and will be paid jointly to the Owners who have

41

been designated as a beneficiary of such Special Common Area and the holders of first Mortgages or deeds of trust on their Lots or Condominium Units.

(h)     In the event that any proceeds of insurance policies are paid to Owners, such payments will be allocated based on Assessment Units and will be paid jointly to the Owners and the holders of first Mortgages or deeds of trust on their Lots or Condominium Units.

8.12    **No Partition.**    Except as may be permitted in this Master Declaration or amendments thereto, no physical partition of the Common Area or Special Common Area or any part will be permitted, nor will any person acquiring any interest in the Development or any part seek any such judicial partition unless the Development in question has been removed from the provisions of this Master Declaration pursuant to *Section 10.04* below. This *Section 8.12* will not be construed to prohibit the Board from acquiring and disposing of tangible personal property or from acquiring title to real property that may or may not be subject to this Master Declaration, nor will this provision be constructed to prohibit or affect the creation of a condominium regime in accordance with the Texas Uniform Condominium Act.

8.13    **View Impairment.**    Neither the Declarant nor the Association guarantee or represent that any view over and across the Lots and/or Condominium Units, or any open space within the Development will be preserved without impairment. The Declarant and the Association shall have no obligation to relocate, prune, or thin trees or other landscaping. The Association (with respect to any Common Area or Special Common Area) will have the right to add trees and other landscaping from time to time, subject to applicable law. There shall be no express or implied easements for view purposes or for the passage of light and air.

8.14    **Safety and Security.**    Each Owner and occupant of a Unit, and their respective guests and invitees, shall be responsible for their own personal safety and the security of their property in the Community. The Master Association may, but shall not be obligated to, maintain or support certain activities within the Community designed to promote or enhance the level of safety or security which each person provides for himself or herself and his or her property. However, neither the Master Association nor the Master Declarant shall in any way be considered insurers or guarantors of safety or security within the Community, nor shall either be held liable for any loss or damage by reason of failure to provide adequate security or ineffectiveness of security measures undertaken.

No representation or warranty is made that any systems or measures, including security monitoring systems or any mechanism or system for limiting access to the Community, cannot be compromised or circumvented; or that any such system or security measures undertaken will in all cases prevent loss or provide the detection or protection for which the system is designed or intended. Each Owner acknowledges, understands, and shall be responsible for informing any tenants and other occupants of such Owner's Unit that the Master Association, its Board and committees, and the Master Declarant are not insurers or guarantors of security or safety and that each Person within the Community assumes all risks of personal injury and loss

42

or damage to property, including Units and the contents of Units, resulting from acts of third parties.

8.15 **Notices.** Any notice permitted or required to be given to any person by this Master Declaration will be in writing and may be delivered either personally or by mail. If delivery is made by mail, it will be deemed to have been delivered on the third (3rd) day (other than a Sunday or legal holiday) after a copy of the same has been deposited in the United States mail, postage prepaid, addressed to the person at the address given by such person to the Association for the purpose of service of notices. Such address may be changed from time to time by notice in writing given by such person to the Association.

## ARTICLE IX
## EASEMENTS

9.01 **Right of Ingress and Egress.** Declarant, its agents, employees and designees will have a right of ingress and egress over and the right of access to the Common Area or Special Common Area to the extent necessary to use the Common Area or Special Common Area and the right to such other temporary uses of the Common Area or Special Common Area as may be required or reasonably desirable (as determined by Declarant in its sole discretion) in connection with the construction and development of the Development.

9.02 **Reserved Easements.** All dedications, limitations, restrictions and reservations shown on any Plat and all grants and dedications of easements, rights-of-way, restrictions and related rights made by Declarant prior to the Development becoming subject to this Master Declaration are incorporated herein by reference and made a part of this Master Declaration for all purposes as if fully set forth herein, and will be construed as being adopted in each and every contract, deed or conveyance executed or to be executed by or on behalf of Declarant. Declarant reserves the right to relocate, make changes in, and additions to said easements, rights-of-way, dedications, limitations, reservations and grants for the purpose of most efficiently and economically developing the Development.

9.03 **Utility Easements.** Declarant hereby reserves unto itself and Declarant's successors and assigns a perpetual non-exclusive easement over and across the Development for: (i) the installation, operation and maintenance of utilities and associated infrastructure to serve the Development and any other property owned by Declarant; (ii) the installation, operation and maintenance of cable lines and associated infrastructure for sending and receiving data and/or other electronic signals, security and similar services to serve the Development and any other property owned by Declarant; and (iii) the installation, operation and maintenance of, walkways, pathways and trails, drainage systems, street lights and signage to serve the Development and any other property owned by Declarant. Declarant will be entitled to unilaterally assign the easements reserved hereunder to any third party who owns, operates or maintains the facilities and improvements described in (i) through (iii) of this *Section 9.03.* The exercise of the easement reserved herein will not extend to permitting entry into any

residence, nor will it unreasonably interfere with the use of any Lot or Condominium Unit or residence or Improvement constructed thereon.

9.04 **Declarant as Attorney in Fact.** To secure and facilitate Declarant's exercise of the rights reserved by Declarant pursuant to the terms and provisions of this Master Declaration, each Owner, by accepting a deed to a Lot or Condominium Unit and each Mortgagee, by accepting the benefits of a Mortgage against a Lot or Condominium Unit, and any other third party by acceptance of the benefits of a mortgage, deed of trust, mechanic's lien contract, mechanic's lien claim, vendor's lien and/or any other security interest against any Lot or Condominium Unit, will thereby be deemed to have appointed Declarant such Owner's, Mortgagee's, and third party's irrevocable attorney-in-fact, with full power of substitution, to do and perform, each and every act permitted or required to be performed by Declarant pursuant to the terms of this Master Declaration. The power thereby vested in Declarant as attorney-in-fact for each Owner, Mortgagee and/or third party, will be deemed, conclusively, to be coupled with an interest and will survive the dissolution, termination, insolvency, bankruptcy, incompetency and death of an Owner, Mortgagee and/or third party and will be binding upon the legal representatives, administrators, executors, successors, heirs and assigns of each such party.

## ARTICLE X
## DEVELOPMENT RIGHTS

10.01 **Development by Declarant.** It is contemplated that the Development will be developed pursuant to a coordinated plan, which may, from time to time, be amended or modified. Declarant reserves the right, but will not be obligated, to designate Development Areas, to create and/or designate Lots, Special Common Areas and Common Areas and to subdivide with respect to any of the Development pursuant to the terms of this *Section 10.01*, subject to any limitations imposed on portions of the Development by any applicable Plat. These rights may be exercised with respect to any portions of the Property in accordance with *Section 10.05*. As each area is developed or dedicated, Declarant may record one or more Development Area Declarations and designate the use, classification and such additional covenants, conditions and restrictions as Declarant may deem appropriate for that area. Any Development Area Declaration may provide its own procedure for the amendment of any provisions. All lands, Improvements, and uses in each area so developed will be subject to both this Master Declaration and the Development Area Declaration, if any, for that Area.

10.02 **Special Declarant Rights.** Notwithstanding any provision of this Master Declaration to the contrary, at all times, Declarant will have the right and privilege: (i) to erect and maintain advertising signs (illuminated or non-illuminated), sales flags, other sales devices and banners for the purpose of aiding the sale of Lots or Condominium Units in the Development; (ii) to maintain Improvements upon Lots as sales, model, management, business and construction offices; and (iii) to maintain and locate construction trailers and construction tools and equipment within the Development. The construction placement or maintenance of Improvements by Declarant will not be considered a nuisance, and Declarant hereby reserves

44

the right and privilege for itself to conduct the activities enumerated in this *Section 10.02* until two (2) years after the expiration or termination of the Development and Sale Period.

10.03 **Addition of Land.** Declarant may, at any time and from time to time, add additional lands to the Property and, upon the filing of a notice of addition of land, such land will be considered part of the Property for purposes of this Master Declaration, and upon the further filing of a notice of applicability meeting the requirements of *Section 10.05* below, such added lands will be considered part of the Development subject to this Master Declaration and the terms, covenants, conditions, restrictions and obligations set forth in this Master Declaration, and the rights, privileges, duties and liabilities of the persons subject to this Master Declaration will be the same with respect to such added land as with respect to the lands originally covered by this Master Declaration. To add lands to the Property, Declarant will be required only to record in the Official Public Records of Travis County, Texas, a notice of addition of land (which notice may be contained within any Development Area Declaration affecting such land) containing the following provisions:

(a) A reference to this Master Declaration, which reference will state the volume and initial page number of the Official Public Records of Travis County wherein this Master Declaration is recorded;

(b) A statement that such land will be considered Property for purposes of this Master Declaration, and that upon the further filing of a notice of applicability meeting the requirements of *Section 10.05* of this Master Declaration, all of the terms, covenants, conditions, restrictions and obligations of this Master Declaration will apply to the added land; and

(c) A legal description of the added land.

10.04 **Withdrawal of Land.** Declarant may, at any time and from time to time, reduce or withdraw from the Property, including the Development, and remove and exclude from the burden of this Master Declaration and the jurisdiction of the Association: (i) any portions of the Development which have not been included in a Plat; (ii) any portion of the Development included in a Plat if Declarant owns all Lots described in such Plat; and (iii) any portions of the Development included in a Plat even if Declarant does not own all Lot(s) described in such Plat, provided that Declarant obtains the written consent of all other Owners of Lot(s) described in such Plat. Upon any such withdrawal and renewal this Master Declaration and the covenants conditions, restrictions and obligations set forth herein will no longer apply to the portion of the Development withdrawn. To withdraw lands from the Development hereunder, Declarant will be required only to record in the Official Public Records of Travis County, Texas, a notice of withdrawal of land containing the following provisions:

(a) A reference to this Master Declaration, which reference will state the volume and initial page number of the Official Public Records of Travis County wherein this Master Declaration is recorded;

45

(b)     A statement that the provisions of this Master Declaration will no longer apply to the withdrawn land; and

(c)     A legal description of the withdrawn land.

10.05  **Notice of Applicability**.

(a)     Upon execution by Declarant and recordation in the Official Public Records of Travis County, Texas, this Master Declaration will apply to and burden the Property.

(b)     Upon the filing in the Official Public Records of Travis County, Texas, this Master Declaration serves to provide notice that at any time, and from time to time, all or any portion of the Additional Property may be made subject to the terms, covenants, conditions, restrictions and obligations of this Master Declaration.  This Master Declaration will apply to and burden a portion or portions of the Additional Property upon the filing of a notice of applicability describing such portion of the Additional Property by a legally sufficient description and expressly providing that such portion of the Additional Property will be considered a part of the Development and will be subject to the terms, covenants conditions, restrictions and obligations of this Master Declaration.  To be effective, a notice of applicability must be executed by Declarant and the record title owner of the portion of the Additional Property being made subject to this Master Declaration if such Property is not owned by Declarant. Declarant may also cause a notice of applicability to be filed covering a portion of the Additional Property for the purpose of encumbering such portion of the Additional Property with this Master Declaration and any Development Area Declaration previously recorded by Declarant (which notice of applicability may amend, modify or supplement the restrictions, set forth in the Development Area Declaration, which will apply to such portion of the Additional Property).  To make the terms and provisions of this Master Declaration applicable to a portion of the Additional Property, Declarant will be required only to cause a notice of applicability to be recorded containing the following provisions:

(i)     A reference to this Master Declaration, which reference will state the volume and initial page number of the Official Public Records of Travis County, Texas wherein this Master Declaration is recorded;

(ii)    A reference, if applicable, to the Development Area Declaration which will apply to such portion of the Additional Property (with any amendment, modification, or supplementation of the restrictions set forth in the Development Area Declaration which will apply to such portion of the Additional Property), which reference will state the volume and initial page number of the

46

Official Public Records of Travis County, Texas wherein the Development Area Declaration is recorded;

(iii) A statement that all of the provisions of this Master Declaration will apply to such portion of the Additional Property;

(iv) A legal description of such portion of the Additional Property; and

(v) If applicable, a description of any Special Common Area which benefits the Additional Property and the beneficiaries of such Special Common Area.

---

**NOTICE TO TITLE COMPANY**

NO PORTION OF THE ADDITIONAL PROPERTY IS SUBJECT TO THE TERMS AND PROVISIONS OF THIS MASTER DECLARATION AND THIS MASTER DECLARATION DOES NOT APPLY TO ANY PORTION OF THE ADDITIONAL PROPERTY UNLESS A NOTICE OF APPLICABILITY DESCRIBING SUCH PORTION OF THE ADDITIONAL PROPERTY AND REFERENCING THIS MASTER DECLARATION HAS BEEN RECORDED IN THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

---

10.06 **Assignment of Declarant's Rights.** Notwithstanding any provision in this Master Declaration to the contrary, Declarant may, by written instrument, assign, in whole or in part, any of its privileges, exemptions, rights, and duties under this Master Declaration to any person or entity and may permit the participation, in whole, in part, exclusively, or non-exclusively, by any other person or entity in any of its privileges, exemptions, rights, and duties hereunder.

### ARTICLE XI
### DISPUTE RESOLUTION

11.01 **Agreement to Encourage Resolution of Disputes Without Litigation.**

(a) Declarant, the Association and its officers, directors, and committee members, all parties subject to this Master Declaration (collectively, the "**Bound Parties**"), agree that it is in the best interest of all concerned to encourage the amicable resolution of disputes involving the Development without the emotional and financial costs of litigation. Accordingly, each Bound Party agrees not to file suit in any court with respect to a Claim described in subsection (b), unless and until it has first submitted such Claim to the alternative dispute resolution procedures set forth in *Section 11.02* in a good faith effort to resolve such Claim.

47

(b)     As used in this Article, the term "Claim" will refer to any claim, grievance or dispute arising out of or relating to:

(i)     the interpretation, application, or enforcement of this Master Declaration, any Development Area Declaration, the Design Guidelines, the Certificate, Bylaws, and rules and regulations adopted by the Board; or

(ii)    the rights, obligations, and duties of any Bound Party under this Master Declaration, any Development Area Declaration, the Design Guidelines, the Certificate, Bylaws, and rules and regulations adopted by the Board; or

(iii)   the design or construction of improvements within the Development, other than matters of aesthetic judgment under *Article 6*, which will not be subject to review.

The following will not be considered "Claims" unless all parties to the matter otherwise agree to submit the matter to the procedures set forth in *Section 11.02*:

(1)     any suit by the Association to collect assessments or other amounts due from any Owner; and

(2)     any suit by the Association to obtain a temporary restraining order (or emergency equitable relief) and such ancillary relief as the court may deem necessary in order to maintain the status quo and preserve the Association's ability to enforce the provisions of this Master Declaration; and

(3)     any suit which does not include Declarant or the Association as a party, if such suit asserts a Claim which would constitute a cause of action independent of this Master Declaration, any Development Area Declaration, the Design Guidelines, the Certificate, Bylaws, and rules and regulations adopted by the Board; and

(4)     any suit in which any indispensable party is not a Bound Party; and

(5)     any suit as to which any applicable statute of limitations would expire within one hundred and eighty (180) days of giving the Notice required by *Section 11.02 (a)*, unless the party or parties against whom the Claim is made agree to toll the statute of limitations as to such Claim for such

48

260575-2 11/09/2006                                          WEST CYPRESS HILLS
AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

Page 70

period as may reasonably be necessary to comply with this Article.

11.02 **Dispute Resolution Procedures**.

(a)     Notice. The Bound Party asserting a Claim ("**Claimant**") against another Bound Party ("**Respondent**") will give written notice to each Respondent and to the Board stating plainly and concisely:

    (i)     the nature of the Claim, including the Persons involved and the Respondent's role in the Claim; and

    (ii)     the legal basis of the Claim (i.e., the specific authority out of which the Claim arises); and

    (iii)     the Claimant's proposed resolution or remedy; and

    (iv)     the Claimant's desire to meet with the Respondent to discuss in good faith ways to resolve the Claim.

(b)     Negotiation. The Claimant and Respondent will make every reasonable effort to meet in person and confer for the purpose of resolving the Claim by good faith negotiation. If requested in writing, accompanied by a copy of the Notice, the Board may appoint a representative to assist the parties in negotiating a resolution of the Claim.

(c)     Mediation. If the parties have not resolved the Claim through negotiation within thirty (30) days of the date of the notice described in *Section 11.02(a)* (or within such other period as the parties may agree upon), the Claimant will have thirty (30) additional days to submit the Claim to mediation with an entity designated by the Association (if the Association is not a party to the Claim) or to an independent agency providing dispute resolution services in Travis County, Texas.

If the Claimant does not submit the Claim to mediation within such time, or does not appear for the mediation when scheduled, the Claimant will be deemed to have waived the Claim, and the Respondent will be relieved of any and all liability to the Claimant (but not third parties) on account of such Claim.

If the Parties do not settle the Claim within thirty (30) days after submission of the matter to mediation, or within such time as determined reasonable by the mediator, the mediator will issue a notice of termination of the mediation proceedings indicating that the parties are at an impasse and the date that mediation was terminated. The Claimant will thereafter be entitled to file suit or to initiate administrative proceedings on the Claim, as appropriate.

Each Party will bear its own costs of the mediation, including attorney's fees, and each Party will share equally all fees charged by the mediator.

(d)     Settlement. Any settlement of the Claim through negotiation or mediation will be documented in writing and signed by the parties. If any party thereafter fails to abide by the terms of such agreement, then any other party may file suit or initiate administrative proceedings to enforce such agreement without the need to again comply with the procedures set forth in this Section. In such event, the party taking action to enforce the agreement or award will, upon prevailing, be entitled to recover from the non-complying party (or if more than one noncomplying party, from all such parties in equal proportions) all costs incurred in enforcing such agreement or award, including, without limitation, attorneys' fees and court costs.

11.03 **Initiation of Litigation by Association.** In addition to compliance with the foregoing alternative dispute resolution procedures, if applicable, the Association will not initiate any judicial or administrative proceeding unless first approved by a vote of the Members entitled to cast seventy-five percent (75%) of the votes in the Association, excluding the votes held by Declarant, except that no such approval will be required for actions or proceedings:

(a)     initiated while Declarant owns any portion of the Property or the Development; or

(b)     initiated to enforce the provisions of this Master Declaration, any Development Area Declaration, the Design Guidelines, the Certificate, Bylaws, and rules and regulations adopted by the Board, including collection of assessments and foreclosure of liens; or

(c)     initiated to challenge *ad valorem* taxation or condemnation proceedings; or

(d)     initiated against any contractor, vendor, or supplier of goods or services arising out of a contract for services or supplies; or

(e)     to defend claims filed against the Association or to assert counterclaims in proceedings instituted against it.

This Section will not be amended unless such amendment is approved by the same percentage of votes necessary to institute proceedings except any such amendment will also be approved by Declarant until the expiration or termination of the Development and Sale Period.

EXECUTED to be effective on the date this instrument is recorded in the Official Public Records of Travis County, Texas.

*[SIGNATURE PAGE FOLLOWS]*

**DECLARANT:**

**CYPRESS RANCH, LTD.**, a Texas limited partnership

By:    Cypress Ranch Development, Inc., a Texas corporation, General Partner

By: _Ala_____

Printed Name: ALAN TOPFER

Title: PRESIDENT


THE STATE OF TEXAS     §
COUNTY OF TRAVIS       §

This instrument was acknowledged before me on the __16__ day of __NOVEMBER__ 2006, by __ALAN TOPFER, PRESIDENT__ of Cypress Ranch Development, Inc., a Texas corporation, General Partner of Cypress Ranch, Ltd., a Texas limited partnership, on behalf of said corporation and limited partnership.

(Seal)



Notary Public Signature

LISA STEPHENS
Notary Public, State of Texas
My Commission Expires
April 01, 2009

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

2006 Nov 17 08:31 AM    2006222235
BENAVIDESV $232.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

Recorders Memorandum-At the time of recordation this instrument was found to be inadequate for the best reproduction, because of illegibility, carbon or photocopy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

260575-2 11/09/2006

51

WEST CYPRESS HILLS
AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

After Recording Return To:

Robert D. Burton
Armbrust & Brown, L.L.P.
100 Congress Ave., Suite 1300
Austin, Texas 78701

 AMEND    2008049036

4 PGS



# WEST CYPRESS HILLS
## FIRST AMENDMENT TO AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

*Travis County, Texas*

Declarant:    CYPRESS RANCH, LTD., a Texas limited partnership

Cross Reference to <u>Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills</u>, recorded under Document No. 2006222235, Official Public Records of Travis County, Texas.



2006698-2 02/29/2008

# FIRST AMENDMENT TO AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS – WEST CYPRESS HILLS

This First Amendment to Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills (the "Amendment") is made by **CYPRESS RANCH, LTD.**, a Texas limited partnership ("Declarant"), and is as follows:

## RECITALS:

A. Declarant previously executed and recorded that certain <u>Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills</u>, recorded as Document No. 2006222235, in the Official Public Records of Travis County, Texas (the "Declaration").

B. Pursuant to Section 8.03 of the Declaration, the Declaration may be amended by Declarant acting alone.

**NOW THEREFORE**, Declarant hereby amends and modifies the Declaration as follows:

1. **Voting Rights.** Section 3.04 of the Declaration is hereby deleted in its entirety and replaced with the following:

> 3.04 **Voting Rights.** Due to the number of Lots and Condominium Units that may be developed in the Development, this Master Declaration provides for a <u>representative system of voting</u>. The Owners of Lots and Condominium Units in each Neighborhood elect a "**Neighborhood Delegate**" and an alternative Neighborhood Delegate, in the manner provided below, to cast the votes of all Lots and Condominium Units in the Neighborhood on matters requiring a vote of the membership, except where this Master Declaration specifically requires a vote of the Owners. However, until such time as the Board first calls for election of a Neighborhood Delegate for a particular Neighborhood, each Owner of a Lot or Condominium Unit in such Neighborhood shall be considered a "Neighborhood Delegate" and may personally cast the vote allocated to such Owner's Lot or Condominium Unit on any issue requiring a vote of the Neighborhood Delegates under this Master Declaration. **Notwithstanding the foregoing or any provision to the contrary in this Master Declaration, as provided in Section 3.05(c) below, until expiration or termination of the Development and Sale Period, Declarant will be entitled to appoint and remove all members of the Board.**
>
> Candidates for election as the Neighborhood Delegate and alternate Neighborhood Delegate from a Neighborhood shall be Owners of Lots or Condominium Units in the Neighborhood, spouses of such Owners, or residents of the Neighborhood. The Neighborhood Delegate and the alternate Neighborhood Delegate shall be elected on a biennial basis (once every two years), either by written ballot or at a meeting of the Owners within each Neighborhood, as the Board determines; provided, upon written petition signed by Owners holding at least ten percent (10%) of the votes within any Neighborhood, the election for such Neighborhood shall be held at a meeting. The presence, in person or by proxy, of Owners representing at least forty percent (40%) of

3206/98-2 12/29/2008

Page 75

the total votes in a Neighborhood shall constitute a quorum at any Neighborhood meeting.

The Board shall call for the first election of a Neighborhood Delegate from a Neighborhood not later than seven (7) years after the first conveyance of a Lot or Condominium Unit in the Neighborhood to a Person other than Declarant. Subsequent elections shall, if necessary, be held within thirty (30) days of the same date each year. The candidate for each position who receives the greatest number of votes shall be elected to serve until his or her successor is elected.

Any Neighborhood Delegate may be removed, with or without cause, upon the vote or written petition of Owners holding a majority of the votes allocated to the Lots and Condominium Units in the Neighborhood that the Neighborhood Delegate represents.

The Neighborhood Delegate or, in his or her absence, the alternate Neighborhood Delegate attends Association meetings and casts all votes allocated to Lots and Condominium Units in the Neighborhood that he or she represents on any matter as to which such Neighborhood Delegate is entitled to vote under this Master Declaration. A Neighborhood Delegate may cast all votes allocated to Lots and Condominium Units in the Neighborhood in such delegate's discretion and may, but need not, poll the Owners of Lots and Condominium Units in the Neighborhood which he or she represents prior to voting.

Neighborhood Delegates are subordinate to the Board and their responsibility and authority does not extend to policymaking, supervising, or otherwise being involved in Association governance beyond voting on matters put to a vote of the membership.

In any situation in which an Owner is entitled personally to exercise the vote allocated to such Owner's Lot or Condominium Unit, if there is more than one Owner of a Unit, the vote for such Unit shall be exercised as the co-Owners holding a majority of the ownership interest in the Lot or Condominium Unit determine among themselves and advise the Secretary of the association in writing prior to the close of balloting. Any co-Owner may cast the vote for the Lot or Condominium Unit, and majority agreement shall be conclusively presumed unless another co-Owner of the Lot or Condominium Unit protests promptly to the President or other person presiding over the meeting on the balloting, in the case of a vote taken outside of a meeting. In the absence of a majority agreement, the Lot or Condominium Unit's vote shall be suspended if two or more co-Owners seek to exercise it independently.

2.      **Miscellaneous.** Any capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Declaration. Unless expressly amended by this First Amendment, all other terms and provisions of the Declaration remain in full force and effect as written, and are hereby ratified and confirmed.

*[SIGNATURE PAGE AND ACKNOWLEDGEMENTS FOLLOW]*

3

Executed on this 6 day of March , 2008.

DECLARANT:

CYPRESS RANCH, LTD., a Texas limited partnership

By: Cypress Ranch Development, Inc., a Texas corporation, General Partner

By: _____

Printed Name: Alan Topfer

Title: President

THE STATE OF TEXAS   §

COUNTY OF Travis   §

This instrument was acknowledged before me on the 6 day of March , 2008, by Alan Topfer , President of Cypress Ranch Development, Inc., a Texas corporation, General Partner of Cypress Ranch, Ltd., a Texas limited partnership, on behalf of said corporation and limited partnership.

(Seal)



LISA STEPHENS
Notary Public, State of Texas
My Commission Expires
April 01, 2009

_____

Notary Public Signature

# FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

2008 Mar 27 02:59 PM   2008049036
CLARKMM $28.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

Page 77

**After Recording Return To:**

Robert D. Burton
Armbrust & Brown, PLLC
100 Congress Ave., Suite 1300
Austin, Texas 78701





# WEST CYPRESS HILLS

## SECOND AMENDMENT TO AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

*Travis County, Texas*

Declarant:     CYPRESS RANCH, LTD., a Texas limited partnership

Cross Reference to <u>Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills</u>, recorded under Document No. 2006222235, Official Public Records of Travis County, Texas, as amended by that certain <u>First Amendment to Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills</u>, recorded under Document No. 2008049036, Official Public Records of Travis County, Texas.

1

409273-2 02/02/2011

# SECOND AMENDMENT TO AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS – WEST CYPRESS HILLS

This Second Amendment to Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills (the "Amendment") is made by **CYPRESS RANCH, LTD.**, a Texas limited partnership ("Declarant"), and is as follows:

## RECITALS:

A.      Declarant previously executed and recorded that certain <u>Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills</u>, recorded under Document No. 2006222235, Official Public Records of Travis County, Texas, as amended by that certain <u>First Amendment to Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills</u>, recorded under Document No. 2008049036, Official Public Records of Travis County, Texas (collectively, the " Master Declaration").

B.      Pursuant to Section 8.03 of the Master Declaration, the Master Declaration may be amended by Declarant acting alone.

**NOW THEREFORE**, Declarant hereby amends and modifies the Master Declaration as follows:

1.      <u>Voting Rights</u>. Section 3.04 of the Master Declaration is hereby deleted in its entirety and replaced with the following:

**3.04**      <u>Voting Rights</u>. Due to the number of Lots and Condominium Units that may be developed in the Development, this Master Declaration permits the Declarant, during the Development and Sale Period, and thereafter a Majority of the Board, to institute a <u>representative system of voting</u>.

If the Declarant or a Majority of the Board elects to institute the representative system of voting set forth in this *Section 3.04*, the Declarant or Board, will record a notice in the Official Public Records of Travis County, Texas (the "**Voting Notice**"). If a Voting Notice is filed in accordance with the previous sentence, then the provisions set fort in Sections 3.04A through 3.04E will apply.

3.04A   If a Voting Notice is filed, a representative system of voting will be established for the Development. In such event, the Owners of Lots and Condominium Units in each Neighborhood elect a "**Neighborhood Delegate**" and an alternative Neighborhood Delegate, in the manner provided below, to cast the votes of all Lots and Condominium Units in the Neighborhood on matters requiring a vote of the membership, except where this Master Declaration specifically requires a vote of the Owners. However, until such time as the Board calls for election of a Neighborhood Delegate for a particular Neighborhood in accordance with *Section 3.04B* below, each Owner of a Lot or Condominium Unit in such Neighborhood shall be considered a "Neighborhood Delegate" and may personally cast the vote allocated to such Owner's Lot or Condominium Unit on any issue requiring a vote of the Neighborhood Delegates under this Master Declaration. **Notwithstanding the foregoing or any provision to the**

2

contrary in this Master Declaration, as provided in Section 3.05(c) below, until expiration or termination of the Development and Sale Period, Declarant will be entitled to appoint and remove all members of the Board.

3.04B  On or before sixty (60) days after the Voting Notice is filed, the Board will call for the first election of a Neighborhood Delegate from a Neighborhood. Subsequent elections shall, if necessary, be held within sixty (60) days of the same date each year. The candidate for each position who receives the greatest number of votes shall be elected to serve until his or her successor is elected.

3.04C  Candidates for election as the Neighborhood Delegate and alternate Neighborhood Delegate from a Neighborhood shall be Owners of Lots or Condominium Units in the Neighborhood, spouses of such Owners, or residents of the Neighborhood. The Neighborhood Delegate and the alternate Neighborhood Delegate shall be elected on a biennial basis (once every two years), either by written ballot or at a meeting of the Owners within each Neighborhood, as the Board determines; provided, upon written petition signed by Owners holding at least ten percent (10%) of the votes within any Neighborhood, the election for such Neighborhood shall be held at a meeting. The presence, in person or by proxy, of Owners representing at least forty percent (40%) of the total votes in a Neighborhood shall constitute a quorum at any Neighborhood meeting.

Any Neighborhood Delegate may be removed, with or without cause, upon the vote or written petition of Owners holding a majority of the votes allocated to the Lots and Condominium Units in the Neighborhood that the Neighborhood Delegate represents.

The Neighborhood Delegate or, in his or her absence, the alternate Neighborhood Delegate attends Association meetings and casts all votes allocated to Lots and Condominium Units in the Neighborhood that he or she represents on any matter as to which such Neighborhood Delegate is entitled to vote under this Master Declaration. A Neighborhood Delegate may cast all votes allocated to Lots and Condominium Units in the Neighborhood in such delegate's discretion and may, but need not, poll the Owners of Lots and Condominium Units in the Neighborhood which he or she represents prior to voting.

3.04D  Neighborhood Delegates are subordinate to the Board and their responsibility and authority does not extend to policymaking, supervising, or otherwise being involved in Association governance beyond voting on matters put to a vote of the membership.

3.04E  In any situation in which an Owner is entitled personally to exercise the vote allocated to such Owner's Lot or Condominium Unit, if there is more than one Owner of a Unit, the vote for such Unit shall be exercised as the co-Owners holding a majority of the ownership interest in the Lot or Condominium Unit determine among themselves and advise the Secretary of the association in writing prior to the close of balloting. Any co-Owner may cast the vote for the Lot or Condominium Unit, and

3

WEST CYPRESS HILLS
SECOND AMENDMENT TO AMENDED AND RESTATED MASTER
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

Page 80

majority agreement shall be conclusively presumed unless another co-Owner of the Lot or Condominium Unit protests promptly to the President or other person presiding over the meeting on the balloting, in the case of a vote taken outside of a meeting. In the absence of a majority agreement, the Lot or Condominium Unit's vote shall be suspended if two or more co-Owners seek to exercise it independently.

2. **Section 5.14.** Section 5.14 is hereby added to the Master Declaration and provides as follows:

Section 5.14 **Working Capital Fee.** Each Owner (other than Declarant) of a Lot or Condominium Unit will pay a one-time working capital fee to the Association in such amount as may be determined by the Board from time to time in its sole and absolute discretion. Such working capital fee need not be uniform among all Lots and Condominium Units, and the Board is expressly authorized to levy working capital fees of varying amounts depending on the size, use and general character of the Lots and Condominium Units then being made subject to such levy. The levy of any working capital fee will be effective only upon the recordation in the Official Public Records of Travis County, Texas of a written notice, signed by a duly authorized officer of the Association, setting forth the amount of the working capital fee. Notwithstanding the foregoing provision, the following transfers will not be subject to the working capital contribution: (i) foreclosure of a deed of trust lien, tax lien, or the Association's assessment lien; (ii) transfer to, from, or by the Association; or (iii) voluntary transfer by an Owner to one or more co-owners, or to the Owner's spouse, child, or parent. Additionally, an Owner who: (i) is a Homebuilder; or (ii) acquires a Lot or Condominium Unit for the purpose of resale to a Homebuilder (a "**Development Owner**") will not be subject to the working capital fee; however, the working capital fee will be payable by any Owner who acquires a Lot or Condominium Unit from a Homebuilder or Development Owner for residential living purposes or by any Owner who: (a) acquires a Lot or Condominium Unit and is not in the business of constructing single-family residences for resale to a third party; or (b) who acquires the Lot or Condominium Unit for any purpose other than constructing a single-family residence thereon for resale to a third party. Contributions to the working capital fund are not advance payments of Regular Assessments and are not refundable. Until expiration or termination of the Development and Sale Period, the Declarant will have the power to waive the payment of any working capital fee attributable to a Lot or Condominium Unit by the recordation in the Official Public Records of Travis County, Texas, of a waiver notice executed by the Declarant.

3. **Miscellaneous.** Any capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Master Declaration. Unless expressly amended by this Amendment, all other terms and provisions of the Master Declaration remain in full force and effect as written, and are hereby ratified and confirmed.

*[SIGNATURE PAGE AND ACKNOWLEDGEMENTS FOLLOW]*



409273-2 02/03/2011

4

Page 81

Executed on this 15 day of February, 2011.

DECLARANT:

CYPRESS RANCH, LTD., a Texas limited partnership

By: Cypress Ranch Development, Inc., a Texas corporation, General Partner

By: _____
Printed Name: Alan Topfer
Title: President

THE STATE OF TEXAS §
COUNTY OF Travis §

This instrument was acknowledged before me on the 15 day of February, 2011, by Alan Topfer, President of Cypress Ranch Development, Inc., a Texas corporation, General Partner of Cypress Ranch, Ltd., a Texas limited partnership, on behalf of said corporation and limited partnership.

(Seal)



LISA F. STEPHENS
Notary Public, State of Texas
My Commission Expires
April 01, 2013

_____
Notary Public Signature

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

Feb 25, 2011  01:30 PM  2011028164
BARTHOLOMEWD: $32.00
Dana DeBeauvoir, County Clerk
Travis County  TEXAS

5

WEST CYPRESS HILLS
SECOND AMENDMENT TO AMENDED AND RESTATED MASTER
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

AFTER RECORDING RETURN TO:

JOSHUA D. BERNSTEIN, ESQ.
ARMBRUST & BROWN, PLLC
100 CONGRESS AVE., SUITE 1300
AUSTIN, TEXAS 78701

TRV
4 PGS

2012005832





# WEST CYPRESS HILLS
## THIRD AMENDMENT TO AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

*Travis County, Texas*

Declarant:     CYPRESS RANCH, LTD., a Texas limited partnership

Cross Reference to <u>Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills</u>, recorded under Document No. 2006222235, Official Public Records of Travis County, Texas, as amended by that certain <u>First Amendment to Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills</u>, recorded under Document No. 2008049036, Official Public Records of Travis County, Texas, further amended by that certain <u>Second Amendment to Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills</u>, recorded under Document No. 2011028164, Official Public Records of Travis County, Texas.

{W0524282;}

# THIRD AMENDMENT TO AMENDED AND RESTATED MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS – WEST CYPRESS HILLS

This Third Amendment to Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills (the "**Amendment**") is made by **CYPRESS RANCH, LTD.**, a Texas limited partnership ("**Declarant**"), and is as follows:

## RECITALS:

A. Declarant previously executed and recorded that certain <u>Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills</u>, recorded under Document No. 2006222235, Official Public Records of Travis County, Texas, as amended by that certain <u>First Amendment to Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills</u>, recorded under Document No. 2008049036, Official Public Records of Travis County, Texas, as amended by that certain <u>Second Amendment to Amended and Restated Master Declaration of Covenants, Conditions and Restrictions – West Cypress Hills</u>, recorded under Document No. 2011028164, Official Public Records of Travis County, Texas (collectively, the "**Master Declaration**").

B. Pursuant to Section 8.03 of the Master Declaration, the Master Declaration may be amended by Declarant acting alone.

**NOW THEREFORE**, Declarant hereby amends and modifies the Master Declaration as follows:

1. **Section 10.07**. Section 10.07 is hereby added to the Master Declaration and provides as follows:

Section 10.07 **Maximum Number of Lots**. The Development will be developed over time pursuant to a coordinated plan, which may, from time to time, be amended or modified. Declarant presently contemplates that the maximum total number of Lots which may be created within the Development is 1,000.

3. **Miscellaneous.** Any capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Master Declaration. Unless expressly amended by this Amendment, all other terms and provisions of the Master Declaration remain in full force and effect as written, and are hereby ratified and confirmed.

*[SIGNATURE PAGE AND ACKNOWLEDGEMENTS FOLLOW]*



{W0924222.2}

1

Executed to be effective as of the date this Amendment has been recorded in the Official Public Records of Travis County, Texas.

DECLARANT:

CYPRESS RANCH, LTD., a Texas limited partnership

By:    Cypress Ranch Development, Inc., a Texas corporation, General Partner

By: _Alan T_____

Printed Name: _Alan Topfer_____

Title: _President_____

THE STATE OF TEXAS    §
COUNTY OF Travis    §

This instrument was acknowledged before me on the _23_ day of _December_, 201**1**, by _Alan Topfer_, _President_ of Cypress Ranch Development, Inc., a Texas corporation, General Partner of Cypress Ranch, Ltd., a Texas limited partnership, on behalf of said corporation and limited partnership.

(Seal)

LISA F. STEPHENS
Notary Public, State of Texas
My Commission Expires
April 01, 2013

_____
Notary Public Signature



[W0904298.2]

2

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

Jan 13, 2012  02:19 PM    2012005832
BENAVIDESV: $28.00
Dana DeBeauvoir, County Clerk
Travis County  TEXAS





DECLAR    2006222238

26 PGS



AFTER RECORDING RETURN TO:

Robert D. Burton, Esq.
Armbrust & Brown, L.L.P.
100 Congress Ave., Suite 1300
Austin, Texas 78701

# WEST CYPRESS HILLS

## DEVELOPMENT AREA DECLARATION
## PHASE ONE, SECTION TWO

Declarant    CYPRESS RANCH, LTD., a Texas limited partnership

Cross reference to West Cypress Hills Amended and Restated Master Declaration of Covenants, Conditions and Restrictions, recorded as Document No. 2006222235 in the Official Public Records of Travis County, Texas, and that certain Notice of Applicability of West Cypress Hills Amended and Restated Master Declaration of Covenants, Conditions and Restrictions [Phase One, Section Two], recorded as Document No. 2006222237 in the Official Public Records of Travis County, Texas. The terms and provisions of the aforementioned documents also apply to the Development Area encumbered by this Development Area Declaration.

266577-2 11/09/2006

## Table of Contents

ARTICLE 1 DEFINITIONS ................................................................................. 2
    1.01    Defined Terms ............................................................................... 2
    1.02    General Definitions ....................................................................... 4

ARTICLE 2 GENERAL RESTRICTIONS ........................................................... 4
    2.01    Subdividing ................................................................................... 4
    2.02    Hazardous Activities ..................................................................... 4
    2.03    Insurance Rates ............................................................................. 5
    2.04    Mining and Drilling ...................................................................... 5
    2.05    Noise ............................................................................................. 5
    2.06    Animals - Household Pets ............................................................. 5
    2.07    Rubbish and Debris ...................................................................... 5
    2.08    Maintenance .................................................................................. 6
    2.09    Antennae ....................................................................................... 6
    2.10    Location of Permitted Antennas .................................................. 7
    2.11    Signs ............................................................................................. 7
    2.12    Tanks ............................................................................................ 7
    2.13    Temporary Structures .................................................................. 8
    2.14    Unsightly Articles; Vehicles ........................................................ 8
    2.15    Mobile Homes, Travel Trailers and Recreational Vehicles ....... 8
    2.16    Compliance with Association Restrictions .................................. 8
    2.17    Liability of Owners for Damage to Common Area, Special Common Area
           and Development Common Area ................................................. 9
    2.18    No Warranty of Enforceability .................................................... 9

ARTICLE 3 USE AND CONSTRUCTION RESTRICTIONS ............................ 10
    3.01    Design Guidelines ........................................................................ 10
    3.02    Approval for Construction ........................................................... 10
    3.03    Single-Family Residential Use ..................................................... 10
    3.04    Fences ........................................................................................... 11
    3.05    Building Materials ........................................................................ 12
    3.06    Masonry Requirements ................................................................ 12
    3.07    Minimum Square Footage ........................................................... 12
    3.08    Setback Requirements .................................................................. 13
    3.09    Address Markers .......................................................................... 13
    3.10    HVAC Location ........................................................................... 13
    3.11    Rentals .......................................................................................... 13
    3.12    Alteration or Removal of Improvements ..................................... 13
    3.13    Trash Containers .......................................................................... 13
    3.14    Drainage ....................................................................................... 14
    3.15    Construction Activities ................................................................ 14
    3.16    Construction in Place ................................................................... 14
    3.17    Unfinished Structures .................................................................. 14

i

| | | |
|---|---|---|
| 3.18 | Sidewalks | 14 |
| 3.19 | Maintenance of Lawns and Planting | 15 |
| 3.20 | Roofing | 15 |
| 3.21 | Swimming Pools, Tennis Courts and Sport Courts | 15 |
| 3.22 | Accessory Buildings | 15 |
| 3.23 | Underground Utility Lines | 16 |

**ARTICLE 4 INSURANCE AND CONDEMNATION** ........................ 17

| | | |
|---|---|---|
| 4.01 | Insurance | 17 |
| 4.02 | Restoration | 17 |
| 4.03 | Mechanic's and Materialmen's Lien | 18 |

**ARTICLE 5 MORTGAGEE PROVISIONS** ........................ 18

| | | |
|---|---|---|
| 5.01 | Notice of Action | 19 |
| 5.02 | Examination of Books | 19 |
| 5.03 | Taxes, Assessments and Charges | 19 |

**ARTICLE 6 DEVELOPMENT** ........................ 19

| | | |
|---|---|---|
| 6.01 | Addition of Land | 19 |
| 6.02 | Withdrawal of Land | 20 |

**ARTICLE 7 GENERAL PROVISIONS** ........................ 20

| | | |
|---|---|---|
| 7.01 | Duration | 20 |
| 7.02 | Amendment | 21 |
| 7.03 | Notices | 21 |
| 7.04 | Interpretation | 21 |
| 7.05 | Gender | 21 |
| 7.06 | Assignment of Declarant's Rights | 21 |
| 7.07 | Enforcement and Nonwaiver. | 22 |
| 7.08 | Construction | 22 |



# DEVELOPMENT AREA DECLARATION
## OF COVENANTS, CONDITIONS AND RESTRICTIONS
### WEST CYPRESS HILLS
### PHASE ONE, SECTION TWO

This Development Area Declaration West Cypress Hills [Phase One, Section Two] (the "**Declaration**") is made by **CYPRESS RANCH, LTD.**, a Texas limited partnership (the "**Declarant**"), and is as follows:

## RECITALS

**A.** Pursuant to Section 9.3 of that certain West Cypress Hills Master Declaration of Covenants, Conditions and Restrictions, recorded as Document No. 2004098274, Official Public Records Of Travis County, Texas, as amended by that certain First Amendment to West Cypress Hills Master Declaration Of Covenants, Conditions And Restrictions, recorded as Document No. 2004218222, Official Public Records Of Travis County, Texas and that certain Second Amendment to West Cypress Hills Master Declaration Of Covenants, Conditions And Restrictions, recorded as Document No. 2005055934 (as amended, the "**Original Master Declaration**"), Declarant previously amended and restated the Original Master Declaration in that certain West Cypress Hills Amended and Restated Master Declaration of Covenants, Conditions and Restrictions, recorded as Document No. 200622222 35, Official Public Records Of Travis County, Texas (the "**Master Declaration**").

**B.** West Cypress Hills Phase One Section Two, recorded as Document No. 200600222, Official Public Records Of Travis County, Texas (the "**Development Area**") is currently encumbered by the Master Declaration.

**C.** Section 2.02 of the Master Declaration provides that, upon recordation of a Development Area Declaration (as defined in the Master Declaration) in the Official Public Records of Travis County, Texas with respect to all or any portion of the Development Area, the Original Master Declaration shall be deemed to have been further amended and restated as set forth in such Development Area Declaration.

**D.** Declarant intends for this Declaration to serve as one of the Development Area Declarations permitted under the Master Declaration and desires that the Development Area described and identified in Recital B hereinabove will constitute one of the Development Areas which is permitted, contemplated and defined under the Master Declaration. Additionally, in accordance with Section 2.02 of the Master Declaration, Declarant desires to further amend and restate the Original Master Declaration as set forth in this Declaration. Upon recordation of this Declaration, the Original Master Declaration, as it relates to the Development Area, shall have

been amended and restated in its entirety and set forth in both the Master Declaration and this Declaration.

> A Development Area is a portion of the West Cypress Hills development which has actually been made subject to the terms and provisions of the Master Declaration and a Development Area Declaration. A Development Area may correspond to one or all of the lots reflected on a recorded plat. A Development Area Declaration includes specific restrictions which apply to the Development Area. In order to determine what restrictions apply to your lot, you must consult the terms and provisions of the Master Declaration, the terms and provisions of any notice of applicability covering your lot, and the Development Area Declaration which includes the Development Area where your lot is located.

E.      Declarant desires to create upon the Development Area a residential community and carry out a uniform plan for the improvement and development of the Development Area for the benefit of the present and all future owners thereof.

F.      Declarant desires to provide a mechanism for the preservation of the community and for the maintenance of common areas and, to that end, desires to subject the Development Area to the covenants, conditions, and restrictions set forth in this Declaration for the benefit of the Development Area, and each owner thereof, which will be in addition to the covenants, conditions, and restrictions set forth in the Master Declaration.

NOW, THEREFORE, it is hereby declared: (i) that all of the Development Area will be held, sold, conveyed, and occupied subject to the following covenants, conditions and restrictions which will run with the Development Area and will be binding upon all parties having right, title, or interest in or to the Development Area or any part thereof, their heirs, successors, and assigns and will inure to the benefit of each owner thereof; and (ii) that each contract or deed which may hereafter be executed with regard to the Development Area, or any portion thereof, will conclusively be held to have been executed, delivered, and accepted subject to the following covenants, conditions and restrictions, regardless of whether or not the same are set out in full or by reference in said contract or deed; and (iii) that this Declaration will supplement and be in addition to the covenants, conditions, and restrictions of the Master Declaration.

## ARTICLE 1
## DEFINITIONS

1.01    **Defined Terms.** Unless the context specifies or requires otherwise, the following words and phrases when used in this Declaration will have the meanings hereinafter specified:

"**Assessment**" or "**Assessments**" means all assessment(s) imposed by the Association under the Master Declaration.

2

"**Association**" means the WCH Master Community, Inc., a Texas non-profit corporation.

"**Association Restrictions**" means the Master Declaration, this Declaration, any rules adopted by the West Cypress Hills Reviewer pursuant to *Section 6.05(b)* of the Master Declaration, any rules or regulations adopted by the Board pursuant to *Section 3.04(a)* of the Master Declaration, and the Articles and Bylaws of the Association.

"**Board**" means the Board of Directors of the Association.

"**Bylaws**" means the bylaws of the Association, as amended from time to time.

"**Certificate**" means the Certificate of Formation of the Association, as the same may be amended from time to time.

"**Declarant**" means **CYPRESS RANCH, LTD.**, a Texas limited partnership, its successors or assigns; provided that any assignment(s) of the rights of **CYPRESS RANCH, LTD.**, as Declarant, must be expressly set forth in writing and recorded in the Official Public Records of Travis County, Texas.

> The "Declarant" is the party who causes the Development Area to be developed for actual residential use. The Declarant enjoys special privileges to help protect its investment in the Development Area. These special rights are described in this Declaration. Many of these rights do not terminate until Declarant either: (i) has sold all Lots which are included in the Development Area; or (ii) voluntarily terminates these rights by a written instrument recorded in the Official Public Records of Travis County, Texas.

"**Design Guidelines**" means the standards for design, construction, landscaping, and exterior items placed on any Lot adopted pursuant to *Section 6.05(b)* of the Master Declaration, as amended.

"**Improvements**" means every structure and all appurtenances of every type, whether temporary or permanent, including but not limited to buildings, outbuildings, sheds, patios, tennis courts, swimming pools, sport courts, garages, driveways, storage buildings, sidewalks, gazebos, signs, fences, gates, screening walls, retaining walls, stairs, decks, landscaping, landscape improvements, poles, mailboxes, signs, antennae, exterior air conditioning equipment or fixtures, exterior lighting fixtures, water softener fixtures or equipment, playground equipment, and poles, pumps, wells, tanks, reservoirs, pipes, lines, meters, antennae, towers, and other facilities used in connection with water, sewer, gas, electric, telephone, regular, satellite or cable television, other utilities, or otherwise.

3

"**Lot**" or "**Lots**" means one or more of the subdivided lots within the Development Area other than Common Area, Special Common Area, and Development Common Area.

"**Master Declaration**" means that certain <u>West Cypress Hills Amended and Restated Master Declaration of Covenants, Conditions and Restrictions</u>, recorded as Document No. 2006222235 in the Official Public Records of Travis County, Texas, as amended.

"**Mortgage**" or "**Mortgages**" means any mortgage(s) or deed(s) of trust securing indebtedness and covering any portion of the Development Area given to secure the payment of a debt.

"**Mortgagee**" or "**Mortgagees**" means the holder or holders of any Mortgage(s).

"**Owner**" or "**Owners**" means the person(s), entity or entities, including Declarant, holding all or a portion of the fee simple interest in any Lot, but does not include the Mortgagee under a Mortgage prior to acquisition of its fee simple interest in such Lot pursuant to foreclosure of the lien of such Mortgage.

**1.02    General Definitions.**    Unless the context specifies or requires otherwise, capitalized terms used but not defined in this Declaration are used and defined as they are used and defined in the Master Declaration.

**ARTICLE 2**
**GENERAL RESTRICTIONS**

All of the Development Area will be owned, held, encumbered, leased, used, occupied, and enjoyed subject to the following limitations and restrictions:

**2.01    Subdividing.**    No Lot may be further divided or subdivided, nor may any easements or other interests therein less than the whole be conveyed by the Owner thereof without the prior written approval of the West Cypress Hills Reviewer; provided, however, that when Declarant is the Owner thereof, Declarant may further divide and subdivide any Lot and convey any easements or other interests less than the whole, all without the approval of the West Cypress Hills Reviewer.    Public utility and drainage easements are exempt from this provision.

**2.02    Hazardous Activities.**    No activities may be conducted on the Development Area and no Improvements constructed on the Development Area which are or might be unsafe or hazardous to any person or property.    Without limiting the generality of the foregoing, no firearms or fireworks may be discharged upon the Development Area, no open fires may be lighted or permitted except within safe and well-designed interior fireplaces, or in contained barbecue units while attended and in use for cooking purposes.    No portion of the Development

Area may be used for the takeoff, storage, or landing of aircraft (including, without limitation, helicopters) except for medical emergencies.

**2.03    Insurance Rates**. Nothing may be done or kept on the Development Area which would increase the rate of casualty or liability insurance or cause the cancellation of any such insurance on the Common Area, Development Common Area, or the improvements located thereon, without the prior written approval of the Board.

**2.04    Mining and Drilling**. No portion of the Development Area may be used for the purpose of mining, quarrying, drilling, boring, or exploring for or removing oil, gas, or other hydrocarbons, minerals of any kind, rocks, stones, sand, gravel, aggregate, or earth.

**2.05    Noise**. No exterior speakers, horns, whistles, bells or other sound devices (other than security devices used exclusively for security or public safety purposes) shall be located, used or placed on any of the Development Area such that it becomes or will become clearly audible at the property line of adjoining property owners. No noise or other nuisance shall be permitted to exist or operate upon any portion of the Development Area so as to be offensive or detrimental to any other portion of the Development Area or to its occupants.

**2.06    Animals - Household Pets**. No animals, including pigs, hogs, swine, poultry, fowl, wild animals, horses, cattle, sheep, goats, or any other type of animal not considered to be a domestic household pet within the ordinary meaning and interpretation of such words may be kept, maintained, or cared for on the Development Area. No more than four (4) domestic household pets may be kept, maintained or cared for on any Lot. No animal may be allowed to make an unreasonable amount of noise, or to become a nuisance, and no domestic pets will be allowed on the Development Area other than on the Lot of its Owner unless confined to a leash. No animal may be stabled, maintained, kept, cared for, or boarded for hire or remuneration on the Development Area, and no kennels or breeding operation will be allowed. No animal may be allowed to run at large and all animals shall be kept within enclosed areas which must be clean, sanitary and reasonably free of refuse, insects and waste at all times. Such enclosed area shall be constructed in accordance with plans approved by the West Cypress Hills Reviewer, shall be of reasonable design and construction to adequately contain such animals in accordance with the provisions hereof, and shall be screened so as not to be visible from any other portion of the Development Area or the Property.

**2.07    Rubbish and Debris**. No rubbish or debris of any kind may be placed or permitted to accumulate upon the Development Area, and no odors will be permitted to arise therefrom so as to render the Development Area any portion thereof unsanitary, unsightly, offensive, or detrimental to any other property or to its occupants. Refuse, garbage, and trash must be kept at all times in covered containers, and such containers must be kept within enclosed structures or appropriately screened from view. In the event the owner shall fail or refuse to keep, or cause to be kept on such Owner's property or any improvements thereon free from rubbish or debris of any kind, and such failure or refusal shall continue for fifteen (15) days after delivery of written notice thereof, then the Association may (but will not be obligated

5

to) enter upon such property and remove or correct the same at the expense of the Owner and such entry shall not be deemed a trespass.

2.08 **Maintenance**. The Owners of each Lot will be jointly and severally have the duty and responsibility, at their sole cost and expense, to keep their Lot and all Improvements thereon in good condition and repair and in a well-maintained, safe, clean and attractive condition at all times. The West Cypress Hills Reviewer, in its sole discretion, will determine whether a violation of the maintenance obligations set forth in this *Section 2.08* has occurred. Such maintenance includes, but is not limited to the following, which must be performed in a timely manner, as determined by the West Cypress Hills Reviewer, in its sole discretion:

(i)     Prompt removal of all litter, trash, refuse, and wastes.

(ii)    Lawn mowing.

(iii)   Tree and shrub pruning.

(iv)    Watering.

(v)     Keeping exterior lighting and mechanical facilities in working order.

(vi)    Keeping lawn and garden areas alive, free of weeds, and attractive.

(vii)   Keeping sidewalks and driveways in good repair.

(viii)  Complying with all government, health and police requirements.

(ix)    Repainting of Improvements.

(x)     Repair of exterior damage, and wear and tear to Improvements.

2.09 **Antennae**. Except as expressly provided below, no exterior radio or television antennae or aerial or satellite dish or disc, nor any solar energy system, may be erected, maintained or placed on a Lot without the prior written approval of the West Cypress Hills Reviewer; provided, however, that:

(i) an antenna designed to receive direct broadcast services, including direct-to-home satellite services, that is one meter or less in diameter; or

(ii) an antenna designed to receive video programming services via multipoint distribution services, including multichannel multipoint distribution services, instructional television fixed services, and local multipoint distribution services, that is one meter or less in diameter or diagonal measurement; or

(iii) an antenna that is designed to receive television broadcast signals;

260577-2  09/2006

(collectively, (i) through (iii) are referred to herein as the "Permitted Antennas") will be permitted subject to reasonable requirements as to location and screening as may be set forth in rules adopted by the West Cypress Hills Reviewer, consistent with applicable law, in order to minimize obtrusiveness as viewed from streets and adjacent property. Declarant and/or the Association will have the right, but not the obligation, to erect an aerial, satellite dish, or other apparatus for a master antenna, cable, or other communication system for the benefit of all or any portion of the Development.

2.10    **Location of Permitted Antennas.** A Permitted Antenna may be installed solely on the Owner's Lot and may not encroach upon any street, Common Area, Special Common Area, Development Common Area, or any other portion of the Development Area. A Permitted Antenna may be installed in a location on the Lot from which an acceptable quality signal can be obtained and where least visible from the street and the Development Area, other than the Lot. In order of preference, the locations of a Permitted Antenna which will be considered least visible by the Master Architectural Committee are as follows:

(i) Attached to the back of the principal single-family residence constructed on the Lot, with no part of the Permitted Antenna any higher than the lowest point of the roofline and screened from view of adjacent Lots and the street; then

(ii) Attached to the side of the principal single-family residence constructed on the Lot, with no part of the Permitted Antenna any higher than the lowest point of the roofline and screened from view of adjacent Lots and the street.

The West Cypress Hills Reviewer may, from time to time, modify, amend, or supplement the rules regarding installation and placement of Permitted Antennas.

> Satellite dishes one meter or less in diameter, e.g., DirecTV or Dish satellite dishes, are permitted, HOWEVER, you are required to comply with the rules regarding installation and placement. These rules and regulations may be modified by the West Cypress Hills Reviewer from time to time. Please contact the West Cypress Hills Reviewer for the current rules regarding installation and placement.

2.11    **Signs.** All signs visible from the roadway (both temporary and permanent) shall be constructed for low maintenance and shall be approved in advance by the West Cypress Hills Reviewer.

2.12    **Tanks.** The West Cypress Hills Reviewer must approve any tank used or proposed in connection with a single-family residential structure, including tanks for storage of fuel, water, oil, or LPG, and including swimming pool filter tanks. No elevated tanks of any kind may be erected, placed or permitted on any Lot without the advance written approval of

7

the West Cypress Hills Reviewer. All tanks must be screened so as not to be visible from any other portion of the Development Area.

2.13 **Temporary Structures**. No tent, shack, or other temporary building, improvement, or structure may be placed upon the Development Area without the prior written approval of the West Cypress Hills Reviewer; provided, however, that temporary structures necessary for storage of tools and equipment, and for office space for architects, builders, and foremen during actual construction may be maintained with the prior approval of Declarant, approval to include the nature, size, duration, and location of such structure.

2.14 **Unsightly Articles; Vehicles**. No article deemed to be unsightly by the West Cypress Hills Reviewer will be permitted to remain on any Lot so as to be visible from adjoining property or from public or private thoroughfares. Without limiting the generality of the foregoing, trailers, graders, trucks other than pickups, boats, tractors, campers, wagons, buses, motorcycles, motor scooters, all-terrain vehicles and garden maintenance equipment must be kept at all times except when in actual use, in enclosed structures or screened from view and no repair or maintenance work may be done on any of the foregoing, or on any automobile (other than minor emergency repairs), except in enclosed garages or other structures. Each single-family residential structure constructed within the Development Area shall have garage space sufficient to house a minimum of two (2) standard-size vehicles. Owners shall not keep more than two (2) automobiles in such manner as to be visible from any other portion of the Development Area for any period in excess of seventy-two (72) hours. No automobiles or other vehicles may be parked overnight on any roadway within the Development Areas. Service areas, storage areas, compost piles and facilities for hanging, drying or airing clothing or household fabrics must be appropriately screened from view, and no lumber, grass, plant waste, shrub or tree clippings, metals, bulk materials, scrap, refuse or trash must be kept, stored, or allowed to accumulate on any portion of the Development Area except within enclosed structures or appropriately screened from view from public or private thoroughfares and adjacent properties.

2.15 **Mobile Homes, Travel Trailers and Recreational Vehicles**. No mobile homes may be parked or placed on any Lot or used as a residence, either temporary or permanent, at any time, and no motor homes, travel trailers or recreational vehicles may be parked on or near any Lot so as to be visible from adjoining property or from public or private thoroughfares at any time.

2.16 **Compliance with Association Restrictions**. Each Owner, his or her family, occupants of a Lot, tenants, and the guests, invitees, and licensees of the preceding must comply strictly with the provisions of the Association Restrictions as the same may be amended from time to time. Failure to comply with any of the Association Restrictions will constitute a violation of the Association Restrictions may result in a fine against the Owner in accordance with Section 5.12 of the Master Declaration, and will give rise to a cause of action to recover sums due for damages or injunctive relief, or both, maintainable by the Declarant, the Manager,

8

the Board on behalf of the Association, the West Cypress Hills Reviewer, or by an aggrieved Owner. Without limiting any rights or powers of the Association, either board may (but will not be obligated to) remedy or attempt to remedy any violation of any of the provisions of Association Restrictions, and the Owner whose violation has been so remedied will be personally liable to the Association for all costs and expenses of effecting (or attempting to effect) such remedy. If such Owner fails to pay such costs and expenses upon demand by the Association, such costs and expenses (plus interest from the date of demand until paid at the maximum lawful rate, or if there is no such maximum lawful rate, at the rate of one and one-half percent (1-1/2%) per month) will be assessed against and chargeable to the Owner's Lot(s). Any such amounts assessed and chargeable against a Lot will be secured by the liens reserved in the Declaration and/or the Master Declaration for Assessments and may be collected by any means provided in the Declaration and/or the Master Declaration for the collection of Assessments, including, but not limited to, foreclosure of such liens against the Owner's Lot(s). Each such Owner will indemnify and hold harmless the Association and its officers, directors, employees and agents from any cost, loss, damage, expense, liability, claim or cause of action incurred or that may arise by reason of the Association's acts or activities under this *Section 2.16* (including any cost, loss, damage, expense, liability, claim or cause of action arising out of the Association's negligence in connection therewith), except for such cost, loss, damage, expense, liability, claim or cause of action arising by reason of the Association's gross negligence or willful misconduct. "Gross negligence" as used herein does not include simple negligence, contributory negligence or similar negligence short of actual gross negligence.

> **If you fail to comply with Association Restrictions, including this Declaration, the Master Declaration, the Design Guidelines, and any rules adopted by your association, you can be fined or a claim may be pursued against you in court.**

2.17    **Liability of Owners for Damage to Common Area, Special Common Area and Development Common Area**. No Owner may in any way alter, modify, add to or otherwise perform any work upon the Common Area, Special Common Area or Development Common Area without the prior written approval of the Board. Each Owner will be liable to the Association for any and all damages to: (i) the Common Area, Special Common Area, Development Common Area and any improvements constructed thereon; or (ii) any Improvements constructed on any Lot, the maintenance of which has been assumed by the Association or the Development Area Association, which damages were caused by the neglect, misuse or negligence of such Owner or Owner's family, or by any tenant or other occupant of such Owner's Lot, or any guest or invitee of such Owner. The full cost of all repairs of such damage will be an assessment against such Owner's Lot, secured by a lien against such Owner's Lot and collectable in the same manner as provided for in *Section 5.10* of the Master Declaration.

2.18    **No Warranty of Enforceability**. Declarant makes no warranty or representation as to the present or future validity or enforceability of any restrictive covenants, terms, or provisions contained in the Declaration. Any Owner acquiring a Lot in reliance on one or more

of such restrictive covenants, terms, or provisions will assume all risks of the validity and enforceability thereof and, by acquiring the Lot, agrees to hold Declarant harmless therefrom.

## ARTICLE 3
## USE AND CONSTRUCTION RESTRICTIONS

3.01 **Design Guidelines.** Any and all Improvements erected, placed, constructed, painted, altered, modified, or remodeled on any portion of the Development Area must strictly comply with the requirements of the Design Guidelines, unless a variance is obtained pursuant to the Master Declaration. The Design Guidelines may be supplemented, modified, amended, or restated by the West Cypress Hills Reviewer as authorized by the Master Declaration and the Design Guidelines.

> If adopted by the Declarant or the West Cypress Hills Reviewer, Design Guidelines will include additional requirements applicable to the construction of Improvements within the Development Area. Each Owner is advised to ascertain whether Design Guidelines have been adopted for their Lot.

3.02 **Approval for Construction.** No Improvements may be constructed upon any Lot without the prior written approval of the West Cypress Hills Reviewer. Anything herein to the contrary notwithstanding, in the case of single-family residences constructed on any Lot, the West Cypress Hills Reviewer, in its sole discretion, may limit its review to a review of specific floor plans, and elevations, and upon the West Cypress Hills Reviewer's approval of such specific floor plans and elevations, residences may be constructed consistent with the approved floor plans and elevations without the requirement of further review or approval by the West Cypress Hills Reviewer.

3.03 **Single-Family Residential Use.** The Lots may be used solely for private single family residential purposes and there will not be constructed or maintained thereon more than one detached single family residence. No professional, business, or commercial activity to which the general public is invited may be conducted on any Lot, except an Owner or occupant of a residence may conduct business activities within a residence so long as: (i) the existence or operation of the business activity is not apparent or detectable by sight, sound, or smell from outside the residence; (ii) the business activity conforms to all zoning requirements for the Development Area; (iii) the business activity does not involve door-to-door solicitation of residents within the Development Area; (iv) the business does not, in the Board's judgment, generate a level of vehicular or pedestrian traffic or a number of vehicles parked within the Development Area which is noticeably greater than that which is typical of residences in which no business activity is being conducted; and (v) the business activity is consistent with the residential character of the Development Area and does not constitute a nuisance, or a hazardous or offensive use, or threaten the security or safety of other residents of the Development Area as may be determined in the sole discretion of the Board. The terms "business" and "trade", as used in this provision, will be construed to have their ordinary, generally accepted meanings and will include, without limitation, any occupation, work, or

10

activity undertaken on an ongoing basis which involves the provision of goods or services to persons other than the provider's family and for which the provider receives a fee, compensation, or other form of consideration, regardless of whether: (x) such activity is engaged in full or part-time; (y) such activity is intended to or does generate a profit; or (z) a license is required.

Leasing of a residence is not considered a business or trade within the meaning of this subsection. This subsection will not apply to any activity conducted by the Declarant or an Owner engaged in the business of constructing homes for resale who acquires a Lot for the purpose of constructing a residence thereon for resale to a third party.

Until the earlier to occur of the date Declarant has recorded a written statement that all sales activity has ceased within the Development Area, or forty (40) years from the date this Declaration is recorded in the Official Public Records of Travis County, Texas:

(i)     Declarant and/or its licensees may construct and maintain upon portions of the Common Area, Special Common Area, Development Common Area, and any Lot owned by the Declarant such facilities and may conduct such activities which, in Declarant's sole opinion, may be reasonably required, convenient, or incidental to the construction or sale of single family residences constructed upon the Lots, including, but not limited to, business offices, signs, model homes, and sales offices. Declarant and/or its licensees have an easement over and across the Common Area, Special Common Area, Development Common Area for access and use of such facilities at no charge; and

(ii)     Declarant and/or its licensees will have an access easement over and across the Common Area, Special Common Area, Development Common Area for the purpose of making, constructing and installing improvements to the Common Area, Special Common Area, Development Common Area.

3.04    **Fences.** The construction of fences shall be subject to the prior written consent of the West Cypress Hills Reviewer. The West Cypress Hills Reviewer may, in its discretion, prohibit the construction of any proposed fence, or specify the materials of which any proposed fence must be constructed, or require that any proposed fence be partially screened by vegetation. No fence shall be permitted within any yard abutting a street which lies between the street and the face of the house. Such fences shall be a minimum of four feet (4') and a maximum or six and one-half feet (6.5') in height and shall be constructed using masonry or wrought iron or an equivalent maintenance-free material. Wood, common cement or cinder block and chain link are specifically prohibited. Wood fences are allowed for side yard lines. The design, materials and specifications of such fencing shall be approved by the West Cypress Hills Reviewer. Declarant shall include in its fence design or cause to be included, accent landscaping in the public right-of-way to compliment all rear lot line fencing.

Fence maintenance shall be the responsibility of the Owner and all damage shall be repaired within thirty (30) days of written notification by the Association. It shall be a violation

260577-2 11/09/2006                                         WEST CYPRESS HILLS
DEVELOPMENT AREA DECLARATION – PHASE ONE SECTION TWO

of this Declaration to maintain a fence in such a manner as to allow (1) any portion of a fence to lean so that the fence's axis is more than five degrees out of perpendicular alignment with its base, (2) missing, loose, or damaged stone or wood rails in the fence and (3) symbols, writings, and other graffiti on the fence.

3.05 **Building Materials.** All building materials must be approved in advance by the West Cypress Hills Reviewer, and only new building materials (except for used brick) may be used for constructing any Improvements. All projections from a dwelling or other structure, including but not limited to chimney flues, vents, gutters, downspouts, utility boxes, porches, railings and exterior stairways must, unless otherwise approved by the West Cypress Hills Reviewer, match the color of the surface from which they project. No highly reflective finishes (other than glass, which may not be mirrored) may be used on exterior surfaces (other than surfaces of hardware fixtures), including, without limitation, the exterior surfaces of any Improvements.

3.06 **Masonry Requirements.** Residences, whether located on interior or corner lots, shall have the following minimum of stone or masonry construction on their exterior walls:

(a) for residences constructed on Lots with a width of sixty feet (60') or less, the front and the side elevation of the first floor and the front elevation of the second floor shall be hundred percent (100%) stone or masonry construction, except over roofed area, and a minimum eight foot (8') return on each side of the second floor; and

(b) for residences constructed Lots with a width which is greater than sixty feet (60'), each elevation of the first floor and the front elevation of the second floor shall be one hundred percent (100%) stone or masonry construction, except over roofed area, and a minimum eight foot (8') return on each side of the second floor. Notwithstanding the foregoing, for residences whose rear elevation faces a subdivision collector street, the exterior walls shall be comprised of one hundred percent (100%) stone or masonry construction. In computing said percentages: (i) all gables, window and door openings, and all exterior courtyard walls that do not face the street shall be excluded from the total area of the first story exterior walls; (ii) stone and masonry used on walls of attached garages may be included in the computation as stone or masonry use and (iii) masonry requirements for detached garages shall be computed separately from the residence and shall not include those first story exterior walls not wholly visible from the street(s) due to their placement behind privacy fencing approved by the West Cypress Hills Reviewer. The stone and masonry construction shall be required to extend to within three and one-half feet (3½') of the ground elevation in order that no more than three and one-half feet (3½') of the slab is exposed on sides with stone and masonry construction.

3.07 **Minimum Square Footage.** The minimum square footage for each residence, exclusive of open or screened porches, terraces, patios, decks, driveways, and garages, is:

(a)     for Lots with a width of sixty feet (60') or less:  1,800 square feet for a single-story residence and 2,100 square feet for a two-story residence;

(b)     for Lots with a width which is greater than sixty feet (60') but less than or equal to seventy feet (70'): 2,200 square feet for a single-story residence and 2,500 square feet for a two-story residence; and

(c)     for Lots with a width which is greater than seventy feet (70'): 2,500 square feet for a single-story residence and 2,900 square feet for a two-story residence.

**3.08     Setback Requirements.**  Unless the West Cypress Hills Reviewer determines otherwise, building setbacks shall be: (i) twenty-five feet (25') from front, five feet (5') from side, and twenty feet (20') from rear property lines for lots with a width which is sixty feet (60') or greater but less than or equal to seventy feet (70'); and (ii) thirty-five feet (35') from front, five feet (5') from side, and twenty-five feet (25') from rear property lines for lots with a width which is greater than seventy feet (70').  The West Cypress Hills Review may grant variances from these requirements if such variance is evidenced in writing.

**3.09     Address Markers.**  The location, design and materials used for address identification markers on each residence must be approved in advance of installation by the West Cypress Hills Reviewer.

**3.10     HVAC Location.**  No air-conditioning apparatus may be installed on the ground in front of a residence or on the roof of any residence.  No window air-conditioning apparatus or evaporative cooler may be attached to any front wall or front window of a residence or at any other location where it would be visible from any street, any other Lot or any Common Area, Special Common Area, or Development Common Area.

**3.11     Rentals.**  Nothing in this Declaration may prevent the rental of any Lot and the Improvements thereon by the Owner thereof for residential purposes; provided that all rentals must be for terms of at least six (6) months.  All leases must be in writing.  Notice of any lease, together with such additional information as may be required by the Board, will be remitted to the Association by the Owner on or before the expiration of ten (10) days after the effective date of the lease. The Owner must provide to its lessee copies of the Association Restrictions.

**3.12     Alteration or Removal of Improvements.**  Any construction, other than normal maintenance, which in any way alters the exterior appearance of any Improvement, or the removal of any Improvement may be performed only with the prior written approval of the West Cypress Hills Reviewer.

**3.13     Trash Containers.**  Trash containers and recycling bins must be stored in one of the following locations:

(i)     inside the garage of the single-family residence constructed on the Lot; or

13

(ii)     Behind the side yard fence on the Lot in such a manner that the trash container and recycling bin is not visible from any street, alley, or adjacent Lot.

The West Cypress Hills Reviewer will have the right to specify additional locations on each Owner's Lot in which trash containers or recycling bins must be stored.

**3.14    Drainage.** There may be no interference with the established drainage patterns over any of the Development Area, except by Declarant, unless adequate provision is made for proper drainage and such provision is approved by the West Cypress Hills Reviewer. When Improvements are made to a lot which alter the drainage flow, drainage swales must be provided by the Owner to insure that the building improvement does not interfere with established water movement over the lot or create an increased inundation of an adjoining property.

**3.15    Construction Activities.** This Declaration may not be construed so as to unreasonably interfere with or prevent normal construction activities during the construction of Improvements by an Owner (including Declarant) upon any Lot within the Development Area. Specifically, no such construction activities will be deemed to constitute a nuisance or a violation of this Declaration by reason of noise, dust, presence of vehicles or construction machinery, posting of signs or similar activities, provided that such construction is pursued to completion with reasonable diligence and conforms to usual construction practices in the area. In the event that construction upon any Lot does not conform to usual practices in the area as determined by the West Cypress Hills Reviewer in its sole good faith judgment, the West Cypress Hills Reviewer will have the authority to seek an injunction to stop such construction. In addition, if during the course of construction upon any Lot there is excessive accumulation of debris of any kind which would render the Lot or any portion thereof unsanitary, unsightly, offensive, or detrimental to it or any other portion of the Development Area, then the West Cypress Hills Reviewer may contract for or cause such debris to be removed, and the Owner of the Lot will be liable for all expenses incurred in connection therewith.

**3.16    Construction in Place.** All dwellings constructed within the Development Area shall be built in place on the applicable Lot. No off-site construction of prefabricated structures shall be allowed. This does not include or apply to "components" of the dwelling, such as trusses, cabinets, appliances, etc.

**3.17    Unfinished Structures.** No structure shall remain unfinished for more than one (1) year after the same has been commenced. Construction of residential Improvements shall begin no later than two (2) years after ownership of the Lot has been legally conveyed by Declarant.

**3.18    Sidewalks.** A sidewalk shall be constructed at locations as approved by Travis County. Sidewalks shall be constructed on each Lot by the Owner and the plans and specifications for all residential buildings on each Lot shall include plans and specifications for such sidewalk, and the same shall be constructed and completed prior to occupation of the

14

residential building. Sidewalks shall be constructed to connect with sidewalks on adjoining property, be four feet (4') wide and with a "broom" finish. No other sidewalks shall be placed on any Lot without the prior written approval of the West Cypress Hills Reviewer.

     3.19   **Maintenance of Lawns and Planting**. Each Owner shall keep all shrubs, trees, grass and plantings of every kind on such Owner's Lot cultivated, pruned, mowed and free of trash and other unsightly material. Not withstanding the forgoing, Common Areas shall be maintained by removing all rubbish and unsightly material, and by mowing the unpaved areas of right of way within the subdivision and areas within and immediately surrounding the amenity centers. All other Common Areas (greenbelts) are not required to be mowed; they are generally to be left in their natural state with native grasses. No fertilizers, pesticides or herbicides other than those generally available for consumer use and approved by an agency, such as the Food and Drug Administration, for the purpose intended shall be placed, used or stored on any Lot. Fertilizers must have stabilized nitrogen and be applied in such a manner as to avoid runoff. All Owners using any such materials shall strictly comply with all instructions provided with such materials and shall take proper precautions in placing, using and storing such materials so that such materials are contained at all times and do not result in the unnecessary discharge off of or onto any Lot.

     All landscape improvements visible from a street are subject to review by the West Cypress Hills Reviewer prior to installation. In any event, grass seeding or sprigging shall be prohibited in areas visible from a street. Grassed areas shall be established by grass sod installed for immediate and full coverage in areas visible from a street. Front and side yards shall be sodded and shrubbery shall be installed in front of the residence. Silt fencing shall be maintained on each Lot until grass has fully grown-in, and until the root system is completely established on the Lot. Hydromulching shall not be permitted without prior written approval from the West Cypress Hills Reviewer. Use of St. Augustine grass is strictly prohibited.

     3.20   **Roofing and Downspouts**. Roofing materials must be asphalt or composition with a rating of 25 years or greater, or any other materials approved in writing by the West Cypress Hills Reviewer. Downspouts must divert runoff from 95% of roof areas and must discharge on vegetated areas and not discharge on sidewalks or driveways.

     3.21   **Swimming Pools, Tennis Courts and Sport Courts**. No above-ground swimming pools shall be constructed within the Development Area. Any swimming pool, tennis court, or sport court, and the screening or fencing of such, shall be subject to the approval and requirements of the West Cypress Hills Reviewer. Additionally, the materials, design and construction thereof shall meet standards generally accepted by the industry and shall comply with regulations of all applicable governmental agencies, and shall meet all fence and setback criteria established by the Association Restrictions and applicable law.

     3.22   **Accessory Buildings**. Accessory buildings shall not be permitted in any yard area without the prior written approval of the West Cypress Hills Reviewer. Permitted

accessory buildings and gazebos shall complement the neighborhood and the existing residence on the lot. Exterior materials of accessory buildings such as windows, roof, paint, stain and siding, must be the same type and quality as those of the existing residence on the lot Vinyl, polymer, metal, and aluminum will not be allowed. Accessory buildings or gazebos constructed of exotic materials, that are dissimilar to residential construction in the neighborhood will be evaluated on a case-by-case basis, but will generally not be approved.

Owners shall only be permitted, with prior written approval of the West Cypress Hills Reviewer, to erect one (1) accessory building or gazebo on the lot. All local building codes, including those regarding impervious cover, must be observed. Accessory buildings must be located in the back yard of the residence. However, no two buildings on adjoining properties shall be placed adjacent to each other or side by side. In other words, there shall not be more than one accessory building between any two residences. Accessory buildings must be screened from view so as to not be visible from any street adjoining the front and side property lines of the lot. Gazebos must be located behind the residence and must not be visible from the street adjoining the front property line of the lot. The height of an accessory building, measured from the average grade of the lot at the base of the building to highest portion of the building must be less than or equal to six feet, zero inches (6'-0").The height of a gazebo, measured from the average grade of the lot at the base of the gazebo to highest portion of the gazebo must be less than or equal to ten feet, zero inches (10'-0").The surface area (footprint of the base, pad or foundation) of the accessory building or gazebo must be less than or equal to eighty (80) square feet.

Approved accessory buildings or gazebos shall be built in a workman like manner, completed within three (3) months of the date of approval, and in accordance with the approved plans and specifications. They must be maintained in a good condition.

3.23    **Underground Utility Lines**. No utility lines including, but not limited to, wires or other devices for the communication or transmission of telephone or electric current or power, cable television, or any other type of line or wire shall be erected, placed or maintained anywhere in or upon any portion of the Development Area unless the same shall be contained in conduit or cables installed and maintained underground or concealed in, under or on buildings or other Improvements approved in writing by the West Cypress Hills Reviewer; provided, however, that no provision hereof shall be deemed to forbid the erection of temporary power or telephone structures incident to the construction of buildings or other Improvements which have been previously approved in writing by the West Cypress Hills Reviewer; and further provided that this provision shall not apply to utilities installed along the perimeters of the Development Area. The installation method, including, but not limited to, location, type of installation, equipment, trenching method and other aspects of installation, for both temporary and permanent utilities shall be subject to review and approval by the West Cypress Hills Reviewer.

2605577-2 11/09/2006

3.24 **Erosion Control / Water Quality Measures**. Each Owner shall comply with the terms of the applicable "Storm Water Pollution Prevention Plan" issued prior to construction on such Owner's Lot. Additionally, the Board shall have the power to establish reasonable policies seeking to enhance erosion control and water quality in the Development Area. Such policies may extend to the Owner and the Owner's agents or contractors. The Board shall have the power to impose reasonable fines to deter non-compliance with these policies, and to reimburse the Association for its actual costs in repairing the non-compliance so long as the Owner has been provided with the actual notice of the policies after adoption by the Board.

3.25 **Propane Gas.** Declarant has agreed to install propane gas service to each Lot within the Development Area on the condition that a gas powered furnace and gas water heater will be installed in the homes constructed on the Lots. Each Owner covenants and agrees that it will install or cause to be installed a propane gas powered furnace and a gas water heater in such Owner's home. If any Owner fails to install or cause to be installed such propane gas appliances in the home, or if any Owner chooses not to use such propane gas appliances, then such Owner shall pay to Declarant within thirty (30) days of written demand a non-utilization charge to be determined by Declarant (initially set at $950.00)

## ARTICLE 4
## INSURANCE AND CONDEMNATION

4.01 **Insurance.** Each Owner will be required to maintain insurance on the Improvements located upon such Owner's Lot, providing fire and extended coverage and all other coverage in the kinds and amounts commonly required by private institutional mortgage investors for Improvements similar in construction, location and use. Such insurance policies will be for the full insurable value of the Improvements constructed upon each Lot, will contain extended coverage and replacement costs endorsements, if reasonably available, and may also contain vandalism and malicious mischief coverage, special form endorsement, a stipulated amount clause and a determinable cash adjustment clause. The Association will not be required to maintain insurance on the Improvements constructed upon any Lot. The Association may, however, obtain such insurance as it may deem necessary, including but not limited to such policies of liability and property damage insurance as the Board in its discretion may deem necessary. Insurance premiums for such policies will be a common expense to be included in the assessments levied by the Association, as the case may be. The acquisition of insurance by the Association will be without prejudice to the right and obligation of any Owner to obtain additional individual insurance.

4.02 **Restoration.** In the event of any fire or other casualty, the Owner will promptly repair, restore and replace any damaged or destroyed structures to their same exterior condition existing prior to the damage or destruction thereof. Such repair, restoration or replacement will be commenced and completed in a good and workmanlike manner using exterior materials identical to those originally used in the structures damaged or destroyed. To the extent that the Owner fails to commence such repair, restoration or replacement of substantial or total damage

or destruction within thirty (30) days after the occurrence of such damage or destruction, and thereafter prosecute same to completion, or if the Owner does not clean up any debris resulting from any damage within thirty (30) days after the occurrence of such damage, the Association may commence, complete or effect such repair, restoration, replacement or clean-up, and such Owner will be personally liable to the Association for the cost of such work; provided, however, that if the Owner is prohibited or delayed by law, regulation or administrative or public body or tribunal from commencing such repair, restoration, replacement or clean-up, the rights of the Association under this sentence will not arise until the expiration of thirty (30) days after such prohibition or delay is removed. If the Owner fails to pay such cost upon demand by the Association, the cost thereof (plus interest from the date of demand until paid at the maximum lawful rate, or if there is no such maximum lawful rate, than at the rate of one and one-half percent (1-1/2%) per month) will be assessed against and chargeable to the Owner's Lot(s). Any such amounts assessed and chargeable against a Lot will be secured by the liens reserved in the Master Declaration or this Declaration for Assessments and may be collected by any means provided in the Master Declaration and/or Declaration for the collection of Assessments, including, but not limited to, foreclosure of such liens against the Owner's Lot(s). **EACH SUCH OWNER WILL INDEMNIFY AND HOLD HARMLESS THE ASSOCIATION AND ITS OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS FROM ANY COST, LOSS, DAMAGE, EXPENSE, LIABILITY, CLAIM OR CAUSE OF ACTION INCURRED OR THAT MAY ARISE BY REASON OF THE ASSOCIATION'S ACTS OR ACTIVITIES UNDER THIS *SECTION 4.02*, EXCEPT FOR SUCH COST, LOSS, DAMAGE, EXPENSE, LIABILITY, CLAIM OR COST OF ACTION ARISING BY REASON OF THE ASSOCIATION'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. "GROSS NEGLIGENCE" AS USED HEREIN DOES NOT INCLUDE SIMPLE NEGLIGENCE, CONTRIBUTORY NEGLIGENCE OR SIMILAR NEGLIGENCE SHORT OF ACTUAL GROSS NEGLIGENCE.**

4.03 **Mechanic's and Materialmen's Lien.** Each Owner whose structure is repaired, restored, replaced or cleaned up by the Association pursuant to the rights granted under this *Article 4*, hereby grants to the Association an express mechanic's and materialmen's lien for the reasonable cost of such repair, restoration, or replacement of the damaged or destroyed Improvement to the extent that the cost of such repair, restoration or replacement exceeds any insurance proceeds allocable to such repair, restoration or replacement and delivered to the Association. Upon request by the Board and before the commencement of any reconstruction, repair, restoration or replacement, such Owner will execute all documents sufficient to effectuate such mechanic's and materialmen's lien in favor of the Association.

### ARTICLE 5
### MORTGAGEE PROVISIONS

The following provisions are for the benefit of holders, insurers and guarantors of first Mortgages on Lots within the Development Area. The provisions of this Article apply to this Declaration and the Bylaws of the Association.

260577-2 09/2006

WEST CYPRESS HILLS
DEVELOPMENT AREA DECLARATION – PHASE ONE SECTION TWO

5.01　**Notice of Action.** An institutional holder, insurer, or guarantor of a first Mortgage which provides a written request to the Association (such request to state the name and address of such holder, insurer, or guarantor and the street address of the Lot to which its Mortgage relates (thereby becoming an "Eligible Mortgage Holder"), will be entitled to timely written notice of:

(i)　Any condemnation loss or any casualty loss which affects a material portion of the Development Area or which affects any Lot on which there is an Eligible Mortgage held, insured, or guaranteed by such Eligible Mortgage Holder; or

(ii)　Any delinquency in the payment of assessments or charges owed for a Lot subject to the Mortgage of such Eligible Mortgage Holder, where such delinquency has continued for a period of sixty (60) days, or any other violation of this Declaration relating to such Lot or the Owner or occupant which is not cured within sixty (60) days; or

(iii)　Any lapse, cancellation, or material modification of any insurance policy maintained by the Association; or

(iv)　Any proposed action which would require the consent of a specified percentage of Eligible Mortgage Holders.

5.02　**Examination of Books.** The Association shall permit Mortgagees to examine the books and records of the Association during normal business hours.

5.03　**Taxes, Assessments and Charges.** All taxes, assessments and charges that may become liens prior to first lien mortgages under applicable law shall relate only to the individual Lots and not to any other portion of the Development Area.

## ARTICLE 6
## DEVELOPMENT

6.01　**Addition of Land.** Declarant may, at any time and from time to time, add additional portions of the Property which are owned by Declarant to the Development Area and, upon the filing of a notice as hereinafter described, such portions of the Property will be considered part of the Development Area for purposes of this Declaration, and such portions of the Property will be subject to the terms, covenants, conditions, restrictions and obligations set forth in this Declaration, and the rights, privileges, duties and liabilities of the persons subject to this Declaration will be the same with respect to such added land as with respect to the land originally covered by this Declaration. To add land to the Development Area, Declarant will be required only to record in the Official Public Records of Travis County, Texas, a notice of addition of land (which notice may be contained within any notice of applicability filed pursuant to *Section 10.05* of the Master Declaration) containing the following provisions:

19

(A)    A reference to this Declaration, which will include the recordation information thereof;

(B)    A statement that such land will be considered Development Area for purposes of this Declaration, and that all of the terms, covenants, conditions, restrictions and obligations of this Declaration will apply to the added land; and

(C)    A legal description of the added land.

6.02    **Withdrawal of Land.** Declarant may, at any time and from time to time, reduce or withdraw land from the Development Area and remove and exclude from the burden of this Declaration: (i) any portion of the Development Area which has not been included in a plat; (ii) any portion of the Development Area included in a plat if Declarant owns all Lots described in such plat; and (iii) any portion of the Development Area included in a plat even if Declarant does not own all Lot(s) described in such plat, provided that Declarant obtains the written consent of all other Owners of Lot(s) described in such plat. Upon any such withdrawal and renewal this Declaration and the covenants, conditions, restrictions and obligations set forth herein will no longer apply to the portion of the Development Area withdrawn. To withdraw lands from the Development Area hereunder, Declarant will be required only to record in the Official Public Records of Travis County, Texas, a notice of withdrawal of land containing the following provisions:

(A)    A reference to this Declaration, which will include the recordation information thereof;

(B)    A statement that the provisions of this Declaration will no longer apply to the withdrawn land; and

(C)    A legal description of the withdrawn land.

## ARTICLE 7
## GENERAL PROVISIONS

7.01    **Duration.** This Declaration and the covenants, conditions, restrictions, easements, charges, and liens set out herein will run with and bind the land, and will inure to the benefit of and be enforceable by the Association and every Owner, including Declarant, and their respective legal representatives, heirs, successors, and assigns, for a term beginning on the date this Declaration is recorded in the Official Public Records of Travis County, Texas, and continuing through and including January 1, 2055, after which time this Declaration will be automatically extended for successive periods of ten (10) years unless a change (the word "change" meaning a termination, or change of term or renewal term) is approved by in a resolution adopted by members of the Association, entitled to cast at least seventy percent (70%) of the total number of votes of the Association, voting in person or by proxy at a meeting duly called for such purpose, written notice of which will be given to all Members at least thirty

(30) days in advance and will set forth the purpose of such meeting; provided, however, that such change will be effective only upon the recording of a certified copy of such resolution in the Official Public Records of Travis County, Texas. Notwithstanding any provision in this *Section 6.01* to the contrary, if any provision of this Declaration would be unlawful, void, or voidable by reason of any Texas law restricting the period of time that covenants on land may be enforced, such provision will expire (twenty one) 21 years after the death of the last survivor of the now living descendants of Elizabeth II, Queen of England.

7.02 **Amendment**. This Declaration may be amended or terminated by the recording in the Official Public Records of Travis County, Texas, of an instrument setting forth the amendment executed and acknowledged by (i) the Declarant, acting alone; or (ii) Declarant and at least seventy percent (70%) of the Owners of Lots within the Development Area with each Lot being allocated one (1) vote.

7.03 **Notices**. Any notice permitted or required to be given by this Declaration must be in writing and may be delivered either personally or by mail. If delivery is made by mail, it will be deemed to have been delivered on the third (3rd) day (other than a Saturday, Sunday, or legal holiday) after a copy of the same has been deposited in the United States mail, postage prepaid, addressed to the person at the address given by such person in writing to the Secretary of the Association for the purpose of service of notices, or to the residence located on the Lot owned by such person if no address has been given to the Secretary of the Association. Such address may be changed from time to time by notice in writing given by such person to the Secretary of the Association.

7.04 **Interpretation**. The provision of this Declaration will be liberally construed to effectuate the purpose of creating a uniform plan for the development and operation of the Development Area, provided, however, that the provisions of this Declaration will not be held to impose any restriction, condition or covenant whatsoever on any land owned by Declarant other than the Development Area. This Declaration will be construed and governed under the laws of the State of Texas.

7.05 **Gender**. Whenever the context so requires, all words herein in the male gender will be deemed to include the female or neuter gender, all singular words will include the plural, and all plural words will include the singular.

7.06 **Assignment of Declarant's Rights**. Notwithstanding any provision in this Declaration to the contrary, Declarant may, by written instrument, assign, in whole or in part, any of its privileges, exemptions, rights, and duties under this Declaration to any person or entity and may permit the participation, in whole, in part, exclusively, or non-exclusively, by any other person or entity in any of its privileges, exemptions, rights, and duties hereunder.



7.07 <u>Enforcement and Nonwaiver</u>.

(a) Except as otherwise provided herein, any Owner of a Lot, at such Owner's own expense, Declarant and the Association will have the right to enforce all of the provisions of this Declaration. The Association may initiate, defend or intervene in any action brought to enforce any provision of this Declaration. Such right of enforcement will include both damages for and injunctive relief against the breach of any provision hereof.

(b) Every act or omission whereby any provision of the Association Restrictions is violated, in whole or in part, is hereby declared to be a nuisance and may be enjoined or abated by any Owner of a Lot (at such Owner's own expense), Declarant or the Association.

(c) Any violation of any federal, state, or local law, ordinance, or regulation pertaining to the ownership, occupancy, or use of any portion of the Development Area is hereby declared to be a violation of this Declaration and subject to all of the enforcement procedures set forth herein.

(d) The failure to enforce any provision of the Association Restrictions at any time will not constitute a waiver of the right thereafter to enforce any such provision or any other provision of the Association Restrictions.

7.08 <u>Construction</u>. The provisions of this Declaration will be deemed independent and severable, and the invalidity or partial invalidity of any provision or portion hereof will not affect the validity or enforceability of any other provision. Unless the context requires a contrary construction, the singular will include the plural and the plural the singular. All captions and titles used in this Declaration are intended solely for convenience of reference and will not enlarge, limit, or otherwise affect that which is set forth in any of the paragraphs, sections, or articles hereof.

*[SIGNATURE PAGE FOLLOWS]*



260577-2 11/09/2006

22

Page 113

EXECUTED to be effective the 16 day of NOVEMBER, 2006.

CYPRESS RANCH, LTD., a Texas limited partnership

By: Cypress Ranch Development, Inc., a Texas corporation, General Partner



By: _____

Printed Name: ALAN TOPPER

Title: PRESIDENT

THE STATE OF TEXAS     §
COUNTY OF TRAVIS     §

This instrument was acknowledged before me on the 16 day of NOVEMBER, 2006, by ALAN TOPPER, PRESIDENT of Cypress Ranch Development, Inc., a Texas corporation, General Partner of Cypress Ranch, Ltd., a Texas limited partnership, on behalf of said corporation and limited partnership.

(Seal)

LISA STEPHENS
Notary Public, State of Texas
My Commission Expires
April 01, 2009

_____
Notary Public Signature

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

2006 Nov 17 08:31 AM 2006222238
BENAVIDESV $116.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

**Recorders Memorandum**-At the time of recordation this instrument was found to be inadequate for the best reproduction, because of illegibility, carbon or photocopy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

260577-2 11/09/2006

23

WEST CYPRESS HILLS
DEVELOPMENT AREA DECLARATION – PHASE ONE SECTION TWO



AMEND  2007167592

5 PGS



**AFTER RECORDING RETURN TO:**
ROBERT D. BURTON
ARMBRUST & BROWN, L.L.P.
100 CONGRESS AVE., SUITE 1300
AUSTIN, TEXAS 78701

# WEST CYPRESS HILLS

## FIRST AMENDMENT
## TO DEVELOPMENT AREA DECLARATION
## PHASE ONE, SECTION TWO

<u>Declarant</u>     CYPRESS RANCH, LTD., a Texas limited partnership

Cross reference to <u>West Cypress Hills Development Area Declaration Phase One, Section Two</u> recorded as Document No. 2006222238, Official Public Records of Travis County, Texas.

306001-2 08/27/2007

# FIRST AMENDMENT TO DEVELOPMENT AREA DECLARATION
# WEST CYPRESS HILLS, PHASE ONE, SECTION TWO

This First Amendment to Development Area Declaration West Cypress Hills, Phase One, Section Two (this "**First Amendment**") is made by **CYPRESS RANCH, LTD.**, a Texas limited partnership ("**Declarant**"), and is as follows:

## RECITALS:

**A.** Declarant previously executed and recorded that certain West Cypress Hills Development Area Declaration Phase One, Section Two recorded as Document No. 2006222238, Official Public Records of Travis County, Texas (the "Declaration").

**B.** Pursuant to Section 7.02 of the Declaration, the Declaration may be amended by Declarant acting alone.

**C.** Declarant desires to amend the Declaration as set forth hereinbelow.

**NOW THEREFORE**, Declarant hereby amends and modifies the Declaration as follows:

1. **Masonry Requirements.** Section 3.06 of the Declaration is hereby deleted in its entirety and replaced with the following:

**3.06 Masonry Requirements.** Residences, whether located on interior or corner lots, shall have the following minimum of stone or masonry construction on their exterior walls:

(a) for Lots categorized by the Declarant as sixty feet (60') or less , the front and the side elevation of the dwelling's first floor and the front elevation of the second floor shall be hundred percent (100%) masonry construction, except over roofed area, with a minimum five foot (5') masonry return on each side of the second floor. Masonry shall include brick, stone, stucco, or any other native type of stone veneer. Concrete fiber products such as board and batten may be permitted in small areas not to exceed one hundred (100) square feet;

(b) for Lots categorized by the Declarant as seventy feet (70') or greater, each elevation of the dwelling's first floor and the front elevation of the second floor shall be one hundred percent (100%) masonry construction, except over roofed area, with a minimum eight foot (8') masonry return on each side of the second floor. Masonry shall include brick, stone, stucco, or any other native type of stone veneer. Concrete fiber products such as board and batten may be permitted in small areas not to exceed one hundred (100) square feet;

(c)     for Lots in which the rear elevation faces a subdivision collector street, the exterior walls of the dwelling shall be comprised of one hundred percent (100%) stone or masonry construction; and

(d)     exposed foundations shall be limited to eighteen inches (18") height on front elevations, and twenty-four inches (24") height for side elevations visible from the street / in front of the fence line. The height of exposed foundations is limited to forty-eight inches (48") on all other sides (behind the fence line) and rear elevations. "Split-level" plans are also required to have no more than forty-eight inches (48") of exposed foundation and should be stair-stepped, so no area of the exposed foundation exceeds forty-eight inches (48").

2.     **Maintenance of Lawns and Planting.** Section 3.19 of the Declaration is hereby deleted in its entirety and replaced with the following:

3.19     **Maintenance of Lawns and Planting.** Each Owner shall keep all shrubs, trees, grass, beds, walls, features and plantings of every kind on such Owner's Lot weeded, cultivated, pruned, mowed and free of trash, algae and other unsightly material.   Not withstanding the forgoing, Common Areas shall be maintained by removing all rubbish and unsightly material, and by mowing the unpaved areas of right of way within the subdivision and areas within and immediately surrounding the amenity centers.   All other Common Areas (greenbelts) are not required to be mowed; they are generally to be left in their natural state with native grasses. Native and adapted plant use is encouraged. Fertilization is not required. Organic and natural lawn applications are encouraged. Conservation, irrigation and planting recommendations are listed in the Design Guidelines.

All landscape improvements visible from a street are subject to review by the West Cypress Hills Reviewer prior to installation.  Installation of new lawns by grass seeding or sprigging shall be prohibited. Grassed areas shall be established by grass sod installed for immediate and full coverage in front, side & rear yards.  Shrubbery shall be installed in front of the residence.  Silt fencing shall be maintained on each Lot until grass has fully grown-in, and until the root system is completely established on the Lot.   Hydromulching shall not be permitted without prior written approval from the West Cypress Hills Reviewer. Use of St. Augustine grass is strictly prohibited.

3.     **Accessory Buildings.** Section 3.22 of the Declaration is hereby deleted in its entirety and replaced with the following:

3.22     **Accessory Buildings.** Accessory buildings shall not be permitted in any yard area without the prior written approval of the West Cypress Hills Reviewer. Permitted accessory buildings and gazebos shall complement the neighborhood

3

and the existing residence on the lot. Exterior materials of accessory buildings such as windows, roof, paint, stain and siding, must be the same type and quality as those of the existing residence on the lot. Vinyl, polymer, metal, and aluminum will not be allowed, however small vinyl / polymer storage containers not exceeding four (4') feet in height may permitted only if placed directly behind the residence so that it is not visible from the front street. Accessory buildings or gazebos constructed of exotic materials, that are dissimilar to residential construction in the neighborhood will be evaluated on a case-by-case basis, but will generally not be approved.

Owners shall only be permitted, with prior written approval of the West Cypress Hills Reviewer, to erect a maximum of two (2) accessory structures on the lot. All local building codes, including those regarding impervious cover, must be observed. Accessory buildings must be located in the back yard of the residence. However, no two buildings on adjoining properties shall be placed adjacent to each other or side by side. In other words, there shall not be more than one accessory building between any two residences. Accessory buildings must be screened from view so as to not be visible from any street adjoining the front and side property lines of the lot. Gazebos must be located behind the residence and must not be visible from the street adjoining the front property line of the lot. The height of an accessory building, measured from the average grade of the lot at the base of the building to highest portion of the building must be less than or equal to seven feet, zero inches (7'-0").The height of a gazebo, measured from the average grade of the lot at the base of the gazebo to highest portion of the gazebo must be less than or equal to ten feet, zero inches (10'-0").The surface area (footprint of the base, pad or foundation) of the accessory building or gazebo must be less than or equal to eighty (80) square feet.

Approved accessory buildings or gazebos shall be built in a workman like manner, completed within three (3) months of the date of approval, and in accordance with the approved plans and specifications. They must be maintained in a good condition.

4. **Effect of First Amendment.** Any capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Declaration. Unless expressly amended by this First Amendment, all other terms and provisions of the Declaration and each Declaration remain in full force and effect as written.

*[SIGNATURE PAGE FOLLOWS]*



Executed on this 4ᵗʰ day of _September_, 2007.

DECLARANT:

**CYPRESS RANCH, LTD.,** a Texas limited partnership

By:   Cypress Ranch Development, Inc., a Texas corporation, General Partner

By: _____

Printed Name: Alan Topfer

Title: President

THE STATE OF TEXAS      §
COUNTY OF _Travis_      §

This instrument was acknowledged before me on the 4 day of _September_, 2007, by _Alan Topfer_, _President_ of Cypress Ranch Development, Inc., a Texas corporation, General Partner of Cypress Ranch, Ltd., a Texas limited partnership, on behalf of said corporation and limited partnership.

(Seal)

_____
Notary Public Signature

**LISA STEPHENS**
Notary Public, State of Texas
My Commission Expires
April 01, 2009

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

2007 Sep 07 01:04 PM    2007167592
BENAVIDESV $32.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS



306001-2 08/27/2007

5

WEST CYPRESS HILLS
FIRST AMENDMENT TO DEVELOPMENT AREA DECLARATION – PHASE ONE SECTION TWO

<u>**AFTER RECORDING RETURN TO**</u>:

JOSHUA D. BERNSTEIN
ARMBRUST & BROWN, PLLC
100 CONGRESS AVE., SUITE 1300
AUSTIN, TEXAS 78701

# WEST CYPRESS HILLS

## SECOND AMENDMENT
## TO DEVELOPMENT AREA DECLARATION
## PHASE ONE, SECTION TWO

<u>Declarant</u>     CYPRESS RANCH, LTD., a Texas limited partnership

Cross reference to <u>West Cypress Hills Development Area Declaration Phase One, Section Two</u> recorded as Document No. 2006222238, Official Public Records of Travis County, Texas, as amended by the <u>First Amendment to West Cypress Hills Development Area Declaration Phase One, Section Two</u>, recorded as Document No. 2007167592, Official Public Records of Travis County, Texas.

{W0587895.1}

## SECOND AMENDMENT TO DEVELOPMENT AREA DECLARATION
## WEST CYPRESS HILLS, PHASE ONE, SECTION TWO

This Second Amendment to Development Area Declaration West Cypress Hills, Phase One, Section Two (this "**Amendment**") is made by **CYPRESS RANCH, LTD.**, a Texas limited partnership ("**Declarant**"), and is as follows:

## RECITALS:

A.    Declarant previously executed and recorded the West Cypress Hills Development Area Declaration Phase One, Section Two, recorded as Document No. 2006222238, Official Public Records of Travis County, Texas, as amended by the First Amendment to West Cypress Hills Development Area Declaration Phase One, Section Two, recorded as Document No. 2007167592, Official Public Records of Travis County, Texas (the "**Declaration**").

B.    Pursuant to Section 7.02 of the Declaration, the Declaration may be amended by Declarant acting alone.

C.    Declarant now desires to amend the Declaration as set forth hereinbelow.

NOW THEREFORE, Declarant hereby amends and modifies the Declaration as follows:

1.    **Propane Restrictions.**

(a)    Prior to the Effective Date of this Amendment, Section 3.25 of the Declaration (the "**Original Section 3.25**") contained certain propane gas restrictions applicable to and binding upon the Development Area.  For good and valuable consideration, Declarant hereby assigns and transfers to the Gas Company (as defined herein) all of Declarant's rights to enforce and to receive and recover all payments of the non-utilization fee required to be paid by Owners who, prior to the Effective Date of this Amendment: (i) have failed to install or failed to cause to be installed the propane gas appliances specified in the Original Section 3.25 in their home, or (ii) have chosen not to use such propane gas appliances within such home.   This Assignment shall inure to the benefit of the Gas Company, its successor and assigns and be binding upon Declarant, its successors and assigns.

(b)    With effect from the Effective Date of this Amendment, the Original Section 3.25 of the Declaration is hereby superseded and replaced with the following (but nothing herein contained shall waive any rights to enforce the provisions of the Original Section 3.25 with respect to violations of the propane gas restrictions existing under the Original Section 3.25 prior to the Effective Date of this Amendment):

(i)    General Intent.    In developing the Development Area, Declarant determined that a centralized propane distribution system would be beneficial to the

2

Development Area, and requested that Propane Cypress Ranch, LLC, a Texas limited liability company, its successors, licensees, or assigns (collectively, the "**Gas Company**"), provide propane gas service through a centralized propane gas distribution system (the "**Gas System**") constructed, owned, and operated by the Gas Company. The Gas Company determined that the request was economically feasible only if all of the Lots within the Development Area were subject to all restrictions, covenants, conditions and reservations imposed by Sections 3.25 through 3.28 of this Declaration (collectively, the "**Propane Deed Restrictions**"). Subject to the imposition of the Propane Deed Restrictions, the Gas Company committed to provide propane gas service, through the Gas System, to the Development Area. Therefore, in accordance with both the doctrines of restrictive covenants and reliance by the Gas Company, the Declarant desires to impose the Propane Deed Restrictions upon the Development Area.

(ii)     Propane Restrictions.

(A)     All structures having more than 1,000 square feet of enclosed, temperature-controlled area built within the Development Area shall be and shall remain completely plumbed for propane gas use, to be supplied exclusively by the Gas Company through the Gas System, for all of the following: (1) water heaters; and (2) furnaces and permanently attached air heating systems. In addition, all such structures shall have a gas yardline installed from the service located near the street to the house upon such Lot.

(B)     Other than containers utilized in the Development Area by or for the benefit of the Gas Company, no propane fuel storage containers exceeding ten gallons in capacity shall be located, permitted, used or installed on the Property, except for containers permanently attached to a vehicle or outdoor equipment and only if such container is used solely to fuel said vehicle or outdoor equipment.

(C)     The Association shall have no right to impose any assessments, dues, tax or use fees against the owner or operator of any part of the Gas System or against any property interests related to the Gas System.

(D)     The Gas Company is authorized to, but has no duty or obligation to, take steps it considers reasonable to remedy any violation of this Section 3.25 and the Gas Company is released from all liability for costs, damages, etc. related thereto. Additionally, each Owner shall be liable to compensate the Gas Company for reasonable charges and damages related thereto, including, without limitation, all costs of collection and enforcement, and court costs and attorney's fees.

**Propane Fuel Use Covenant and Condition.** Section 3.26 is hereby added to the Declaration and is as follows:

3.26   Propane Fuel Use Covenant and Condition.

(a)     It is a covenant and condition encumbering each Lot that all structures built on each Lot shall exclusively utilize propane gas supplied by the Gas Company through the Gas System as fuel for: (1) all water heaters installed or utilized thereon; and (2) all furnaces and permanently attached air heating systems installed or utilized thereon (the "**Propane Use Requirements**").

(b)     Each Lot is subject to and bound by the Propane Use Requirements unless and until a one-time gas line construction recoupment fee ("**Recoupment Fee**") is received by the Gas Company and accompanied with written notice identifying the payment as the Recoupment Fee for a specifically identified Lot.

(c)     Upon the occurrence of a violation of the Propane Use Requirements on a Lot, the Owner of the Lot is obligated to and shall pay to the Gas Company the applicable Recoupment Fee.  For the purposes of this Declaration, a violation of the Propane Use Requirements shall occur upon the installation or utilization on a Lot of: (1) a water heater; or (2) a furnace/permanently-attached air heating system, which does not exclusively utilize propane fuel supplied by the Gas Company through the Gas System for heating purposes.  The amount of the applicable Recoupment Fee shall be as follows:

A.     If the Recoupment Fee and requisite written notice is received by the Gas Company prior to the occurrence of a violation of the Propane Use Requirements on the Lot, the Recoupment Fee shall equal $950.

B.     If the Recoupment Fee and requisite written notice is not received by the Gas Company prior to the occurrence of a violation of the Propane Use Requirements on the Lot, the Recoupment Fee shall equal $1,250.

C.     If the Recoupment Fee and requisite written notice is not received by the Gas Company prior to the occurrence of a violation of the Propane Use Requirements on the Lot, and the Gas Company refers the unpaid Recoupment Fee obligation to a collection agency or attorney, the Recoupment Fee shall equal $1,250 plus all costs incurred by the Gas Company to collect the Recoupment Fee, including, but not limited to, all costs of collection and enforcement, and court costs and attorney's fees.  The Gas Company agrees to provide written notice regarding the current amount of such costs incurred within 5 business days of its receipt of a written request from the Lot's Owner, accompanied by a self-addressed, postage-paid envelope.

3.     **Reservation of Gas Utility Easement**.  Section 3.27 is hereby added to the Declaration and is as follows:

3.27     Reservation of Gas Utility Easement.

(a)     For and in consideration of the sum of $10, and other good and valuable consideration paid to Declarant by the Gas Company, the receipt and sufficiency of

4

which are acknowledged, Declarant hereby reserves unto the Gas Company a non-exclusive, perpetual easement and right-of-way for the operation, maintenance, replacement, repair, upgrade and removal of gas utility distribution lines, pipes, conduits, valves, fitting and meters and all desirable appurtenances thereto, including wiring, cables and line markers (collectively, the "**Facilities**") upon, under, and within the portion of the Development Area as more particularly described on Attachment 1, attached hereto and incorporated herein by reference (the "**Easement Area**").

(b)     The Gas Company shall additionally have a right of ingress and egress over the Development Area to or from the Easement Area for the purpose of installing, constructing, excavating for, laying, placing, operating, maintaining, making connections with, inspecting, repairing, replacing, modifying and removing said Facilities; the right to relocate within the limits of the Easement Area; and the right to remove from the Easement Area all trees and parts thereof, or other obstructions that endanger or may interfere with the safety, operation or efficiency of the Facilities (collectively, the "**Obstructions**"); provided, however, that except for the Obstructions, the Easement Area shall be restored to substantially its original state after any activities conducted by the Gas Company exercising the rights granted herein are completed.

(c)     The Facilities that are installed in the Easement Area shall be located below the surface of the land, except for meter loops, markers, valve covers and other reasonably necessary above-ground ancillary or appurtenant portions of the Facilities, which may be located on the surface of the land.

(d)     Declarant expressly retains and reserves unto each Owner the right to use the Easement Area for all purposes that do not unreasonably interfere with or prevent the use of the Easement Area for the purposes set forth herein.

(e)     The easement, rights, and privileges granted by this Section 3.27 are further made and accepted subject to any and all easements, covenants, rights-of-way, conditions, restrictions, encumbrances, mineral reservations, and royalty reservations, if any, relating to the above-described land to the extent and only to the extent, that the same may still be in force and effect, and either shown of record in the Office of the County Clerk of Travis County, Texas, or apparent on the ground.

(f)     TO HAVE AND TO HOLD the above-described gas utility easement and rights unto the Gas Company, its successors and assigns, until said easement shall be abandoned by written instrument filed by the Gas Company; and Declarant does hereby bind itself and Declarant's successors and assigns to warrant and forever defend all and singular the said easement and rights unto the Gas Company, its successors, licensees, and assigns, against every person whomsoever lawfully claiming the same or any part thereof.

5

(g)     In exercising the rights granted hereby, the Gas Company agrees to comply, at all times and at its sole cost and expense, with all applicable governmental laws, rules, and regulations in connection with the Gas Company's activities hereunder, including, without limitation, the construction, use, operation, maintenance, repair, and service of the Facilities hereunder.

**4.     General Provisions Concerning Propane Deed Restrictions.**  Section 3.28 is hereby added to the Declaration and is as follows:

3.28    General Provisions Concerning Propane Deed Restrictions.

(a)     The Gas Company shall have the right to enforce the Propane Deed Restrictions by any proceeding at law or in equity.  Failure to enforce any Propane Deed Restrictions shall not be deemed a waiver of the right of enforcement either with respect to the violation in question or any other violation.  All waivers must be in writing and signed by an officer of the Gas Company.

(b)     Invalidation of any one of the Propane Deed Restrictions by judgment or court order shall in no way affect any other provision, and all other provisions of the Propane Deed Restrictions shall remain in full force and effect.

(c)     The Propane Deed Restrictions are for the purpose of adding value to the Development Area and to enhance safety.  Consequently, they shall run with the real property and shall be binding on all parties having any right, title or interest in the Development Area in whole or in part, and their heirs, successors and assigns.  The Propane Deed Restrictions shall be for the benefit of the Development Area and the Gas Company.

(d)     The Propane Deed Restrictions shall be effective for a term of 30 years from the date this Declaration was recorded.  Thereafter, the Propane Deed Restrictions shall be automatically extended for successive periods of 10 years, unless amended or terminated by an instrument mutually agreed to and approved by: (1) during the Development Period, Declarant and the Gas Company; and (2) upon expiration or termination of the Development Period, the Gas Company and 95% of the Owners of record of Lots within the Development Area.  Neither any amendment nor any termination shall be effective until recorded in the appropriate real property records of Travis County, Texas, and all requisite governmental approvals, if any, have been obtained.

(e)     In the event the Gas Company deems it necessary to file suit against any party to enforce the Propane Deed Restrictions and prevails to any extent, the losing party shall reimburse to the Gas Company its expenses incurred in suit, including, but not limited to, collection fees, attorney fees, and court costs.

6

(f)     Notice to the Gas Company shall be effective 2 days after the day it is deposited into the United States Postal Service if sent by postage prepaid, certified mail, return receipt requested, to both Susan J. Savage, attorney-at-law, Hurst Savage & Vanderburg, LLP, 814 W. 10th Street, Austin, Texas 78701-2005, and to Propane Cypress Ranch, LLC, P.O. Box 93183, Austin, Texas 78709.

5.     **Indemnification.**  Declarant hereby indemnifies and holds the Gas Company harmless from any loss, cost, expense, liability or damage incurred or suffered by the Gas Company, arising out of acts or omissions of the Gas Company which occurred prior to the date of this Amendment, relating to any claim by an Owner, that the Gas Company lacked the requisite easement or other authority to install and maintain the portion of the Gas System located on such Owner's Lot.

6.     **Effect of Amendment.**  Any capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Declaration.  Unless expressly amended by this Amendment, all other terms and provisions of the Declaration remain in full force and effect as written.

*[SIGNATURE PAGE FOLLOWS]*



{W0587895.1}

7

Executed to be effective as of the date this Amendment has been recorded in the Official Public Records of Travis County, Texas.

**DECLARANT:**

**CYPRESS RANCH, LTD.,** a Texas limited partnership

By:    Cypress Ranch Development, Inc., a Texas corporation, ~~General Partner~~

By: _____

Printed Name: _____

Title: _____

THE STATE OF TEXAS      §
COUNTY OF _Travis_      §

This instrument was acknowledged before me on the ⎵16⎵ day of _August_, 2013, by _Alan Topfer_, _President_ of Cypress Ranch Development, Inc., a Texas corporation, General Partner of Cypress Ranch, Ltd., a Texas limited partnership, on behalf of said corporation and limited partnership.

(Seal)

LISA F. STEPHENS
Notary Public, State of Texas
My Commission Expires
April 01, 2017

_____
Notary Public Signature



{W0587895.1}

## CONSENT AND SUBORDINATION OF MORTGAGEE
## TO SECOND AMENDMENT TO DEVELOPMENT AREA DECLARATION
## WEST CYPRESS HILLS, PHASE ONE, SECTION TWO

Bank of America, N.A. ("**Lender**"), being the sole owner and holder of that one certain loan agreement, dated September 2, 2011, in the original principal sum of $13,000,000.00, executed by Cypress Ranch, Ltd. ("**Cypress**"), which loan agreement is secured by a deed of trust of even date therewith, from Cypress to PRLAP, Inc., Trustee for Lender, recorded under Document No. 2011155425, Official Public Records of Travis County, Texas, consents to the execution and recording of this instrument, including the terms and conditions of the grant of easement set forth herein, and Lender subordinates its lien to the rights and interests of the Gas Company, so that a foreclosure of the lien will not extinguish the rights and interests of the Gas Company set forth herein.

**MORTGAGEE:**

**BANK OF AMERICA, N.A.**

By:_____

Printed Name:_____

Title:_____

THE STATE OF _Texas_     §
COUNTY OF _Travis_     §

This instrument was acknowledged before me on this _16_ day of _August_, 2013 by _Jay Angell_, _SVP_ of Bank of America, N.A..

_____
Notary Public, State of _Texas_



MICHELLE A AGUILAR
Notary Public
STATE OF TEXAS
My Comm. Exp. 12-06-16

# ATTACHMENT 1

## [DESCRIPTION OF EASEMENT AREA]

The Easement Area shall be comprised of all that certain tract, piece or parcel of land lying and being situated in the County of Travis, State of Texas, and extending five feet (5′) along the perimeter boundary line on all sides of all Lots within the Development Area, and five feet (5′) on all sides of the Facilities as existing within the Development Area on the effective date of this Amendment.





**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

DANA DEBEAUVOIR, COUNTY CLERK
TRAVIS COUNTY, TEXAS
September 03 2013 11:06 AM
FEE: $   66.00   **2013164399**

**ELECTRONICALLY RECORDED** 2013222890

TRV     **5**     PGS



AFTER RECORDING RETURN TO:

JOSHUA D. BERNSTEIN
ARMBRUST & BROWN, PLLC
100 CONGRESS AVE., SUITE 1300
AUSTIN, TEXAS 78701

# WEST CYPRESS HILLS

## THIRD AMENDMENT
## TO DEVELOPMENT AREA DECLARATION
## PHASE ONE, SECTION TWO

**Declarant**     CYPRESS RANCH, LTD., a Texas limited partnership

Cross reference to West Cypress Hills Development Area Declaration Phase One, Section Two recorded as Document No. 2006222238, Official Public Records of Travis County, Texas, as amended by the First Amendment to West Cypress Hills Development Area Declaration Phase One, Section Two, recorded as Document No. 2007167592, Official Public Records of Travis County, Texas, and the Second Amendment to West Cypress Hills Development Area Declaration Phase One, Section Two, recorded as Document No. 2013164399, Official Public Records of Travis County, Texas.

{W0603437.2}

<u>THIRD AMENDMENT TO DEVELOPMENT AREA DECLARATION</u>
<u>WEST CYPRESS HILLS, PHASE ONE, SECTION TWO</u>

This Third Amendment to Development Area Declaration West Cypress Hills, Phase One, Section Two (this "**Amendment**") is made by **CYPRESS RANCH, LTD.**, a Texas limited partnership ("**Declarant**"), and is as follows:

<u>RECITALS</u>:

A.     Declarant previously executed and recorded the <u>West Cypress Hills Development Area Declaration Phase One, Section Two</u>, recorded as Document No. 2006222238, Official Public Records of Travis County, Texas, as amended by the <u>First Amendment to West Cypress Hills Development Area Declaration Phase One, Section Two</u>, recorded as Document No. 2007167592, Official Public Records of Travis County, Texas, and the <u>Second Amendment to West Cypress Hills Development Area Declaration Phase One, Section Two</u>, recorded as Document No. 2013164399, Official Public Records of Travis County, Texas (the "**Declaration**").

B.     Pursuant to Section 7.02 of the Declaration, the Declaration may be amended by Declarant acting alone.

C.     Declarant now desires to amend the Declaration as set forth hereinbelow.

**NOW THEREFORE**, Declarant hereby amends and modifies the Declaration as follows:

1.     <u>**Unsightly Articles; Vehicles**</u>. Section 2.14 of the Declaration is hereby amended and restated in its entirety as follows:

    **2.14**     <u>**Unsightly Articles; Vehicles**</u>. No article deemed to be unsightly by the West Cypress Hills Reviewer will be permitted to remain on any Lot so as to be visible from adjoining property or from public or private thoroughfares. Without limiting the generality of the foregoing, trailers, graders, trucks other than pickups, boats, tractors, campers, wagons, buses, motorcycles, motor scooters, all-terrain vehicles and garden maintenance equipment must be kept at all times except when in actual use, in enclosed structures or screened from view and no repair or maintenance work may be done on any of the foregoing, or on any automobile (other than minor emergency repairs), except in enclosed garages or other structures. Each single-family residential structure constructed within the Development Area shall have garage space sufficient to house a minimum of two (2) standard-size vehicles, and Owners shall store vehicles in the garage space provided; <u>provided, however</u>, that, to the extent that an Owner owns in excess of two (2) vehicles, the Owner may park up to two (2) (but in no event more than two (2)) standard-size vehicles owned by such Owner on the driveway serving the Owner's home. **Except as expressly provided in the**

2

[W0603437.2]

preceding sentence, in no event may an Owner or any other person routinely park any vehicle(s) whatsoever on any driveway within the Development Areas (with the Board being entitled, in its discretion, to determine on a case-by-case basis whether a vehicle has been parked routinely on a driveway). Further, no automobiles or other vehicles may be parked overnight on any roadway within the Development Areas. Service areas, storage areas, compost piles and facilities for hanging, drying or airing clothing or household fabrics must be appropriately screened from view, and no lumber, grass, plant waste, shrub or tree clippings, metals, bulk materials, scrap, refuse or trash must be kept, stored, or allowed to accumulate on any portion of the Development Area except within enclosed structures or appropriately screened from view from public or private thoroughfares and adjacent properties.

2.    **Compliance with Association Restrictions.** The third sentence of Section 2.16 is hereby amended to read as follows:

"Without limiting any rights or powers of the Association, the Board may (but will not be obligated to) remedy or attempt to remedy any violation of any of the provisions of Association Restrictions, and the Owner whose violation has been so remedied will be personally liable to the Association for all costs and expenses of effecting (or attempting to effect) such remedy."

3.    **Roofing and Downspouts.** Section 3.20 of the Declaration is hereby amended and restated in its entirety as follows:

3.20    **Roofing and Downspouts.** Roofing materials must be asphalt or composition with a rating of 25 years or greater, or any other materials approved in writing by the West Cypress Hills Reviewer. Ninety-five percent (95%) of roof area runoff shall discharge onto pervious ground or vegetated areas. Downspouts from gutters shall not discharge more than five percent (5%) of roof runoff directly onto sidewalks or driveways.

4.    **Effect of Amendment.** Any capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Declaration. Unless expressly amended by this Amendment, all other terms and provisions of the Declaration remain in full force and effect as written.

*[SIGNATURE PAGE FOLLOWS]*



3

Executed to be effective as of the date this Amendment has been recorded in the Official Public Records of Travis County, Texas.

**DECLARANT:**

**CYPRESS RANCH, LTD.,** a Texas limited partnership

By: Cypress Ranch Development, Inc., a Texas corporation, General Partner

By:_____

Printed Name: Alan Topfer

Title: President

THE STATE OF TEXAS     §
COUNTY OF Travis     §

This instrument was acknowledged before me on the 18 day of December, 2013, by Alan Topfer, President of Cypress Ranch Development, Inc., a Texas corporation, General Partner of Cypress Ranch, Ltd., a Texas limited partnership, on behalf of said corporation and limited partnership.

(Seal)

_____
Notary Public Signature

LISA F. STEPHENS
Notary Public, State of Texas
My Commission Expires
April 01, 2017



WD 603437.2



**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

DANA DEBEAUVOIR, COUNTY CLERK
TRAVIS COUNTY, TEXAS
December 19 2013 03:16 PM
FEE: $  42.00    2013222890

# APPENDIX
# EXHIBIT C

Vernon's Texas Statutes and Codes Annotated
Property Code (Refs & Annos)
Title 11. Restrictive Covenants (Refs & Annos)
Chapter 202. Construction and Enforcement of Restrictive Covenants

V.T.C.A., Property Code § 202.004

§ 202.004. Enforcement of Restrictive Covenants

Currentness

(a) An exercise of discretionary authority by a property owners' association or other representative designated by an owner of real property concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory.

(b) A property owners' association or other representative designated by an owner of real property may initiate, defend, or intervene in litigation or an administrative proceeding affecting the enforcement of a restrictive covenant or the protection, preservation, or operation of the property covered by the dedicatory instrument.

(c) A court may assess civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation.

**Credits**
Added by Acts 1987, 70th Leg., ch. 712, § 1, eff. June 18, 1987.

V. T. C. A., Property Code § 202.004, TX PROPERTY § 202.004
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Property Code (Refs & Annos)
    Title 11. Restrictive Covenants (Refs & Annos)
      Chapter 202. Construction and Enforcement of Restrictive Covenants

V.T.C.A., Property Code § 202.023

§ 202.023. Security Measures

Currentness

(a) This section does not apply to:

(1) a condominium as defined by Section 81.002 or 82.003; or

(2) a master mixed-use property owners' association subject to Chapter 215.

(b) Except as provided by Subsection (c), a property owners' association may not adopt or enforce a restrictive covenant that prevents a property owner from building or installing security measures, including but not limited to a security camera, motion detector, or perimeter fence.

(c) This section does not prohibit a property owners' association from:

(1) prohibiting the installation of a security camera by a property owner in a place other than the property owner's private property;

(2) regulating the type of fencing that a property owner may install;

(3) prohibiting the placement of fencing that obstructs:

(A) a license area, as defined by a written license agreement or plat;

(B) a sidewalk in the public right-of-way or otherwise installed for public or community use; or

(C) a drainage easement or drainage area;

(4) requiring a driveway gate to be set back at least 10 feet from the right-of-way if the driveway intersects with a laned roadway, as defined by Section 541.302, Transportation Code; or

(5) if provided by a restrictive covenant, prohibiting the installation of fencing in front of the front-most building line of a dwelling.

(d) Notwithstanding Subsection (c), a property owner may maintain any perimeter fencing or fencing in front of a dwelling's front-most building line installed or constructed before September 1, 2025.

(e) Notwithstanding Subsection (c)(5), a property owners' association may not prohibit a property owner from installing perimeter fencing or fencing in front of the front-most building line of a dwelling if:

(1) the property owner's residential address is exempt from public disclosure under state or federal law; or

(2) the property owner provides to the association documentation from a law enforcement agency of the property owner's need for enhanced security measures.

**Credits**

Added by Acts 2021, 87th Leg., ch. 716 (H.B. 3571), § 1, eff. June 15, 2021; Acts 2021, 87th Leg., ch. 951 (S.B. 1588), § 4, eff. Sept. 1, 2021. Amended by Acts 2025, 89th Leg., ch. 10 (S.B. 711), § 5, eff. Sept. 1, 2025.

V. T. C. A., Property Code § 202.023, TX PROPERTY § 202.023

Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX
# EXHIBIT D

11/20/2025 11:09 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-000637
Selina Hamilton

**NO. D-1-GN-25-000637**

| | | |
|---|---|---|
| **WCH MASTER COMMUNITY, INC.** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| | § | |
| **THOMAS WOLF AND EILEEN WOLF,** | § | |
| *Defendants.* | § | **98ᵀᴴ JUDICIAL DISTRICT** |

## PLAINTIFF'S AMENDED NOTICE OF APPEAL

**COMES NOW, WCH Master Community, Inc. ("*Plaintiff*")**, pursuant to Texas Rules of Appellate Procedure 25.1, who hereby desires to appeal the *Order Granting in part and Denying in part Defendants' Traditional and No-Evidence Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment*, attached hereto as Exhibit A, signed and entered on October 6, 2025. Plaintiff desires to appeal this Order to the Third Court of Appeals in Austin, Texas.

Respectfully submitted,

**CAGLE PUGH**

By: */s/ Adam Pugh*
Adam Pugh
Texas Bar No. 24044341
Marla Jones
Texas Bar No. 24046174
4301 Westbank Dr., Suite A150
Austin, Texas 78746
Telephone: (737) 261-0600
Fax: (737) 261-0637
adam.pugh@caglepugh.com
marla.jones@caglepugh.com
**ATTORNEYS FOR PLAINTIFF**
**WCH MASTER COMMUNITY, INC**

## CERTIFICATE OF SERVICE

By my signature, this is to certify that a copy of the foregoing document was served on Defendants by delivering a true and correct copy through the Court's e-filing system, on this the 20th day of November 2025, as follows:

Thomas Wolf
Eileen Wolf
21813 Agarito Lane
Spicewood, Texas 78669

*Via e-Service:* [twolf.tx@gmail.com](mailto:twolf.tx@gmail.com)

*/s/ Adam Pugh*
Adam Pugh

# EXHIBIT
# A

**Cause No. D-1-GN-25-000637**

| | | |
|---|---|---|
| **WCH MASTER COMMUNITY, INC.** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| | § | **TRAVIS COUNTY, TEXAS** |
| **v.** | § | |
| | § | |
| **THOMAS WOLF AND EILEEN WOLF** | § | |
| *Defendants.* | § | **98TH JUDICIAL DISTRICT** |

### ORDER GRANTING IN PART and DENYING IN PART DEFENDANTS' TRADITIONAL AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On September 25, 2025, the Court heard Plaintiff's Motion for Summary Judgment and Defendants' Traditional and No-Evidence Motion for Summary Judgment. Having considered the motions, the responses, the exhibits, and the case file, the Court finds that Plaintiff's motion should be DENIED and that Defendant's motion should be GRANTED IN PART and DENIED IN PART.

It is hereby ORDERED that Plaintiff's Motion for Summary Judgment is DENIED.

It is further ORDERED that Defendant's Traditional and No-Evidence Motion for Summary Judgment is GRANTED with respect to Plaintiff's claims against Defendants. Accordingly, it is hereby ORDERED that Plaintiff shall take nothing on its claims and Plaintiff's claims are DISMISSED in their entirety. It is further ORDERED that Defendant's Motion for Summary Judgment is DENIED with respect to Defendant's request for sanctions.

It is further ORDERED that each party shall bear their own court costs and attorney's fees.

It is further ORDERED that all relief requested in this matter that is not addressed herein is DENIED. This is a final, appealable order.

Signed on October 6, 2025.

_____
HONORABLE JUDGE PRESIDING

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jessica Loyola-Hernandez on behalf of Nicholas Pugh
Bar No. 24044341
jessica.loyola@caglepugh.com
Envelope ID: 108277583
Filing Code Description: Notice of Appeal
Filing Description: PLAINTIFF'S AMENDED NOTICE OF APPEAL
Status as of 11/20/2025 12:34 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Matthew Melancon | 24109544 | matt@melancon.legal | 11/20/2025 11:09:09 AM | SENT |
| Marla  Jones | | marla.jones@caglepugh.com | 11/20/2025 11:09:09 AM | SENT |
| Thomas Wolf | | twolf.tx@gmail.com | 11/20/2025 11:09:09 AM | SENT |
| Dawn Reveley | | dereveley@gmail.com | 11/20/2025 11:09:09 AM | SENT |
| Jessica Loyola | | jessica.loyola@caglepugh.com | 11/20/2025 11:09:09 AM | SENT |

# APPENDIX
# EXHIBIT E

AFTER RECORDING RETURN TO:

Robert D. Burton, Esq.
Armbrust & Brown, L.L.P.
100 Congress Ave., Suite 1300
Austin, Texas 78701



OTHER    2007167594

30 PGS



# WEST CYPRESS HILLS
# DESIGN GUIDELINES

## Adopted:

CYPRESS RANCH, LTD., a Texas limited partnership

By:    Cypress Ranch Development, Inc., a Texas
       corporation, General Partner

By: _____
Alan Topfer, President

STATE OF TEXAS            §
                          §
COUNTY OF TRAVIS  §

This instrument was acknowledged before me on the 10 day of September, 200_, by Alan Topfer, President of Cypress Ranch Development, Inc., a Texas corporation, General Partner of Cypress Ranch, Ltd., a Texas limited partnership, on behalf of said corporation and limited partnership.

[seal]
LISA STEPHENS
Notary Public, State of Texas
My Commission Expires
April 01, 2009

_____
Notary Public, State of Texas

Adopted by Cypress Ranch, Ltd., a Texas limited partnership, in accordance with *Section 6.05(b)* of **West Cypress Hills Amended and Restated Master Declaration of Master Declarations, Conditions and Restrictions,** recorded as Document No. 2006222235, Official Public Records of Travis County, Texas (the "Master Declaration"). In accordance with *Section 6.05(b)* of the Declaration, these Design Guidelines may be amended from time to time by the West Cypress Hills Reviewer.

Version 1.00

266847-2 09/04/2007

# I. INTRODUCTION

Any notice or information required to be submitted to West Cypress Hills Reviewer under these Design Guidelines hereunder will be submitted to the West Cypress Hills Reviewer at 3600 North Capital of Texas Highway, Building B, Ste. 320, Austin, Texas 78746; Phone: (512) 329-6600; Fax: (512) 329-6462.

## Background

West Cypress Hills is a master planned community located in Travis County, Texas (the "**Community**"). The Community consists of Development Areas which are subject to the terms and provisions of the <u>West Cypress Hills Amended and Restates Master Declaration of Master Declarations, Conditions and Restrictions</u>, recorded as Document No. 2006222235, Official Public Records of Travis County, Texas (the "**Master Declaration**"), and any recorded Development Area Declaration for each particular Development Area (the "**Development Area Declaration**"). The Master Declaration and each Development Area Declaration includes provisions governing the construction of improvements and standards of maintenance, use and conduct for the preservation of the Community.

## West Cypress Hills Reviewer and Review Authority

Article VI of the Master Declaration includes procedures and criteria for the construction of improvements within the West Cypress Hills Development. <u>Each Development Area Declaration provides that any and all Improvements must be erected, placed, constructed, painted, altered, modified or remodeled in strict compliance with the requirements of the Design Guidelines, and both the Master Declaration and Development Area Declaration provide that no Improvements may be constructed without the prior written approval of the West Cypress Hills Reviewer.</u>

Until the expiration of the Development and Sales Period, and unless Declarant delegates its authority in writing, the West Cypress Hills Reviewer shall consist of Declarant, Cypress Ranch, Ltd., a Texas limited partnership (the "**Declarant**") or one or more persons designated by Declarant from time to time to act on its behalf pursuant to the terms of the Master Declaration. As provided in Article XI of the Master Declaration, Declarant has a substantial interest in ensuring that Improvements within the Community maintain and enhance Declarant's reputation as a community developer and do not impair Declarant's ability to market and sell all or any portion of the Community, and as a consequence thereof, the West Cypress Hills Reviewer acts solely in Declarant's interest and shall owe no duty to any other Owner or the WCH Master Community, Inc. (the "**Association**"). Upon termination of the Development and Sale Period, or earlier if delegated in writing by the Declarant, the Association, acting through an architectural control committee (the "**ACC**") will have the powers of the West Cypress Hill Reviewer.

2

Unless alternate Design Guidelines are adopted for additional Development Areas, these Design Guidelines will apply to each Development Area made subject to the Master Declaration. These Design Guidelines will apply only to Lots within a Development Area which will be used for residential purposes. *These Design Guidelines are not intended to replace or supersede the Master Declaration, any applicable Development Area Declaration and/or final written approval of the West Cypress Hills Reviewer.*

## Governmental Requirements

Governmental ordinances and regulations are applicable to all Lots within West Cypress Hills. It is the responsibility of each Owner to obtain all necessary permits and inspections. Compliance with these Design Guidelines is not a substitute for compliance with the applicable ordinances and regulations. **Please be advised that these Design Guidelines do not list or describe each requirement which may be applicable to a Lot within West Cypress Hills.** Each Owner is advised to review all encumbrances affecting the use and improvement of their Lot prior to submitting plans to the West Cypress Hills Reviewer for approval. Furthermore, approval by the West Cypress Hills Reviewer should not be construed by the Owner that any Improvement complies with the terms and provisions of all encumbrances which may affect the Owner's Lot. Certain encumbrances may benefit parties whose interests are not addressed by the West Cypress Hills Reviewer.

The West Cypress Hills Reviewer shall bear no responsibility for ensuring plans submitted to the West Cypress Hills Reviewer comply with any applicable building codes, zoning regulation and other government requirements. It is the responsibility of the Owner to secure any required governmental approvals prior to construction on such Owner's Lot.

## Interpretation

In the event of any conflict between these Design Guidelines, the Master Declaration and any applicable Development Area Declaration, the Master Declaration, the Development Area Declaration and then the Design Guidelines shall control, in such order. Capitalized terms used in these Design Guidelines and not otherwise defined in this document shall have the same meaning as set forth in the Development Area Declaration. Any deposits will not be returned until final inspection has been completed.

## Amendments

The West Cypress Hills Reviewer may amend these Design Guidelines. All amendments shall become effective upon recordation in the Official Public Records of Travis County, Texas. Amendments shall not apply retroactively so as to require modification or removal of work already approved and completed or approved and in progress. It is the

3

responsibility of each Owner to ensure that they have the most current edition of the Design Guidelines and every amendment thereto.

# II. ARCHITECTURAL REVIEW PROCESS

## Objective

The objective of the review process is to promote aesthetic harmony within the Community by providing for compatibility of specific designs with surrounding buildings, the environment and the topography. The review process strives to maintain objectivity and sensitivity to the individual aspects of design.

## Review Process

Requests for approval of proposed construction (both new home and improvements to existing homes), landscaping, or exterior modifications must conform to the review process described in the "Plan Submittal" section of these Design Guidelines set forth below.

## Responsibility for Compliance

An applicant is responsible for ensuring that all of the applicant's representatives, including the applicant's architect, engineer, contractors, subcontractors, and their agents and employees, are aware of these Design Guidelines, the Master Declaration, each applicable Development Area Declaration, and all requirements imposed by the West Cypress Hills Reviewer as a condition of approval.

## Insurance

Builders, contractors and their subcontractors performing work with West Cypress Hills are required to carry Commercial General Liability, Comprehensive Automobile Liability and Workers Compensation insurance at the minimum coverage levels established by the Texas Board of Insurance. The West Cypress Hills Reviewer requires an Owner to procure adequate commercial liability insurance during construction naming the Association as additional insured, in an amount to be determined, from time to time by the West Cypress Hills Reviewer.

## Inspection

Upon completion of all approved work, the Owner must notify the West Cypress Hills Reviewer. The West Cypress Hills Reviewer may inspect the work at any time to verify conformance with the approved submittals.

266847-2 09/04/2007

# III.  ARCHITECTURAL AND AESTHETIC STANDARDS

## Aesthetic Appeal

The West Cypress Hills Reviewer may disapprove the construction or design of a home, modification or improvement on purely aesthetic grounds.  Any prior decisions of the West Cypress Hills Reviewer regarding matters of design or aesthetics shall not be deemed to have set a precedent if the West Cypress Hills Reviewer feels that the repetition of such actions would have any adverse effect on the community.

## Prohibited Elements

The following architectural elements are prohibited within West Cypress Hills unless expressly approved in advance and in writing by the West Cypress Hills Reviewer:

## Prohibited Materials and Colors:

- Prohibited exterior materials include but are not limited to, exposed concrete blocks, plywood, log, plastic masonite, wood siding (wood siding accents may be permitted if approved by the West Cypress Hills Reviewer) and metal siding.
- Vivid, inappropriate colors are prohibited.
- Bright, flashy materials, such as reflective glass, are not permitted.

## Minimum Square Footage

The minimum heated/air-conditioned square footage for each residence constructed for the following Lot sizes (as categorized by the Declarant):

- For Lots categorized by the Declarant as sixty feet (60') or less: 1,800 sq. feet for single-story home; 2,100 sq. feet for two- story

- For Lots categorized by the Declarant as greater than sixty feet (60') and less than or equal to seventy feet (70'): 2,200 sq. feet for single-story; 2,500 sq. feet for two-story

- For Lots categorized by the Declarant as greater than seventy feet (70'): 2, 500 sq. feet for single-story; 2,900 sq. feet for two-story

For the purpose of calculating total square footage, open or screened porches, terraces, patios, decks, driveways, garages, storage facilities and walkways shall be excluded.  Other detached accessory uses such as cabanas or garages are permitted, but will not count toward the minimum square footage requirement.  The calculation of square feet shall be measured from outside brick to outside brick.

266847-2 09/04/2007

WEST CYPRESS HILLS
DESIGN GUIDELINES

## Minimum Building Setback Requirements

<u>Note:</u> These setbacks are for general information only. Refer to Final Subdivision Plat and/or any applicable Development Area Declarations for specific *Lot* setback information. Setbacks are measured from property lines.

|  | Lot Width | | | |
|---|---|---|---|---|
|  | **50' – 64'** | **65' – 84'** | **85' – 99'** | **100'+** |
| **Street Side Yard** | 15 ft. | 15 ft. | 20 ft. | 25 ft. |
| **Interior Side Yard** | 5 ft. | 5 ft. | 5 ft. | 10 ft. |
| **Front Setback** | 25 ft. | 25 ft. | 35 ft. | 35 ft. |
| **Rear Setback** | 20 ft. | 20 ft. | 20 ft. | 30 ft. |

## Additional Setback

At least twenty-five percent (25%) of a Builder's dwellings on each street should be setback at least four feet (4') beyond the required setback in order to vary the streetscape.

Setback variances may be granted for unusual topographical situations, at the sole discretion of the West Cypress Hills Reviewer.

## Masonry

The West Cypress Hills Reviewer encourages the restrained use of a variety of materials, which can add textural richness to the structure. The goal is to have houses constructed with materials that are compatible with the general color and texture of the surrounding landscape.

- For Lots categorized by the Declarant as sixty feet (60') or less, the front and the side elevation of the dwelling's first floor and the front elevation of the second floor shall be hundred percent (100%) masonry construction, except over roofed area, with a minimum five foot (5') masonry return on each side of the second floor. Masonry shall include brick, stone, stucco, or any other native type of stone veneer. Concrete fiber products such as board and batten may be permitted in small areas not to exceed one hundred (100) square feet.

- For Lots categorized by the Declarant as seventy feet (70') or greater, each elevation of the dwelling's first floor and the front elevation of the second floor shall be one hundred percent (100%) masonry construction, except over roofed area, with a minimum eight foot (8') masonry return on each side of the second floor. Masonry shall include brick, stone, stucco, or any other native type of stone veneer. Concrete fiber products such as board and batten may be permitted in small areas not to exceed one hundred (100) square feet.

- For Lots in which the rear elevation faces a subdivision collector street, the exterior walls of the dwelling shall be comprised of one hundred percent (100%) stone or masonry construction.

- Exposed foundations shall be limited to eighteen inches (18") in height on front elevations, and twenty-four inches (24") in height for side elevations visible from the street / in front of the fence line. The height of exposed foundations is limited to forty-eight inches (48") on all other sides (behind the fence line) and rear elevations. "Split-level" plans are also required to have no more than forty-eight inches (48") of exposed foundation and should be stair-stepped, so no area of the exposed foundation exceeds forty-eight inches (48").

## Plan Repetition

The West Cypress Hills Reviewer may deny a plan or elevation proposed for a particular Lot if a substantially similar plan or elevation exists on a Lot in close proximity to the Lot on which the plan or elevation is proposed. The West Cypress Hills Reviewer may adopt additional requirements concerning substantially similar plans or elevations constructed in proximity to each other.

- The same dwelling plan, regardless of elevation, shall not be constructed within two dwellings adjacent on either side or the three dwellings directly opposite from the subject dwelling, to include dwellings across the side street for corner lots. (See diagram below).
- Variances may be considered on an individual basis for dramatically different elevations. A variance request form must be submitted to the committee for review/approval before plot plan submittal.

- *Lots marked X in the diagram below require a different dwelling plan, elevation and masonry color from Plan A Lot.*



## Brick Color and Masonry Stone Repetition

The West Cypress Hills Reviewer may deny a brick color or masonry stone color combination for a particular Lot if a substantially similar masonry color combination exists on a Lot in close

7

proximity to the Lot on which the brick or stone is proposed. Different stone/brick **color** combinations are required for the two *dwellings* adjacent to the subject *dwelling*. The West Cypress Hills Reviewer may adopt additional requirements concerning substantially similar stone/brick/masonry materials in proximity to each other.

## Building Materials

All building materials must be approved in advance by the West Cypress Hills Reviewer, and only new building materials may be used for constructing any Improvements. All projections from a dwelling or other structure, including but not limited to chimney flues, vents, gutters, downspouts, utility boxes, porches, railings and exterior stairways must, unless otherwise approved by the West Cypress Hills Reviewer, be similar in color to the surface from which they project. No highly reflective finishes (other than glass, which may not be mirrored) may be used on exterior surfaces (other than surfaces of hardware fixtures), including, without limitation, the exterior surfaces of any Improvements.

## Height and Views

Unless otherwise approved in advance by the West Cypress Hills Reviewer, no building or residential structure may exceed thirty-five feet (35') in height as measured from the finished floor elevation to the highest ridge, peak, or gable of a roof (exclusive of chimneys and ventilators). The West Cypress Hills Reviewer has the authority to withhold its approval of a structure's height notwithstanding the previous provisions if the West Cypress Hills Reviewer determines that the proposed height is not compatible with adjacent structures or is not responsive to existing or anticipated structure heights on lots located above or below the lot on which the proposed residence will be constructed.

**Views are neither guaranteed, preserved nor protected within the West Cypress Hills Community.**

## Roofs

The pitch, color and composition of all roof materials must be approved in writing by the West Cypress Hills Reviewer. Roof vents and other penetrations shall penetrate at the back side of the roof to be as unobtrusive as possible and must be similar in color to the principal color of the roof unless approved in advance by the West Cypress Hills Reviewer.

- Accepted Roof Pitch: Minimum pitch of 5/12, maximum pitch of 12/12. Exceptions for porches and architectural elements may be approved in advance by the West Cypress Hills Reviewer.

- Accepted Roof Materials: Architectural grade composite shingles with a rating of twenty-five (25) years or greater and neutral/earth tone in color. Concrete, clay tile, slate, or non-reflective metal with baked on neutral color finish are also

8

permitted. All material incorporated into any roof must be approved in advance by the West Cypress Hills Reviewer.

Prohibited Roof Materials & Design Elements:

- o Wood shakes, wood shingles, asbestos, corrugated metal, reflective aluminum roofs and roofs in primary colors are all prohibited.

- o Random roof penetrations, vents or skylights facing the street are prohibited.

- o White or bubble skylights are prohibited.

## Downspouts

Downspouts must divert roof runoff from ninety-five percent (95%) of roof area and must discharge on vegetated areas and not discharge on sidewalks or driveways.

## Chimneys

Chimneys must be constructed of one hundred percent (100%) masonry product (brick, stone, stucco, Hardi-plank) or a product approved by the West Cypress Hills Reviewer. Stove pipe chimneys are prohibited. Spark arrestors are required on all chimneys. Height must be in compliance with building codes.

## Garages

A minimum of two (2) full-size automobiles must be able to fit in all garages. Except as permitted in Builder sales models, garages may not be converted to or utilized as a living or workspace. The West Cypress Hills Reviewer may grant a variance to allow for conversion of a third car portion of a garage to a living or work space only if a functioning two car garage remains.

## Driveways

The design of all driveways must be approved in advance by the West Cypress Hills Reviewer. Driveways on corner lots abutting a cul-de-sac and another roadway shall access off the cul-de-sac. All driveways shall be surfaced with concrete or similar substance, with a textured finish (*i.e.*, broom or trowel finished concrete).

- Maximum width of a driveway is twenty feet (20') for a two car garage and twenty five feet (25') for a three car garage.

- Asphalt driveways and parking areas are prohibited.

9

- All driveways must be at least five (5') distance from side property line. Setback variances may be considered on a case-by-case basis in order to help encourage detached garages.

- Driveways must permit entry by standard mid-size vehicles without "bottoming out" in the transition area between the curb and property line as wells as the driveway area between the property line and the garage.

- The finish grading process must conceal exposed edges of driveways and parking areas. A maximum of twelve inches (12") vertical exposure is allowed at these surfaces. Exposed areas exceeding twelve inches (12") in height must be faced (veneered) in a masonry material compatible with the exterior surface of the unit or with the driveway (such as underpinning) or screened with landscape or masonry materials.

- The maximum driveway grade within the unit property is fourteen percent (14%). Driveway grades steeper than fourteen percent (14%) must be approved. Per Travis County standards, the maximum driveway grade at sidewalk crossing is two percent (2%).

## Sidewalks

- Sidewalks are required within the public right-of-way on certain Lots as designated on the subdivision plat.

- Sidewalks and entry walks shall be constructed of broom or trowel finish concrete as a minimum level finish. Sidewalks must be a minimum four feet (4') wide, and entry walks a minimum three feet (3') wide. Enhanced entry walk finishes may be approved in advance by the West Cypress Hills Reviewer. Asphalt is prohibited.

- If steps are necessary along the entry walk, they must occur in sets (or flights) with a minimum of two (2) steps and a maximum of five (5) steps per set. A landing of three (3') feet minimum is required between sets of steps. Maximum riser height is seven and three quarters inches (7¾").

- Cross slope may not exceed a two percent (2%) cross fall.

- All sidewalks must provide for a minimum four feet (4') landscape planting separation immediately behind the street curb. Landscaping in this area must be approved by the West Cypress Hills Reviewer. Plant/shrub height must be maintained below eighteen inches (18"). Only approved ornamental trees may be located in this separation zone.

10

- Exposed edges of sidewalks and porches must be concealed by the finish grading process or by use of landscape planters. A maximum of eighteen inch (18") vertical exposure is permitted at these surfaces. Exposed areas exceeding eighteen inches (18") in height must be faced (veneered) in a masonry material compatible with the sidewalk or exterior of the dwelling.

## Exterior Lighting

- Exterior lighting must be approved in advance by the West Cypress Hills Reviewer.

- Dwelling entries shall be adequately lit, consistent with good security practices. All security or floodlighting attached to dwelling must be screened or shielded so that the light source is not visible from neighboring units.

- No exterior light whose direct source is visible from a street or neighboring property or which produces excessive glare to pedestrian or vehicular traffic will be allowed.

- Holiday lighting is allowed for a period not to exceed six (6) weeks.

- Tennis Court or sport court lighting is not permitted (except in Common Areas).

- Primary color lenses, bulbs, pole mounted floodlights and high intensity lights are prohibited.

## Accessory Structures

Any accessory structure and its location and design including, but not limited to, storage buildings, gazebo and trellis structures, flagpoles, basketball goals, playscapes, sport courts, trampolines, decks, antennae/satellite dishes and pools must be approved in advance by the West Cypress Hills Reviewer. **Accessory structures are not permitted in front yards. Except as otherwise provided herein, these structures must be screened from view so as to not be visible from any street adjoining the front or side property lines of the Lot.**

## Accessory Buildings / Storage Structures

- All materials used on storage building/structure must be residential type construction with roofing, paint color, and other construction materials and details that match the dwelling.

- Maximum height of structure/shed from ground to peak is seven feet (7').

- Maximum size of structure pad/footprint is eighty (80) square feet.

11

- Metal, plastic, rubber and "barn-like" storage structures are prohibited. However, small vinyl/polymer storage bins may be permitted if: (i) less than four feet (4') in height; AND (ii) placed <u>directly</u> behind the residence so that it is not visible from the front street.

- No two (2) structures on a single property or on adjoining properties may be placed adjacent to each other. No more than two (2) structures (including sheds, outbuildings or gazebos) are permitted on a single property.

- Structures must be screened from front street view. When possible, a structure shall be located behind the residential dwelling.

Gazebos & Arbors

- Must be constructed of wood or stone and must compliment the materials of the home.

- Maximum height from structure foundation to peak may not exceed ten feet (10').

Flagpoles

- Must be six feet (6') or less in length.

- May only be mounted on house/garage or ground if a flag is displayed.

- Only one flag (United States, Texas or decorative) may be flown from the pole. Proper flag etiquette must be observed when flying the national or state flag.

- Evening display of a permitted flag may be lit from the base of pole with no more than 150 watts of light, which may not adversely affect or impact adjoining properties.

- All flags/poles must be properly maintained at all times.

- Attaching flagpoles to fences, trees or shrubbery is not permitted.

**<u>For permanent or temporary in ground flagpoles greater than six feet (6') in height, prior written approval from the West Cypress Hills Reviewer must be obtained upon submission of a proposed plan to the West Cypress Hills Review prior to installation.</u>**

Basketball Goals

**Permanent goals** are allowed in the front yard provided:

266847-2 09/04/2007

- The pole (metal, painted black, white, or gray) must be permanently mounted into the ground to the side of the driveway (perpendicular to the street) in a full upright position a minimum ten feet (10') back from the street curb.

- The pole, backboard (clear transparent) and net must be maintained in good condition at all times.

- Poles may not be installed in front of the garage or facing into the street.

**Portable goals** are allowed in the front yard provided:

- Any portable goal is stored from view when not in use.

- The portable goal is maintained in good condition at all times.

- When in use, the portable goal must be placed to the side of the driveway ten feet (10') back from the curb.

- Goals may not be rolled into the street or any other public right-of-way.

## Playscapes/Sport Courts

- Playscapes and Sport Courts may not be lighted.

- Playscapes and Sport Courts are not allowed in the front yard.

- Playscapes must be constructed of redwood or treated lumber or a material which resists rotting and deterioration.

- Playscape canopy must be solid color, preferably green or earth tone.

- Setbacks are no less than five (5') feet from each property line and structure shall be screened to minimize visual and audio impact.

## Trampolines

- Must not be placed closer than ten (10') feet to any property line and must be screened from view of any street adjoining the dwelling.

- Trampolines are not allowed in the front yard.

## Arbors/Patio Covers/ Outdoor Living

- Arbors and patio covers must be constructed of cedar, wood or cement fiber product and color should match or compliment the home color palette.

13

- Patio covers must have shingles to match the home.

- Outdoor kitchens and fireplaces must be constructed of materials that are complimentary to the main structure.

## Backyard Decks

- Must be constructed of cedar wood or cement fiber product.

- Deck color should match or compliment the home color palette. Earth tones are encouraged; primary colors are prohibited

- Storage areas under decks must be screened using wood lattice or pickets.

- Second story decks will be evaluated on case by case basis.

- No deck should be closer than ten feet (10') to the rear property line

## Antennae/Satellite Dishes

- Permitted Antennae include satellite antennae one meter or less in diameter or television broadcast antennae. Antennae must be screened from public view.

  **In order of preference, the locations of a Permitted Antenna which will be considered least visible by the West Cypress Hills Reviewer are as follows:**

  (a) Attached to the back of the dwelling, with no part of the Permitted Antenna any higher than the lowest point of the roofline and screened from view of adjacent Lots and the street; then

  (b) Attached to the side of the dwelling, with no part of the Permitted Antenna any higher than the lowest point of the roofline and screened from view of adjacent Lots and the street.

- Declarant and/or the Association will have the right, but not the obligation, to erect an aerial, satellite dish, or other apparatus for a master antenna, cable, or other communication system for the benefit of all or any portion of the Development.

## Pools and Spas

- All pool and/or spa construction, including equipment, drains, fences and gates, must be in conformance with standards imposed by the local governmental agency and approved by the West Cypress Hills Reviewer. (**Approval does not waive County or other permit requirements. Owner is responsible for**

obtaining such building permits prior to construction of pool/spas). Pools may not drain into or across Common Area, open space areas or adjacent Lots without written approval from the Association.

- **Above ground pools are prohibited.**

## Address Markers and Mailboxes

Address markers must be readily visible from the street. The location, design and materials used for address identification markers on each residence must be approved in advance of installation by the West Cypress Hills Reviewer.

## Landscape Guidelines

### General Requirements

- Grassed areas of front, side, and rear yards of the dwelling shall be established by grass sod installed for immediate and full coverage within thirty (30) days after building completion to minimize soil erosion.
    - Silt fencing shall be maintained on each Lot until sod is installed and the root system is completely established on the Lot.
    - St. Augustine is strictly prohibited.
- Landscaping shall consist of native and adapted plants, trees, shrubs, vines, ground covers, seasonal flowers or sodded grasses which are approved by the West Cypress Hills Reviewer. See the <u>Native and Adapted Landscape Plants, an earth wise guide for Central Texas</u>, and the **"Approved Plant List"** included in the Homeowners Manual by permission from growgreen.org. Additional copies may be provided upon request to the Association Manager.
    - Invasive Plants are strictly prohibited. *See* "Invasive Plants to Avoid" in the Approved Plant List.
- After installation, landscaping (shrubs, trees, grass, beds, walls, features and plantings of every kind) shall be properly maintained (weeded, cultivated, pruned, mowed and free of trash, algae and other unsightly material) at all times.
- The use of rock or crushed rock as an overall ground cover shall not be permitted. Use of rock as an accent or to assist with drainage is allowed, subject to approval by the West Cypress Hills Reviewer.
- Landscape plans must include vegetative screening for above ground utility connections visible from the street or adjacent properties.
- Black plastic edging is discouraged.
- Sculptures and fountains are subject to approval by the West Cypress Hills Reviewer.
- Gardens are subject to approval by the West Cypress Hills Reviewer. Garden footprint must not exceed ten (10') x ten (10') and must be placed out of view from the front street. Gardens must be maintained to grow not higher than six

15

(6') feet in height and be maintained in a professional manner not to infringe on the aesthetic view of adjoining properties.

Irrigation

Landscape irrigation systems are not mandatory.

*All irrigation systems installed must be connected to a potable water supply and must be properly connected through a backflow prevention device approved by TCEQ. Backflow prevention devices must be tested by a licensed backflow prevention assembly inspector at least annually. Title 30 TAC Chapter 344 applies to all irrigation installations.*

Landscape irrigation systems, if installed, shall include the following water conservation features:

- Landscape irrigation systems shall be installed by a licensed irrigator unless the homeowner is physically installing the system. Contractors installing irrigation systems must provide system design plans to the homeowner for Lots and to the Association for Common Areas. Scheduling recommendations shall be posted in or near the irrigation controller box.
- All automatic irrigation systems are required to have a rain sensor connected to an irrigation controller in order to stop the irrigation cycle during and after a rainfall event. Rain sensors are to be installed in a location where rainfall is unobstructed, such as a rooftop or fence line. Rain sensors are to be adjusted at the one-fourth-inch setting.
- All irrigation systems are required to have pressure regulators if static pressure at the site exceeds the sprinkler manufacturer's recommended operating range.
- Irrigation systems are to have a controller with multiple cycles, rain sensor capability and an irrigation water budget feature.
- Sprinkler systems will be designed as to minimize overspray onto hardscapes. Planting beds may be irrigated with low-flow or spray irrigation. All spray heads must be designed to prevent low head drainage.
- Low volume irrigation shall be installed in areas less than ten feet (10') wide, such as median strips and parking islands.

Spray irrigation of each lot shall be limited to two and a half times (2½ X) the foundation footprint with a 12,000 square foot maximum. The footprint may include both the house and garage, but not the driveway or patio.

Conservation Guidelines

All new landscapes shall have a minimum settled soil depth of four inches (4") and a recommended six to eight inches (6"-8") of soil depth in areas planted with turf grass. Soil in these areas may be either native soil from the site or imported, improved soil. Improved soil will be a mix of no less than twenty percent (20%) compost blended with sand and loam. The

16

soil/compost blend shall be incorporated into a two inch (2") scarified transition layer of the native soil. The depth requirement does not apply to the area between the drip line and trunk of existing trees, shrub beds or wildscape areas. Areas with existing native vegetation that remain undisturbed shall be exempt from the soil depth provision of this section; provided that native soil and vegetation in such area is fenced during construction and protected from disturbance and compaction during the construction process.

Native soil disturbed shall be stockpiled and reused on site.

All landscape materials shall be installed and maintained according to generally accepted landscape practices for the Central Texas/Hill Country region.

A minimum of two inches (2") of mulch should be maintained in all shrub and bed areas.

Fertilization of turf areas shall not be required.

Landscape companies providing maintenance shall use only the following fertilizer and pest management practices:

- In turf areas that are to be fertilized, natural or certified organic fertilizers with less than four percent (4%) phosphorus shall be used.
- Fertilizer shall be applied at a rate of one-half (½) pound of nitrogen per 1000 square feet, not to exceed a total of one (1) pound of nitrogen per 1000 square feet per year.
- Integrated Pest Management ("IPM") Techniques are encouraged. Organic, non broad cast, pest-specific applications are encouraged. IPM techniques are detailed in the Homeowners Manual.

Builders shall be required to offer a WaterWise landscape option in any series of landscape options offered to home buyers. The seven basic principles of WaterWise landscaping include:

- Proper planning and design;
- Proper soil preparation (compost-improved topsoil);
- Practical turf grass selection of drought resistant-species;
- Plant selection comprised of native or adapted trees, shrubs and flowers. The use of invasive plants will be avoided.
- Efficient irrigation systems;
- Use of mulches;
- Appropriate maintenance.

17

## Landscape Inspection

The West Cypress Hills Reviewer may, upon the Owner's completion of the installation of landscaping, conduct an on-site inspection of the property to ensure compliance with the approved plan.

## Drainage

Responsibility for proper site drainage rests with the Owner. There shall be no interference with the established drainage patterns except by Declarant, unless adequate provision is made for proper drainage and such provision has been certified by a professional engineer and approved in advance by the West Cypress Hills Reviewer. When Improvements are made to a Lot which alter the drainage flow, drainage swales must be provided by the Owner to insure that the building improvement does not interfere with established water movement over the Lot or create an increased inundation of an adjoining property. No area drains are allowed to extend through the curb.

## Fencing, Screening and Walls

Prior to occupancy of any residence, a fence must be constructed to enclose the rear yard. The West Cypress Hills Reviewer may, in its sole discretion, prohibit the construction of any proposed fence, or specify the materials of which a fence must be constructed, or require that any proposed fence be screened by vegetation or otherwise screened so as not to be visible from other portions of the Development Area, or specify the location on any Lot of any proposed fence or gates.

- Fences and walls may not exceed six and one-half feet (6½') in height.

- Fence facing front of street and facing greenbelt shall be constructed using wrought iron or equivalent maintenance free material.

- Side fence shall be of wooden construction (cedar or redwood), vertical slat, privacy fence, with no gaps between slats and no access gate.

- If the back property line adjoins another residential unit, a wooden privacy fence shall be constructed along the back.

- No fence or wall on any Lot shall extend nearer to any front street than two feet (2') behind the front wall of the principal building, or nearer to any side street than the minimum setback line.

- Fencing abutting a street, or which are visible from a street, permanent open space, or greenbelt area must be constructed with the finished side facing the street or open space. These fences may be double-faced.

18

- A fence or "screening plant" material must enclose all utility boxes, meters, pool equipment and air conditioning units. (See the **Approved Plant List** for appropriately sized evergreen plants).

- Fencing of front yards is not permitted.

- Plastic, common cement, cinder block, chain-linked or wire fences are NOT permitted on residential Lots.

- Damaged or deteriorated fences must be repaired by Owner within thirty (30) days of written notice from the Association.

- All retaining wall plans must be submitted prior to construction to the West Cypress Hills Reviewer.

- Retaining walls on a residential lot that runs parallel with any street shall not exceed four feet (4') in height. Grade changes that require retaining walls exceeding four feet (4') must be terraced with a minimum of four feet (4') clear separation between each wall. A three feet (3') minimum planting separation strip between back of curb or sidewalk and face of wall is required. This planting separation strip must be planted and maintained with approved plant material

## IV. EROSION CONTROL AND CONSTRUCTION REGULATIONS

The following restrictions shall apply to all construction activities within West Cypress Hills. Periodic inspections by a representative of the West Cypress Hills Reviewer may take place in order to identify non-complying construction activities. If items identified as not complying with the regulations are not remedied in a timely manner, fines may be levied against the Owner, in addition to costs to remediate.

**Erosion Control Installation and Maintenance**

Each Owner shall comply with the terms of the applicable "Storm Water Pollution Prevention Plan" issued prior to construction on such Owner's Lot. Additionally, the West Cypress Hills Reviewer shall have the power to establish reasonable policies seeking to enhance erosion control and water quality in the Developmental Area. Such policies may extend to the Owner and the Owner's agents or contractors. The West Cypress Hills Reviewer shall have the power to impose reasonable fines to deter non-compliance with these policies, and to reimburse the Association for its actual costs in repairing the non-compliance so long as the Owner has been provided with the actual notice of the policies after adoption by the West Cypress Hills Reviewer. It is the responsibility of the Owner to install erosion control measures and inlet protection prior to clearing and start of construction and to maintain the measures throughout construction until the area is re-vegetated. Periodic inspections by a representative of the West

Cypress Hills Reviewer may take place in order to identify non-complying construction activities.

Silt fencing is required to be properly installed and maintained to protect the downhill sides of all disturbed areas, where stormwater will flow during construction. Silt fencing must be installed with "j-hooks" and follow the guidelines in the LCRA Highland Lakes Watershed Ordinance Water Quality Management Technical Manual. These protections must be maintained throughout construction and must remain in place until the area is revegetated and fully grown-in/rooted. If it is found that construction has begun before the appropriate erosion controls have been installed, applicable fines will be assessed. The purpose of the silt fence is to capture the sediment from the runoff and to permit filtered, clean water to exit the site. The Owner should anticipate that built-up sediment will need to be removed from the silt fence after heavy or successive rains, and that any breach in the fencing will need to be repaired or replaced immediately.

If for any reason the silt fence is to be temporarily removed, please contact a representative of the West Cypress Hills Reviewer prior to the removal. All silt fencing must be replaced by the end of the work day.

## Security

Neither the Declarant, the Association, nor the West Cypress Hills Reviewer will be responsible for the security of job sites during construction. If theft or vandalism occurs, the Owner should first contact the Travis County Sheriff's Department and then notify a representative of the West Cypress Hills Reviewer.

## Construction Hours

Unless a written waiver is obtained from the West Cypress Hills Reviewer, construction may take place only during the following hours: Monday through Friday from 7:00 a.m. until 7:00 p.m., and on Saturdays from 8:00 a.m. until 6:00 p.m.

There shall be no construction on Sundays or the following holidays: New Year's Day, Memorial Day, July 4th, Labor Day, Thanksgiving Day, or Christmas Day.

## Construction Speed Limit

The construction speed limit for all construction vehicles within the West Cypress Hills is 20 mph. Violators will be assessed fines for safety violations.

266847-2 09/04/2007

## Noise, Animals, Children

The use of radios, tape, CD or other electronic audio players must be restrained so as not to be heard on an adjoining lot or street.

Contractors and subcontractors may not bring dogs or children under sixt16 years of age to construction sites.

## Material and Equipment Storage

All construction materials and equipment shall be neatly stacked, properly covered and secured. Construction materials for Improvements to existing residences must be stored/staged out of view. Storage bins, if used for on-site material storage, must be in good repair. Any storage of materials or equipment shall be the Owner's responsibility and at their risk. All equipment, materials, supplies and temporary structures must be removed immediately upon completion of construction, leaving the site neat, clean and re-vegetated.

## Site Cleanliness

During the construction period, each construction site shall be kept neat and shall be properly policed. The Association will notify Owners and Builders if a construction site is not maintained. If the affected site is not cleaned or repaired in a timely manner, the Association, at its discretion, may clean the site and charge the Owner/Builder its expenses plus an administrative fee in addition to the fine. Sites not maintained may be subject to fines.

Owners and Builders shall clean up all trash and debris on the construction site on a daily basis. A fifteen (15) yard minimum steel roll-off dumpster for every three (3) Lots or an eight feet (8′) x eight feet (8′) bin for each Lot must be maintained on the site during the duration of construction from commencement of framing operations through project completion. The dumpster must be placed as far from adjacent properties as possible. A trash removal service must be maintained so that overflow and unpleasant odors do not occur. At a minimum, dumpsters shall be emptied weekly or when eighty percent (80%) full.

Lightweight material, packaging and other items shall be covered or weighted down to prevent wind from blowing such materials off the construction site. Owners and Builders will be held responsible for cleaning debris which may blow off their site.

The dumping, burying or burning of trash is not permitted anywhere within West Cypress Hills.

When moving heavy equipment, precautions must be taken to prevent damage to pavement, curbs, and vegetation. Any damage will be charged to the Owner. Crawler tractors are not to be operated on paved or concrete surfaces.

21

<u>Mud, dirt and other construction debris tracked off site must be cleaned on a daily basis.</u>

To lessen runoff, soil compaction and tree root damage, driving and parking of construction vehicles on the unit is discouraged. Construction vehicles may access the unit only if the unit has a fully functioning, stabilized construction entry point consisting of four inches (4") bull rock or similar material.

**Damage to Property and Trespass**

If any landscaping item, including, but not limited to, trees, irrigation, or signage is damaged within West Cypress Hills property, and it can be reasonably assumed the damage was caused by the Owner/Builder (including any contractors or subcontractors acting on behalf of the Builder) the Owner/Builder will be notified of the damage and will have seventy-two (72) hours to repair or replace the item. If the Owner/Builder does not comply, the Association at its discretion, may clean the site and charge the Owner/Builder its expenses plus an administrative fee in addition to the fine.

Owners, Builders, their employees, contractors, or other construction personnel are expressly prohibited from disturbing, damaging, or trespassing on property owned by others. Access to the greenbelt, utility site or any un-developed areas without the written permission of the Association and without placing a refundable deposit in advance is strictly prohibited.

**Safety Precautions**

The Owner/Builder must take all necessary precautions for the safety of all persons, materials and equipment on or adjacent to the unit. An approved barrier, lights, signs, and other safeguards must be erected, furnished, and maintained. Adequate warning must be given to everyone on or near the unit of dangerous conditions during the work. If the Owner/Builder does not comply, a fine will be assessed.

**Sanitary Facilities**

During construction, a temporary sanitary facility (chemical toilet) shall be provided and maintained in a location approved in advance by the West Cypress Hills Reviewer. Portable chemical toilets must be in place on site prior to commencement of construction and removed when construction is completed. One (1) maintained portable chemical toilet will be required for every three (3) houses under construction. The portable chemical toilet must be placed as far from adjacent properties and streets as possible.

**Concrete Washout**

Concrete truck washout or spoils must be in place prior to construction and be constructed and maintained in compliance with the LCRA Highland Lakes Watershed

Ordinance Water Quality Management Technical Manual and must occur on the unit under construction, another unit under construction or owned by the same Builder, or other area approved by the Association and be protected with environmental controls, and have clearly visible signage. In addition to the applicable fine/fee, the Owner/Builder is responsible for site cleanup and restoration to its original condition for any concrete spoils left on any vacant unit, common area, greenbelt or roadways.

## Duration of Construction

Completion of initial construction is required within twelve (12) months from the date of Pot Plan approval for new construction and three (3) months from the date of Architectural Modification approval for construction of Improvements.

# V. SCHEDULE OF FEES AND FINES

Listed below is the schedule of fines which may be assessed. **PLEASE BE ADVISED THAT FINES ARE NOT IN LIEU OF ANY COSTS CHARGEABLE AGAINST AN OWNER FOR REPAIRS OR RESTORATION.**

### Schedule of Fees & Fines

| | |
|---|---|
| Architectural Review / Application Fee | $ 50 |
| Premature Clearing / No Erosion Controls in Place | $500 |
| Construction Without West Cypress Hills Reviewer Approval | $500 |
| Construction Outside of Designated Work Hours | $250 |
| No Chemical Toilet Provided | $150 plus $25/day |
| Encroachment on Adjacent Properties | $500 plus cost of repair |
| Damage to Streets, Curbs, Infrastructure | $500 plus cost of repair |
| Dumping building materials/ debris/ soils in the street | $500 |
| Inadequate or poorly maintained erosion controls causing sediment to migrate from lot | $500 |
| Failing to meet completion date on modifications (per week) | $ 50/ week |
| Miscellaneous Violation of Construction Rules | $ 50/day |
| Deposit for accessing greenbelt | $250 |
| Disturbance of greenbelt w/ no deposit held (also liable for damages +50%) | $500 |
| Architectural / Improvements Violations | $250 |
| Trespassing on Developer , Association, or District owned Land or Facilities (plus costs to remediate) | $500 |
| Safety Violations | $100 |

23

# VI. PLAN SUBMITTALS

The construction or installation of any improvements, changes to existing improvements, the reconstruction of improvements, or the installation or change of exterior ground improvements, other than seasonal color, will require the submission of plans and specifications for approval of the West Cypress Hills Reviewer before any such construction or installation activity is commenced. The West Cypress Hills Reviewer may waive plan and specification requirements for certain modifications or improvements at its discretion.

**Three submittals are described in this section:**

    **A. Builder Master Architectural Plans**
    **B. Builder Plot Plans**
    **C. Architectural Modifications**

**A.    Builder Master Architectural Plans Submittal Requirements**

Builders must submit each architectural plan type to the West Cypress Hills Reviewer. Once a Builder's master architectural plan is approved, only an individual plot plan, masonry selection and completed submittal cover sheet are required for each new unit. Any permanent changes to the master plans and/or specifications must be resubmitted for approval.

**Submittal Requirements**

- Executed Master Plan Submittal Application form.

- Building plan name, plan reference number(s) and square footage.

- Elevations of all sides of home including construction specifications/description of materials and masonry wrap dimensions.

- Roof pitch, materials and roof peak height.

- Blue line prints including floor plans, at ¼" = 1'-0" scale, and all elevations. Include any standard floor plan options, such as optional game room versus standard bedroom. Square footage of plan options is required for approval.

- One (1) binder, with color photos, or brick/masonry samples or sample books provided by material suppliers (if requested by West Cypress Hills Reviewer).

- Any other information or documentation deemed necessary by the West Cypress Hills Reviewer.

24

## B.    Builder Plot Plan Submittal Requirements

After architectural plans have been approved, a plot plan, Plot Plan Submittal Application and a review fee are required to be submitted for approval prior to construction on any unit.

**Submittal Requirements:**

- Executed Plot Plan Submittal Application form

- Plot plan, at 1" = 20' -0" or 1" = 30'-0" scale, with the following building information clearly indicated:

- Building plan name, plan reference number(s), and square footage indicated within the building footprint.

- Location of the house on the lot with dimensions to all property lines.

- Driveway, entry walks, and sidewalk locations and widths.

- Street sidewalks, if required by plat.

- Location **and type** of all fencing.

- Existing topographical lines.  Builder's estimate of slab elevation, existing and finish grade at corners of house, driveway, and corners of Lot.

- Location and estimated finish grade of any patio or deck.

- Turf locations, general plant locations and plant types.

- Planned location, height, and material of any retaining wall over two feet (2') high.

- Plans for foundation screening.

If the building plan has major changes (as defined herein) from a previously approved master architectural plan, please follow the submittal process for Master Plan Submittals noting the changes from originally approved plan.

**Major changes are** defined as: changes in the building footprint exceeding two feet (2') in any direction; changes in exterior elevations; changes in building height exceeding one foot (1') per floor; changes in roof pitch from the standard elevation; and any proposed two story decks or decks accessed from the second floor of residences.

WEST CYPRESS HILLS
                                                                            DESIGN GUIDELINES

## C. Architectural Modifications Submittal Requirements

Approval is required for architectural modifications or alterations to existing residential dwellings or addition of accessory structures.

- The Architectural Modification Application Approval form (see Appendix for sample) must be completed and executed by the property owner and submitted to the West Cypress Hills Reviewer.

- Any addendum which applies to the specific modification.

The following items must accompany this request:

- A scaled drawing showing plan and elevation views of the proposed improvements, modifications or alterations. Submittal must include samples depicting the proposed materials and colors to be used.

- A Lot survey (which the owner receives at closing) indicating the location of proposed improvements, and any applicable easements, setbacks, and elevation differences on Lot. **Indicate dimensions to all adjacent property lines.**

- For landscaping improvements: (i) turf locations; (ii) general plant locations and planting types; and (iii) planned location, height, and material of any retaining wall over two feet (2') high.

Attachments:      **Attachment 1 Master Plan Submittal**
                  **- submit form to West Cypress Hills Reviewer**

                  **Attachment 2 Plot Plan Submittal**
                  **- submit form & $100 review fee to Association Manager**

                  **Attachment 3 Architectural Modification Submittal**
                  **- submit form & $50 review fee to Association Manager along with any required construction deposits**

## ATTACHMENT 1
## MASTER PLAN SUBMITTAL

Date Submitted: _____

Phase(s): _____ Section #(s): _____ Section Name(s): _____

Builder/Applicant Name: _____

Builder/Applicant Address: _____

Builder/Applicant Phone No.: _____

**REQUEST FOR APPROVAL OF:**

❑      **MASTER PLAN(S)** (2 copies must be submitted)

       Plan Series Name (if applicable): _____

❑      **PRODUCT SPECIFICATIONS/DESCRIPTION OF MATERIALS SUBMITTED**

❑      **OPTIONS – PLAN SPECIFIC** (must include square footage for each option)

| PLAN NO. | PLAN NAME | ELEVATIONS OPTIONS | B/B/L/D/S | MASONRY % | SQ.FT. LIVING | BASE PRICE |
|----------|-----------|--------------------|-----------|-----------|---------------|------------|
| 1)_____ | _____ | _____ | _____ | _____ | _____ | _____ |
| 2)_____ | _____ | _____ | _____ | _____ | _____ | _____ |
| 3)_____ | _____ | _____ | _____ | _____ | _____ | _____ |
| 4)_____ | _____ | _____ | _____ | _____ | _____ | _____ |
| 5)_____ | _____ | _____ | _____ | _____ | _____ | _____ |
| 6)_____ | _____ | _____ | _____ | _____ | _____ | _____ |

I, _____ (Applicant), certify to the best of my knowledge that the above answers are correct and understand that the above are not all inclusive conditions and restrictions concerning the West Cypress Hills Community.

Applicant Signature: _____

Note: Plans and specifications submitted for review are **not** being reviewed for structural integrity; compliance with zoning and building ordinances or any other applicable statutes, ordinances or governmental rules or regulations, compliance with the requirements of any public utility, easement or other agreements, or preservation of any view.

Application is:     ❑ Approved       ❑ Not Approved       Date: _____

Comments: _____

_____

_____

APPROVED:

_____       _____

WCH Reviewer                            AC Representative

## ATTACHMENT 2
## PLOT PLAN SUBMITTAL

Date:_____

Lot:_____ Block:_____ Phase:_____ Section:_____
Address:_____

**Plan # & Elevation:**_____ **Bedrooms:**_____ **Baths:**_____
**Square Footage of House:**_____ **Please Circle:** 1 Story / 2 Story

**Plot Plan Attached: (Please Circle)** Yes / No

1st Floor Masonry _____% 2nd Floor Masonry Wrap Depth (feet)_____
Chimney: Yes/No **Please Check:** _____ Masonry _____ Fibre Cement

**Does the home meet the special circumstances? (Please Circle)** Yes / No
- Corner lots
- Lot backs to or abuts a collector street.

**Fencing Type: (Please check)** ( )Good Neighbor Fence ( )Iron/Metal Fence
( )Combination fence (*Good neighbor on sides, Iron/Metal on front, back*)

Primary Brick/Stone Mfgr: _____Brick/Stone Color: _____Color Family_____
Accent Brick/Stone Mfgr: _____Brick/Stone Color: _____Color Family_____
Roof Pitch:_____ Roof Color: _____ Roof Material: _____
Paint Color:_____
**Fill in the information below if different from color above.**
Trim Color:_____ Door Color:_____
Shutters Color:_____ Garage Color:_____

Front Retaining Wall: **(Please Circle)** Yes / No Deck: **Yes / No**
Patio:_____square feet

Comments:_____
_____

**Builder Name:**_____ **Contact Person:**_____

**Approved:**
**By:**_____ **ApprovalDate:**_____

**<u>Submit form & $50 review fee to WCH Master Community, Inc. Manager</u>**

## <u>ATTACHMENT 3</u>
## <u>ARCHITECTURAL MODIFCATION SUBMITTAL</u>

Applicant Name:_____Date Submitted:_____

Property Address:_____

Applicant Contact Phone Numbers:_____

Contractor Name (if applicable):_____

Contractor Address & Phone Number (if applicable):_____

_____

*Please list the modifications to the dwelling and/or addition of accessory structure(s) for which you are requesting approval:*

_____

_____

_____

_____

**The following items must accompany this request:**
- <u>Sketch showing plan and elevation views of proposed improvements</u>. The sketch should provide a description of materials to be used. Color samples may be requested.
- <u>Site plan</u> (based on the survey you received at closing) **<u>indicating location of proposed improvements and dimensions to adjacent property lines.</u>**
- <u>Any addendum specific to the modification,</u> *i.e.* pools

The West Cypress Hills Reviewer may request that you provide additional information before acting upon your request. The application is not complete until all information requested has been received. All modifications must comply with applicable deed restrictions and design guidelines. Please allow at least ten (10) working days to receive determinations back from the Reviewer. Please call the Manager at (512) 288-2376 if you have any submittal questions.

**I acknowledge receipt of the Design Guidelines. I have read the guidelines and agree to abide with them in regard to the modification/addition as proposed. I acknowledge that pool and additional improvements require a $2,500 refundable construction deposit. I will submit the $50 non-refundable application review fee and the construction deposit (if required) along with this application.**

_____          _____
Owner Name (Print)                                     Signature of Owner

266847-2 09/04/2007                                              WEST CYPRESS HILLS
                                                                           DESIGN GUIDELINES

Recorders Memorandum-At the time of recordation this instrument was found to be inadequate for the best reproduction, because of illegibility, carbon or photocopy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

# FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

2007 Sep 07 01:04 PM   2007167594

BENAVIDESV $132.00

DANA DEBEAUVOIR COUNTY CLERK

TRAVIS COUNTY TEXAS

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Hanna Williams on behalf of Nicholas Pugh
Bar No. 24044341
hanna.williams@caglepugh.com
Envelope ID: 108945660
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellant's Brief
Status as of 12/10/2025 2:28 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Adam Pugh | | adam.pugh@caglepugh.com | 12/10/2025 2:10:45 PM | SENT |
| Marla  Jones | | marla.jones@caglepugh.com | 12/10/2025 2:10:45 PM | SENT |
| Hanna Williams | | hanna.williams@caglepugh.com | 12/10/2025 2:10:45 PM | SENT |
| Jessica Loyola | | jessica.loyola@caglepugh.com | 12/10/2025 2:10:45 PM | SENT |
| Thomas Wolf | | txwolf.tx@gmail.com | 12/10/2025 2:10:45 PM | SENT |